**CASE NO. 21-55146**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company

*Plaintiff and Appellant*,

vs.

WELLS FARGO BANK, N.A., Erroneously Sued As Wells Fargo and Company, a Delaware corporation

*Defendant and Appellee.*

---

Appeal From The United States District Court,
Northern District of California, Case No. 2:19-cv-07698-ODW-RAO,
Hon. Otis D. Wright, II

---

## Excerpts of Record

## Volume 1

---

KING, HOLMES, PATERNO & SORIANO, LLP
Stephen D. Rothschild, Esq.
1900 Avenue of the Stars, Twenty-Fifth Floor
Los Angeles, California 90067-4506
Telephone: (310) 282-8989
Facsimile: (310) 282-8903

Attorneys for Appellant, Grand Bayman Belize, LTD

# TABLE OF CONTENTS

**Page**


Judgment [DOC 40] ..... 3

Order Granting Summary Judgment [DOC 38] ..... 6

Order Granting Summary Judgment [DOC 35] ..... 18

Defendant Wells Fargo Bank, N.A.'s Reply to Plaintiff's Opposition to Motion for Summary Judgment [DOC 31] ..... 20

Declarations of Rafael Amuchastegui, Dikka Amuchastegui and Stephen D. Rothschild in Support of Opposition to Motion for Summary Judgment [DOC 28] ..... 40

Plaintiff Grand Bayman Belize, Ltd.'s Opposition to Motion for Summary Judgment, Memorandum of Points and Authorities [DOC 26] ..... 85

Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff Wells Fargo Bank, N.A.'s Motion for Summary Judgment [DOC 17-3] ..... 144

Declaration of Michelle Swirtz in Support of Plaintiff Wells Fargo Bank, N.A.'s Motion for Summary Judgment [DOC 17-2] ..... 153

Memorandum of Points and Authorities in Support of Plaintiff Wells Fargo Bank, N.A.'s Motion for Summary Judgment [DOC 17-1] ..... 179

Plaintiff Wells Fargo Bank, N.A.'s Notice of Motion and Motion for Summary Judgment [DOC 17] ..... 189

Exhibit A to Defendant Wells Fargo Bank, N.A.'s Notice of Removal, Defendant Wells Fargo Bank, N.A.'s Answer to Complaint [DOC 1-2] ..... 192

Exhibit A to Defendant Wells Fargo Bank, N.A.'s Notice of removal, Plaintiff Grand Bayman Belize, Ltd.'s Complaint for Wrongful Payment of Wire Transfer [DOC 1-1] ..... 197

Notice of Appeal [DOC 41] ..... 201

Docket Report ..... 204

JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case 19-cv-07698- ODW (RAOx)<br><br>**JUDGMENT**<br><br>Date: August 17, 2020<br>Time: 1:30 p.m.<br>Crtrm.: 5D<br><br>Action Filed: May 23, 2019<br>Removal Date: September 5, 2019<br>Trial Date: None Set |

The motion of Defendant WELLS FARGO BANK, N.A. ("Wells Fargo") for summary judgment as to the sole claim alleged against Wells Fargo in the Complaint of Plaintiff GRAND BAYMAN BELIZE, LTD. ("Plaintiff") was originally scheduled for hearing on August 17, 2020, at 1:30 p.m. in Courtroom 5D of the above-entitled Court, before the Honorable Otis D. Wright, II. The Court, having carefully reviewed the papers filed in connection with the motion for summary judgment, deemed the matter appropriate for decision without oral argument, vacated the August 17, 2020 hearing, and took the matter under submission. (ECF No. 33.) On January 21, 2021, the Court entered an order granting Wells Fargo's motion for summary judgment. (ECF No. 38.)

Based on the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of Defendant WELLS FARGO BANK, N.A. and against Plaintiff GRAND BAYMAN BELIZE, LTD.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiff GRAND BAYMAN BELIZE, LTD. take nothing by way of its Complaint.

DATED: January 25, 2021

HONORABLE OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE

**PROOF OF SERVICE**

***Grand Bayman Belize, Ltd. v. Wells Fargo & Company***
**USDC Central District Case No. 19-cv-07698 ODW (RAOx)**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On January 25, 2021, I served true copies of the following document(s): **(PROPOSED) JUDGMENT** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & SORIANO, LLP<br>1900 Avenue of the Stars, 25th Fl.<br>Los Angeles, CA 90067-4506 | Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.<br><br>Telephone: (310) 282-8989<br>Facsimile: (310) 282-8903<br>Email: srothschild@khpslaw.com |

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 25, 2021, at Huntington Beach, California.

RYAN J. BROOKS

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., Plaintiff, v. WELLS FARGO & COMPANY et al., Defendants. | Case № 2:19-cv-07698 ODW (RAOx) **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [17]** |

## I. INTRODUCTION

Before the Court is Defendant Wells Fargo Bank, N.A.'s (sued as Wells Fargo & Company) motion for summary judgment on Plaintiff Grand Bayman Belize, Ltd.'s claim for wrongful payment of a wire transfer. (Mot. for Summ. J. ("Mot.") 4, ECF No. 17.) For the following reasons, the Court **GRANTS** the Motion.[1]

## II. BACKGROUND

On or about October 1, 2018, Grand Bayman received a fraudulent email, purportedly an invoice from one of its vendors, RAD Architecture, Inc. (Notice of Removal Ex. A ("Compl.") ¶ 5, ECF No. 1-1.) The email directed Grand Bayman to wire $226,991.45 to a Wells Fargo account ending in x3420 ("Account x3420"). (*Id.*)

[1] Having carefully reviewed the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

On October 2, 2018, in accordance with the email, Grand Bayman issued a payment order to its bank to transfer the requested amount to Account x3420 (the "Wire Transfer"). (*Id.* ¶ 7; Decl. Stephen D. Rothschild ¶ 7, Ex. 5, ECF No. 26 ("Payment Order").)

On October 5, 2018, Wells Fargo received the Wire Transfer, which identified the beneficiary as Wells Fargo Account x3420, RAD Architecture, Inc., located in Miami, Florida. (Wells Fargo's Statement of Uncontroverted Facts ("SUF") 1–2, ECF No. 17-3;[2] *see also* Decl. of Michelle Swirtz ("Swirtz Decl.") Ex. 1, at WF 0019, ECF No. 17-2 ("Wire Details"); Payment Order.) Within seven seconds of receipt, Wells Fargo's Money Transfer System ("MTS") processed the Wire Transfer and credited beneficiary Account x3420 with $226,991.45. (SUF 4–8.) By October 17, 2018, the funds had been withdrawn and Account x3420 closed. (SUF 10.) On November 1, 2018, Wells Fargo received a message from Grand Bayman's bank requesting that the funds be returned. (SUF 11.)

On May 23, 2019, Grand Bayman initiated this action to retrieve the transferred funds, apparently based on California Commercial Code section 11207(a).[3] (*See* Compl. ¶¶ 10, 14.) Wells Fargo now moves for summary judgment, arguing that it falls under the safe harbor of section 11207(b)(1) because it processed the transfer automatically (i.e., without human intervention), based on the account number alone,

---

[2] Grand Bayman nominally disputes SUF 2, asserting that the Wire Transfer identified RAD Architecture in Florida as the intended beneficiary. (*See* Grand Bayman's Statement of Genuine Disputes ("SGD") 2, ECF No. 27.) However, Grand Bayman's "disputed fact" is not inconsistent with Wells Fargo's SUF 2, and the evidence to which Grand Bayman points supports the truth of Wells Fargo's SUF 2. Accordingly, the Court finds SUF 2 undisputed.

[3] Grand Bayman does not specify in its complaint the law on which it bases its claim. (*See generally* Compl. (citing no law).) In the briefs, the parties assume the action falls within the ambit of the California Uniform Commercial Code, Division 11. (*See* Mot. 4; Opp'n 3–10 (asserting sections 11207(a), 11209, 11302(a), and 11303(c)).) As discussed further, *infra*, Division 11 of the California Uniform Commercial Code governs Grand Bayman's sole claim, which concerns an unauthorized wire funds transfer. *See Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 249, 255 (2007); *Chino Com. Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1172 (2010). All code section references in this Order are to the California Commercial Code unless otherwise noted.

and thus had no actual knowledge of a mismatch between the beneficiary account number and name. (Mot. 4.)

Grand Bayman purports to dispute that Wells Fargo processed the Wire Transfer automatically. (SGD 3; Opp'n 8–9, ECF No. 26.) However, the parties do not dispute that Wells Fargo's automated MTS confirmed Account x3420 was a Wells Fargo account and passed an external screening before the MTS credited Account x3420. (SGD 4–8.) The parties also do not dispute that the entire transfer process lasted only seven seconds. (*See id.*) Nevertheless, Grand Bayman contends that Wells Fargo does not fall within the safe harbor because it had actual knowledge of the mismatch between the beneficiary's account number and name when it processed the Wire Transfer. (SGD 9, 11; Opp'n 8–9.)

## III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Wells Fargo moves for summary judgment on grounds that it is entitled to protection under section 11207(b), because it processed the Wire Transfer automatically without actual knowledge of the mismatch between account name and number. (Mot. 4)

"Article 4A of the UCC governs fund transfers, which includes wire transfers . . . [and] has been adopted in California as Division 11 of the California Uniform Commercial Code." *Chino Com. Bank*, 190 Cal. App. 4th at 1172 (citation omitted). A "'[f]unds transfer' means the series of transactions, beginning with the

originator's payment order, made for the purpose of making payment to the beneficiary of the order[, and] includes any payment order issued by the originator's bank . . . intended to carry out the originator's payment order." *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, No. 17-CV-04930-LB, 2017 WL 6539843, at *6 (N.D. Cal. Dec. 21, 2017) (quoting Cal. Com. Code § 11104(a)). Here, Grand Bayman (the "originator") requested that its bank (the "originator's bank" or "receiving bank") issue a payment order to Wells Fargo (the "beneficiary's bank") to wire funds to Account x3420, RAD Architecture (the "beneficiary"). (*See* Payment Order; Wire Details WF 0018–19.)[4] Accordingly, Division 11 governs this dispute.

The Division 11 statute upon which Grand Bayman appears to primarily rely, section 11207(a), states:

> Subject to subdivision (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.

Cal. Com. Code § 11207(a). Essentially, Grand Bayman claims Wells Fargo violated this provision by accepting the Wire Transfer. (Opp'n 5–7.)

However, section 11207(b) applies where, as here, a beneficiary's bank receives a payment order that "identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons." Cal. Com. Code § 11207(b). In such a case, section 11207(b) expressly authorizes the beneficiary's bank to rely on the *account number* "so long as the bank does not know that the beneficiary's name and account number refer to different persons." *TME*

[4] *See* Cal. Com. Code §§ 11103(a)(2) (" Beneficiary' means the person to be paid by the beneficiary's bank."), 11103(a)(3) ("'Beneficiary's bank' means the bank identified in a payment order in which an account of the beneficiary is to be credited pursuant to the order . . . ."), 11103(a)(4) ("'Receiving bank' means the bank to which the sender's instruction is addressed."), 11104(c) ("'Originator' means the sender of the first payment order in a funds transfer."), 11104(d) ("'Originator's bank' means . . . the receiving bank to which the [originator's] payment order . . . is issued . . . .").

*Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 (2004); Cal. Com. Code § 11207(b)(1) (permitting reliance on the account number "as the proper identification of the beneficiary of the order"). In this context, "'[k]now' means to have *actual* knowledge." *TME*, 124 Cal. App. 4th at 1031 (emphasis added).

The beneficiary's bank has no duty to "determine whether the name and number refer to the same person." *TME*, 124 Cal. App. 4th at 1032; Cal. Com. Code § 11207(b)(1). This is because "funds transfers should be speedy, inexpensive, and not labor intensive." White & Summers, U.C.C. § 24:6 (6th ed.). Consequently, "[a] very large percentage of payment orders . . . are processed by automated means using . . . the identifying or bank account number without human reading of the payment order itself." Cal. Com. Code § 11207, cmt. 2.[5] Thus, although a payment order may allow inclusion of the beneficiary's name, that information "*plays no part in the process of payment*." *Id.* (emphasis added). "[I]f a duty to [determine that the name and number match] is imposed on the beneficiary's bank[,] the benefits of automated payment are lost . . . ." *TME*, 124 Cal. App. 4th at 1032 (quoting Cal. Com. Code § 11207, cmt. 2.).

Here, Wells Fargo asserts that it automatically processed the Wire Transfer based on account number alone, with no human intervention and no actual knowledge of the mismatch. (Mot. 7–9.) Wells Fargo further asserts it did not learn about the mismatch until November 2, 2018—four weeks after the transfer—when Grand Bayman's bank requested a wire recall. (Mot. 8.) Based on these facts and section 11207(b), Wells Fargo seeks summary judgment, which the Court finds appropriate for the following reasons.

**A. Wells Fargo Carries Its Burden**

The undisputed facts support Wells Fargo's assertions. Wells Fargo's MTS received the Wire Transfer on October 5, 2018, at 07:13:39.08 Central Time. (SUF 1,

[5] The Official Code Comments to Division 11 are persuasive in interpreting these statutes. *Zengen*, 41 Cal. 4th at 252.

4.) The Wire Transfer ordered $226,991.45 transferred from Grand Bayman to Account x3420, under the name RAD Architecture. (SUF 1–2.) Upon receipt, the MTS immediately used an "Autoretrieve" function to confirm the beneficiary account number, Account x3420, was a Wells Fargo account number. (SUF 5.) At 07:13:42.60, the MTS shared the pending Wire Transfer order with an external screening application for screening pursuant to the Office of Foreign Assets Control ("OFAC"). (SUF 6.) The application confirmed to MTS that the Wire Transfer order passed OFAC screening. (SUF 7.) Accordingly, on October 5, 2018, at 07:13:46.50 (approximately seven seconds after the Wire Transfer was received), Account x3420 was credited with $226,991.45. (SUF 8.) Wells Fargo supports these undisputed facts with competent declaration testimony and business records, neither of which Grand Bayman challenges. (*See* Swirtz Decl. ¶¶ 14–15; Wire Details WF 0020–21.) Thus, Wells Fargo adequately supports that it processed the Wire Transfer automatically, without human intervention, based on the account number, and had no actual knowledge of the mismatch at the time.

The case of *TME Enterprises, Inc. v. Norwest Corp.* is instructive. 124 Cal. App. 4th 1021. There, TME requested a wire transfer but provided an account number and name identifying different persons. *Id.* at 1033. The California Court of Appeal affirmed that section 11207(b)(1)'s safe harbor provided the bank immunity because, even though the wire operator manually processed the wire, the bank relied on the account number specified in the wire transfer order and the evidence failed to show that the bank had actual knowledge of the mismatch. *Id.* at 1025, 1033–35. The same result obtains here. Grand Bayman requested a wire transfer and identified the beneficiary by an account number, Account x3420, and a name, RAD Architecture, identifying different persons. No evidence suggests that Wells Fargo had actual knowledge of a mismatch when it processed the wire based solely on the account number. If anything, the facts here support application of the safe harbor more strongly than in *TME*, because, here, Wells Fargo processed the wire transfer

automatically, without human intervention, whereas in *TME*, the wire operator processed the wire manually. *Id.* at 1033–35. Thus, Wells Fargo establishes that, as in *TME*, the safe harbor applies.

**B. Grand Bayman Does Not Raise a Genuine Dispute of Fact**

Grand Bayman attempts, unsuccessfully, to dispute that the Wire Transfer occurred automatically without human intervention (*see* SGD 3), and that Wells Fargo had no actual knowledge of the mismatch (*see id.* 9, 11).

First, Grand Bayman suggests the Wire Transfer was not *automatically* processed because the Wire Details reflect a wire-transfer routing number associated with a San Francisco branch, while a bank statement for Account x3420 happens to list a direct-deposit routing number associated with a New Jersey branch. (Opp'n 9.) Based on these two data points, Grand Bayman argues that Wells Fargo "redirected" the Wire Transfer funds to New Jersey, and that the "redirection suggests a manual intervention." (*Id.*) But Grand Bayman fails to explain how an account holder's direct-deposit routing number being listed on their bank statement indicates, in any way, that a *manual* redirection occurred. (*See id.*; SGD 3.) Indeed, this "evidence" is irrelevant to the question of whether the Wire Transfer was automatically processed, and Grand Bayman fails to raise any genuine dispute as to that established fact. *See Matsushita*, 475 U.S. at 586 (discussing that a non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts" to raise a genuine dispute).

Next, Grand Bayman contends that Wells Fargo knew about the mismatch between the beneficiary account number and name because the account information on file for Account x3420 gave Wells Fargo constructive knowledge. (SGD 9, 11.) Even assuming Wells Fargo had constructive knowledge, however, the California Court of Appeal rejected this very argument in *TME Enterprises*. There, TME argued the safe harbor provision did not protect the bank from liability because signature cards on file for the named beneficiary gave the bank constructive knowledge that the

named beneficiary did not match the identified account number. *Id.* at 1033. The court found that "[c]onstructive knowledge . . . is insufficient to establish a violation" where actual knowledge is required. *Id.* (citing U.C.C. § 4A-207, cmt.2). The same applies here: constructive knowledge does not equal actual knowledge, and Grand Bayman fails to raise a genuine dispute regarding Wells Fargo's lack of actual knowledge.

Finally, Grand Bayman suggests that Wells Fargo had actual knowledge of the mismatch between beneficiary name and number because the words "possible name mismatch" appear in the Wire Details. (Opp'n 8.) However, Wells Fargo establishes in its moving papers that this phrase appears as the result of a missing MTS software application and, consequently, rather than indicating an actual mismatch, the phrase would have appeared in the log even if all respects of the transaction matched perfectly. (Mot. 9; Decl. Swirtz ¶ 20). Grand Bayman does not address this point and offers no evidence beyond the phrase's mere appearance nor any explanation in response. (*See* Opp'n 8.) This is insufficient to raise a genuine dispute of fact. *See Addisu*, 198 F.3d at 1134, 1142 (requiring more than a mere scintilla of contradictory evidence to survive summary judgment).

In short, even construing all reasonable inferences in Grand Bayman's favor, no reasonable juror could conclude a human intervened in the Wire Transfer or that Wells Fargo had actual knowledge of the mismatch at the time it processed the transfer.

**C. Grand Bayman's Remaining Arguments Fail**

Grand Bayman asserts a number of additional arguments that the safe harbor of section 11207(b) does not apply or that processing the wire transfer was nevertheless wrongful. (*See generally* Opp'n.) Each fails.

*1. Complete Disconnect Between Fraudulent and Intended Beneficiary*

Grand Bayman argues that the mismatch between the name and address of the fraudulent beneficiary—Julieta Aquino in New Jersey—and the intended beneficiary—RAD Architecture in Florida—constitutes a "complete disconnect," not

entitled to protection under the safe harbor. (Opp'n 1, 7–8.) On this issue, Grand Bayman cites *TME* for the proposition that a bank "may not take advantage of the section 11207(b) safe harbor if there is a 'complete disconnect between the names.'" (Opp'n 8 (quoting *TME*, 124 Cal. App. 4th at 1034).) But the language Grand Bayman omits and the context of this quote demonstrate its inapplicability. First, the actual language from *TME* is that a "bank should not be exposed to potential liability for accepting a wire unless there is a complete disconnect between the names." *TME*, 124 Cal. App. 4th at 1034. Contrary to what Grand Bayman represents, this language does not completely bar application of the safe harbor when a complete disconnect exists. Second, *TME* is distinguishable from the present case because in *TME*, a wire operator *manually* reviewed and processed the wire transfer. *See id.* at 1034 (discussing that, just because a wire operator manually reviews a wire transfer, that "does not mean . . . that the employee has actual knowledge that the name and the number refer to different people."). Although a complete disconnect might preclude applicability of section 11207(b)'s safe harbor when a wire transfer is manually reviewed by a human who should recognize a glaring mismatch, Grand Bayman fails to persuade that same principle should apply when a wire transfer is automatically processed without human intervention, as is the case here.

Grand Bayman's reliance on *Venture Recycling Group, Inc. v. JPMorgan Chase & Co.*, on this point is equally unavailing. (*See* Opp'n 8 (citing *Venture Recycling*, No. CV 19-2253-MWF (KSX), 2019 WL 4543104, at *5 (C.D. Cal. July 9, 2019)).) In that case, the court denied a motion to dismiss because it found the plaintiff had sufficiently alleged actual knowledge and a complete disconnect. *Venture Recycling*, 2019 WL 4543104, at *5. Here, the burden on summary judgment is higher than at the pleading stage. *See Celotex*, 477 U.S. at 324 (discussing that the non-moving party must go beyond the pleadings to survive summary judgment). Grand Bayman offers nothing to support that any Wells Fargo employee reviewed the Wire Transfer

such that she would have had an opportunity to notice the discrepancy. The "complete disconnect" theory is simply inapplicable on these facts.

*2. Alternative Statutory Grounds for Relief*

Finally, Grand Bayman argues that payment of the wire transfer was wrongful under various other sections of Division 11. (*See* Opp'n 3–10 (seeking to apply sections 11209(c), 11302(a)(1), and 11303(c)).) However, section 11207 "resolves the issue" of a beneficiary bank's responsibility "in carrying out a payment order in which the identification of the beneficiary by name and number is conflicting." Cal. Com. Code § 11207, cmt. ¶ 2. As the issue here stems from a conflict between the provided beneficiary name and number, section 11207(b), and the analysis above, clearly governs.

Nevertheless, Grand Bayman's arguments under other provisions also fail. Grand Bayman contends Wells Fargo wrongfully accepted the transfer under section 11209(c) because that section requires the beneficiary to have an account with the receiving bank and RAD Architecture did not. (Opp'n 3–5.) However, Grand Bayman studiously ignores that the identified beneficiary Account x3420 *did* have an account with Wells Fargo. (*See* SUF 5; Wire Details WF 0020.) Regardless, "acceptance by the beneficiary bank [Wells Fargo] does not create any obligation to the sender [Grand Bayman]." Cal. Com. Code § 11209, cmt. 4. Lastly, on their face, neither section 11302(a) nor section 11303(c) apply to Wells Fargo in its role as the *beneficiary's bank* here. *See id.* §§ 11302(a) (providing the obligations of the *receiving bank*); 11303(c) (providing that "issuer of the erroneous order [Grand Bayman] is entitled to recover from the *beneficiary* of the order") (emphasis added).[6]

## V. CONCLUSION

The undisputed facts demonstrate that Wells Fargo did precisely what section 11207(b)(1) permits: it relied on an account number in processing a wire transfer without knowing the beneficiary name and number referred to different persons. Cal.

[6] The Court finds Grand Bayman's remaining arguments equally unpersuasive and/or unsupported.

Com. Code § 11207(b)(1). "For originators and other senders[,] the message embodied in [section 11207(b)] is that they should take steps to see that the numbers on their messages are the correct numbers. They should take no satisfaction in the fact that the proper names appear on the messages." *TME*, 124 Cal. App. 4th at 1037 (quoting White & Summers, U.C.C., § 24-6). Grand Bayman may have failed to heed the message, but it may not now find satisfaction in having listed the proper name.

Construing all reasonable inferences in Grand Bayman's favor, Wells Fargo establishes that it processed the Wire Transfer automatically based on the account number provided, without actual knowledge of a mismatch between the beneficiary name and number. Grand Bayman fails to raise a genuine issue of fact to dispute that Wells Fargo is entitled to the protections of the safe harbor. Accordingly, the safe harbor applies, and Grand Bayman's claim for wrongful payment of a wire transfer fails as a matter of law. The Court **GRANTS** Wells Fargo's Motion for Summary Judgment. Wells Fargo shall submit a Proposed Judgment within seven days of the date of this order.

**IT IS SO ORDERED.**

January 21, 2021

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

**NOTE CHANGES MADE BY THE COURT**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 19-CV-7698 ODW(RAOx)
Hon. Otis D. Wright, II
Ctrm 5D (1st St.)

**[~~Proposed~~] ORDER**

Action Commenced: May 23, 2019
Trial Date: October 23, 2020

The motion of plaintiff Grand Bayman Belize, Ltd. to compel production of account and other records concerning defendant Wells Fargo Bank., N.A.'s third party account holder came on for hearing on August 14, 2020. Having considered the papers filed by, and the argument of, the parties and having received no submission by or communication from the third party, and

///

///

///

///

///

GOOD CAUSE appearing therefor, the motion is hereby GRANTED. Defendant shall produce its account and other records concerning the third party forthwith, but in no event later than August 17, 2020.

IT IS SO ORDERED.

Dated: August 14, 2020

Rozella A. Oliver

Hon. Rozella A. Oliver
United States District Magistrate Judge

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**REPLY IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Wells Fargo Met Its Burden As The Moving Party .......... 2

B. Plaintiff Does Not Raise A Triable Issue Of Material Fact .......... 2

1. Section 11209 did not preclude acceptance because the beneficiary account number existed at Wells Fargo .......... 2

2. Subsection 11207(a) is "Subject to subsection 11207(b)," which applies in this case because Wells Fargo did not have actual knowledge of the mismatch. .......... 5

(a) Section 11207(a) Does Not Apply .......... 6

(b) The Section 11207(b) Safe Harbor Applies .......... 8

3. Section 11302(a)(1) does not apply to Wells Fargo in this case, who is the "beneficiary bank." .......... 12

C. Section 11303(c) Does Not Apply To Wells Fargo .......... 13

III. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiken v. Interglobal Mergers & Acquisitions*, 2006 U.S. Dist. LEXIS 45730, 2006 WL 1878323 (S.D.N.Y. July 5, 2006) ........ 11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ........ 2

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ........ 3

*Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So.2d 967 (Fla.App. 1998) ........ 6, 7

*Donmar Enterprises, Inc. v. Southern Nat. Bank of North Carolina*, 828 F. Supp. 1230 (W.D.N.C. 1993), *aff'd*, 64 F.3d 944 (4th Cir. 1995) ........ 7

*K Mart Corp. v. Cartier Inc.*, 486 U.S. 281 (1988) ........ 3

*Karkour v. United States*, 2010 U.S. Dist. LEXIS 153437 (C.D. Cal. Mar. 10, 2010) ........ 11

*New S. Fed. Sav. Bank v. Flatbush Fed. Sav. & Loan Ass'n*, 2002 U.S. Dist. LEXIS 20512 (S.D.N.Y. Oct. 24, 2002) ........ 1, 6, 7

*Sharkey v. J.P. Morgan Chase & Co.*, No. 10cv3824 (DLC), 2018 U.S. Dist. LEXIS 35538 (S.D.N.Y. Mar. 5, 2018) ........ 11

*Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) ........ 1

*Sterling Sav. Bank v. Poulsen*, No. C -12-01454 EDL, 2013 U.S. Dist. LEXIS 105948 (N.D. Cal. July 29, 2013) ........ 11

*TME Enterps., Inc. v. Norwest Corp.*,
124 Cal.App.4th 1021 (2004) .......... 1, 9, 10

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*,
2003 U.S. Dist. LEXIS 2707 (S.D.N.Y. Feb. 25, 2003) .......... 7

*United States v. BCCI Holdings (Luxembourg), S.A.*,
980 F. Supp. 21 (D.D.C. 1997) .......... 7

*United States v. Menasche*,
348 U.S. 528 (1955) .......... 3, 4

**Statutes**

31 U.S.C. § 5318(h)(2)(b) .......... 11

Cal. U. Com. Code § 1207(b)(1) .......... 4

Cal. U. Com. Code § 11103(a)(2) .......... 4

Cal. U. Com. Code §§ 11207(b) and 11209(b) .......... 4

Cal. U. Com. Code § 11207(b) and cmt 2 .......... 1

Cal. U. Com. Code § 11209(c) .......... 3

Cal. U. Com. Code § 11209, cmt 4 .......... 5

Cal. U. Com. Code §§ 11302(a) and 11209(a) .......... 13

Cal. U. Com. Code § 11303(c) .......... 14

Cal. U. Com. Code § 11303, cmt 4 .......... 14

**Other Authorities**

Fed. R. Civ. P. 56(a) .......... 2

## I. INTRODUCTION

Summary judgment should be granted because Wells Fargo met its burden as the moving party and plaintiff fails to raise a triable issue of material fact.

Plaintiff's opposition is without merit. It misstates the law and asserts "facts" based entirely on speculation. For example, Plaintiff's demand for restitution under Sections 11302(a)(1) and 11303(c)[1] fail because neither of those sections apply to Wells Fargo. Both the text of the statute and the official comments make that perfectly clear.

Plaintiff also asks this court to adopt an interpretation of Sections 11209(c) and 11207(a) that is not only unprecedented and unsupported by any case law, but would also require banks to screen the names and addresses in every incoming wire to determine the identity of the intended beneficiary—effectively striking down the safe harbor in Section 11207(b), which allows banks to process wires based on account numbers alone. The legislature adopted Section 11207(b) because it is necessary in order to efficiently and accurately process high-volumes of wires.[2] California and District Courts have upheld that policy.[3] This Court should too.

Wells Fargo respectfully requests that its motion for summary judgment be granted.

---

[1] All statutory citations are to the California Uniform Commercial Code.

[2] Cal. U. Com. Code § 11207(b) and cmt 2: "Manual handling of payment orders is both expensive and subject to human error. If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced. Subsection (b) allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons."

[3] *See TME Enterps., Inc. v. Norwest Corp*., 124 Cal.App.4th 1021, 1033 (2004); *accord Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017); *New S. Fed. Sav. Bank v. Flatbush Fed. Sav. & Loan Ass'n*, 2002 U.S. Dist. LEXIS 20512, at *4-7 (S.D.N.Y. Oct. 24, 2002).

## II. ARGUMENT

### A. Wells Fargo Met Its Burden As The Moving Party

Wells Fargo met its burden of proof. The admissible evidence makes a prima facie showing that Wells Fargo's processing of the subject wire falls under the Section 11207(b) safe harbor. This is a complete defense to Plaintiff's claim. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Specifically, by way of the declaration of Ms. Swirtz, Wells Fargo establishes that: plaintiff initiated the subject wire (UMF 1-2); Wells Fargo received the wire transfer order and processed it using automated means based on the account number alone (UMF 3-8); and, Wells Fargo did not have actual knowledge of the discrepancy between the intended beneficiary and account owner until Plaintiff's bank raised the issue weeks after the wire was processed (UMF 9-10).

Plaintiff's opposition does not challenge the fact that Wells Fargo met its burden. *See* Opposition, generally. Nor does plaintiff object to any of Wells Fargo's evidence. Accordingly, it is undisputed that Wells Fargo met its burden as the moving party.

### B. Plaintiff Does Not Raise A Triable Issue Of Material Fact

The burden shifts to Plaintiff to demonstrate a triable issue of material fact. *See Celotex Corp.*, 477 U.S. at 322. Plaintiff tries to do so by advancing five arguments as to why summary judgment should not be granted. None has merit.

#### 1. Section 11209 did not preclude acceptance because the beneficiary account number existed at Wells Fargo.

First, Plaintiff argues that Wells Fargo violated Section 11209(c). Plaintiff claims that, because "RAD" did not have an account at Wells Fargo, the Bank could not accept the wire and cannot avail itself to section 11207(b). The theory completely obliterates the safe harbor, rendering section 11207(b) meaningless. For this reason, as explained below, the theory lacks merit.

Section 11209(c) states as follows:

> Acceptance of a payment order cannot occur before the order is received by the receiving bank. Acceptance does not occur under paragraph (2) or (3) of subdivision (b) if the ***beneficiary of the payment order*** does not have an account with the receiving bank, the account has been closed, or the receiving bank is not permitted by law to receive credits for the beneficiary's account.

Cal. U. Com. Code § 11209(c), emphasis added.

Plaintiff's argument is that the "beneficiary of the payment order" is the person whose name and address is stated in the payment order—without regard to the account number. Plaintiff claims wires can only be accepted (i.e., processed) if the person identified has an account at the bank. In other words, banks cannot rely on account numbers (alone) when accepting wires.

In this case, RAD's name and address were listed in the payment order, making RAD the purported "beneficiary of the payment order," but RAD did not have an account at Wells Fargo. Plaintiff therefore contends the wire should not have been accepted by Wells Fargo.

Plaintiff's interpretation of the term "beneficiary" is too narrow because it undermines the Section 11207(b) safe harbor. It should be disregarded.

When interpreting a statute, words used are to be given their ordinary meaning. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 860 (1984). But, the language in question is to be construed in harmony with related provisions and the statute as a whole. *K Mart Corp. v. Cartier Inc.*, 486 U.S. 281, 291 (1988). Indeed, language should not be construed in a way that renders a term surplusage. *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("'The cardinal principle of statutory construction is to save and not to destroy." [Citation.] It is our duty "to give effect, if possible, to every clause and

word of a statute," [Citation] rather than to emasculate an entire section, as the Government's interpretation requires.").

If Plaintiff's interpretation of "beneficiary" were accepted, it would require beneficiary banks to screen the names and addresses in every payment order to determine the identity of each beneficiary. That is the opposite of what Section 11207(b)'s safe harbor expressly allows—namely, for banks to rely solely on the account number and "need not determine whether the name and number refer to the same person." Cal. U. Com. Code § 1207(b)(1). Plaintiff's reading would render Section 11207(b) surplusage. *Menasche*, 348 U.S. at 538-39. That should not happen.

Section 11209 must be read in harmony with other provision in Article 4A. To that end, Section 11207(b) allows wires to be processed based on the account number alone. In that instance, a "beneficiary" is simply the account where payment is directed to be made. In this case, account x3420.

Plaintiff's definition of "beneficiary" should also be disregarded because the Commercial Code already provides a definition. Section 11103(a)(2) defines "beneficiary" as "the person to be paid by the beneficiary's bank." Cal. U. Com. Code § 11103(a)(2). Substituting that phrase, Section 11209(c) reads: "'Acceptance does not occur … if [the person to be paid by the beneficiary's bank] does not have an account with the receiving bank." For a wire processed based on the account number, "the person to be paid" is the person who owns the account identified in the wire instructions. Accordingly, Section 11209(c) is just a statement of the obvious: a wire cannot be accepted if there is no account to deposit the funds to.

In this case, the account number in the payment order matched a valid Wells Fargo account. That was the "beneficiary" pursuant to Section 11103(a)(2), Section 11207(b) and Section 11209(c). Acceptance occurred when Wells Fargo received the payment order and determined there was an account match. Cal. U. Com. Code §§ 11207(b) and 11209(b).

Moreover, the theory fails because Section 11209 does not create a basis for beneficiary bank liability (Wells Fargo) to the sender (Caye International Bank/Citi), let alone the originator (Plaintiff). Per official comment 4: "Acceptance by the beneficiary's bank does not create any obligation to the sender. Acceptance by the beneficiary's bank means that ***the bank is liable to the beneficiary*** for the amount of the order. Section 4A–404(a)." Cal. U. Com. Code § 11209, cmt 4 (emphasis added). In this case, Plaintiff is not the beneficiary.

For each of these reasons, Wells Fargo is not liable to the Plaintiff.

**2. Subsection 11207(a) is "Subject to subsection 11207(b)," which applies in this case because Wells Fargo did not have actual knowledge of the mismatch.**

Plaintiff's second, third and fourth arguments relate to Section 11207. They are: (1) Wells Fargo violated Section 11207(a) by accepting the wire; (2) the Section 11207(b) safe harbor does not apply because there was a "total" disconnect between the names of the intended beneficiary and account holder; and, (3) the Section 11207(b) safe harbor does not apply because Wells Fargo had actual knowledge of the mismatch.

Plaintiff fundamentally misunderstands Section 11207 and how its subsections relate to each other.

In pertinent part, Section 11207 states as follows:

> **(a)** Subject to subdivision (b), if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.
>
> **(b)** If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:

> **(1)** Except as otherwise provided in subdivision (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

### (a) Section 11207(a) Does Not Apply

Plaintiff first argues that Wells Fargo violated subsection 11207(a) by accepting a payment order that referred to an unidentifiable beneficiary. Opposition at 5:6-7:23. That argument fails because Plaintiff ignores the "subject to subdivision (b)" language appearing in the very first line. The analysis therefore starts—rather than ends—with subsection 11207(b). And, because Wells Fargo relied on the account number in the payment order and had no actual knowledge of any mismatch, the analysis ends here.

Plaintiff tries to flip the order of operation, in complete disregard for the "subject to" language in the statute. To that end, Plaintiff cites a Florida appellate decision, *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So.2d 967 (Fla.App. 1998). The case is neither binding nor well-reasoned. Nowhere does the *Corfan* opinion discuss the "subject to subsection (b)" language or how to harmonize it with 11207(a). For that reason, its reasoning has been rejected by District Courts.

For example, in *New S. Fed. Sav. Bank v. Flatbush Fed. Sav. & Loan Ass'n*, 2002 U.S. Dist. LEXIS 20512, at *4-7 (S.D.N.Y. Oct. 24, 2002), where the payment order included an erroneous name but valid account number, the court rejected *Corfan* and held that the case was "governed entirely by subsection (b)."[4] In so

---

[4] *New S. Fed. Sav. Bank v. Flatbush Fed. Sav. & Loan Ass'n*, 2002 U.S. Dist. LEXIS 20512, at *4-5 (S.D.N.Y. Oct. 24, 2002):

> Plaintiff asserts: "A person is nonexistent or unidentifiable under the statute if the named beneficiary is not an identifiable account holder at the beneficiary

(footnote continued)

holding, the District Court rejected the below treatise, also cited by *Corfan*, to support its holding:

> New South cites Hawkland & Moreno UCC Series § 4A-207:1, but that treatise seems to urge the sender to avoid including two names. In any event, I prefer the analysis of Judge Robert D. Potter:
>
> > The Court finds that § 4A-207 only requires a bank to refuse a payment order when the beneficiary is unidentifiable. A beneficiary can be identified in any number of ways …. There was admittedly at least one identifiable beneficiary, and since § 4A-207 requires no more, the Defendant was not required to refuse the transfer under § 4A-207
>
> *Donmar Enterprises, Inc. v. Southern Nat. Bank of North Carolina*, 828 F. Supp. 1230, 1240 (W.D.N.C. 1993), *aff'd*, 64 F.3d 944, 950-51 (4th Cir. 1995).

*Flatbush*, 2002 U.S. Dist. LEXIS 20512 at *6; *see also Tzaras v. Evergreen Int'l Spot Trading, Inc.*, 2003 U.S. Dist. LEXIS 2707, at *14-15 (S.D.N.Y. Feb. 25, 2003) (although factually dissimilar, the Court rejected the plaintiff's theory that

---

bank." (7/16/02 Pl. Mem. at 6, emphasis added.) But plaintiff cites only two cases for that assertion, and both cases involved an account number that did not identify any existing account at the receiving bank. *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967 (Fla. 3rd Dist. Ct. App. 1998)(2-1 opinion); *United States v. BCCI Holdings (Luxembourg), S.A.*, 980 F. Supp. 21, 24 (D.D.C. 1997).

As a matter of common sense, a number is different from a name. If a number has a digit added or deleted, then it becomes a different number. But if a name has a letter (or a word) added or deleted, then it is not necessarily considered a different name. It may be sufficient to identify a person or an entity. In a case where the number clearly identifies an existing account and the name arguably identifies an existing account, subsection (a) should not govern. Instead, we should follow its first four words, which say "Subject to subsection (b), …." Subsection (b) is specifically addressed to our problem.
…
In my view, our case is governed entirely by subsection (b).

11207(a) applied and must be read in the disjunctive, and instead "adopt[ed] the analysis of Judge Potter in Donmar. Section 4-A-207(1) requires that there be at least one identifiable beneficiary.").

#### (b) The Section 11207(b) Safe Harbor Applies

The Opposition next argues that Section 11207(b)'s safe harbor does not apply because the Bank had actual knowledge of the mismatch when it processed the wire. *See* Opposition 7:24-9:15. But, there is no evidence of actual knowledge—only speculation and, at best, constructive knowledge. Both are insufficient to defeat summary judgment.

The undisputed facts are that Wells Fargo did not have actual knowledge of the mismatch. Specifically, UMF 4-8 set forth in detail the process by which Wells Fargo's wire transfer system automatically received and processed the wire into account x3420, without human intervention. Each of these facts is "Undisputed for purposes of this motion." *See* UMF 4-8.

Plaintiff tries to raise a triable issue by disputing UMF 3, 9 and 11.[5]

Plaintiff disputes UMF 3 on the grounds that the wire transfer order identified an account with a San Francisco branch routing number (121000248) but Wells Fargo sent the funds to an account with a New Jersey branch routing number (021200025), suggesting that someone manually intervened to redirect the wire. *See* Plaintiff's Response to UMF 3; Opposition at 9:1-6. Plaintiff's theory fails for several reasons. First, the wire was not sent to a physical location. It was sent to an

---

[5] UMF 3 is: Wells Fargo processed the Wire Transfer automatically, without human intervention, based on the beneficiary account number alone.

UMF 9 is: On October 5, 2018, when the Wire Transfer order was processed, Wells Fargo did not have actual knowledge that the name of the intended beneficiary in the Wire Transfer order did not match the name of the account holder of Account x3420.

UMF 10 is: On November 1, 2018, Wells Fargo received a message from Citibank through FedWire requesting the funds be returned. This was the first time Wells Fargo learned about a potential issue with the Wire Transfer.

account using account number x3420 and routing number 121000248, which is the same routing number used for all incoming wires to Wells Fargo deposit accounts in the United States.[6] Second, Plaintiff's theory derives from a monthly statement that says: "For Direct Deposit use Routing Number (RTN): 021200025." *See* Swirtz Decl., Exs. 1 and 3; Rothschild Decl., Ex. 5. However, the routing number used for Direct Deposit has nothing to do with the wire transfer in this case. Third, Plaintiff offers no admissible evidence demonstrating that the wire was in fact "redirected"—either automatically by Wells Fargo's wire transfer system or manually by a team member. Such speculation is insufficient to defeat Wells Fargo's summary judgment motion.

Plaintiff disputes UMF 9 and 11 on the grounds that Wells Fargo had knowledge of the mismatch because the name in the payment order did not match the name of the account holder. *See* Plaintiff's Response to UMF 9 and 11. In other words, Plaintiff claims the account records provided constructive knowledge of the mismatch. Even if this were true, ***constructive knowledge is not sufficient*** to establish liability under Section 11207(b).

In *TME Enterprises*, the court rejected an identical argument, holding "[c]onstructive knowledge…is insufficient to establish a violation of [4A-207]." *TME Enterps., Inc. v. Norwest Corp.*, 124 Cal.App.4th 1021, 1033 (2004). Actual knowledge by bank personnel handling the transaction is required. *Id*. And, "the beneficiary's bank has no duty to determine whether the name and account number specified in the wire transfer refer to the same person." *Id*. at 1031-1032.

Plaintiff also argues in the opposition (but not in the Response to UMF) that Wells Fargo's processing log reflects a possible mismatch. *See* Opposition, 8:28-

---

[6] Wells Fargo's website explains that different routing numbers are used for different purposes. For example, routing number 121000248 is used for all incoming wires to domestic accounts. And, each of the 50 states has a unique routing number for deposit accounts in the state. *See* https://www.wellsfargo.com/help/routing-number/ (last accessed 8/3/20).

9:1. That contention fails to raise a triable issue because it is unsupported by any admissible evidence. Presumably, Plaintiff is referring to the system memo that states "Possible name match in CDT party." As explained in the moving papers, that system memo is automatically populated by a software feature that is not licensed and does not work. *See* Dkt. 17-1, p. 9; Swirtz Decl., ¶20. It does not mean that a search was actually conducted or that a mismatch was identified. *Id.* In fact, the note would have appeared even if there had been a complete match in all respects. *Id.* So, this default system memo is a red-herring. *Id.* Plaintiff offers no evidence to the contrary; instead relying on speculation that the note "suggests" something. But, again, speculation is insufficient to defeat Wells Fargo's summary judgment motion.

Plaintiff next argues in the opposition (but, again, not in the Response to UMF) that the safe harbor in Section 11207(b) does not apply because there is a "complete disconnect" between the names of the intended beneficiary and account holder. Opposition at 7:24-8:24. Plaintiff cites *TME Enterprises* for the proposition that "banks may not take advantage of the section 11207(b) safe harbor if there is a 'complete disconnect between the names.' " Opposition, 8:9-13. Plaintiff's reliance on *TME Enterprises* is misplaced because that court was answering a different question than what is at issue here. In *TME Enterprise*, the court began with the premise that anytime a bank employee reviews a wire "the bank's wire operator is almost certain to have actual knowledge that there is some type of mismatch"; but knowledge of that mismatch does not mean the Bank has actual knowledge the name and "the number refer to different people." *See TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1034 (2004). So the court concluded that where the Bank has actual knowledge of a mismatch, it should only "be exposed to potential liability for accepting a wire if there is a complete disconnect between the names." *Id.*

The holding in *TME Enterprise* does not apply to a situation where, as here, the wire is processed based on the account number and no one looks at the name of the beneficiary and name of the accountholder. Plaintiff argues there is no case law limiting the "complete disconnect" rule to manual review situations. Opposition, 8:14-22. But the rule derives from a case involving manual inspection and there is no law applying it to cases involving automated processing. Expanding the rule to cases involving automated processing makes no sense—doing so effectively strikes down Section 11207(b) because banks would have to screen every name to make sure there is no "complete disconnect."

Finally, Plaintiff makes a strained argument that Wells Fargo breached a duty under 31 U.S.C. § 5318(h)(2)(b) to maintain records of the information used to verify a person's identify, and 31 CFR § 1020.210(b)(5)(ii) to implement procedures for monitoring to identify and report suspicious transactions. *See* Opposition, 9:8-15. These code sections were implemented by the USA Patriot Act, which amended the Bank Secrecy Act and requires financial institutions to aid the US Government in detecting and preventing money laundering and terrorist financing. *See Sharkey v. J.P. Morgan Chase & Co.*, No. 10cv3824 (DLC), 2018 U.S. Dist. LEXIS 35538, at *24 (S.D.N.Y. Mar. 5, 2018); *Sterling Sav. Bank v. Poulsen*, No. C -12-01454 EDL, 2013 U.S. Dist. LEXIS 105948, at *63-66 (N.D. Cal. July 29, 2013).

However, "neither the Bank Secrecy Act nor the Patriot Act affords a private right of action." *Aiken v. Interglobal Mergers & Acquisitions,* 2006 U.S. Dist. LEXIS 45730, at *4, 2006 WL 1878323 (S.D.N.Y. July 5, 2006); *Karkour v. United States*, 2010 U.S. Dist. LEXIS 153437, at *8 (C.D. Cal. Mar. 10, 2010) (and cases cited therein). And, there is no evidence that Wells Fargo's alleged failure to comply with the Act resulted in Wells Fargo obtaining actual knowledge that the name of the intended beneficiary did not match the account owner.

As Plaintiff fails to raise a triable issue of material fact, UMF 9 and 11 are undisputed.

**3. Section 11302(a)(1) does not apply to Wells Fargo in this case, who is the "beneficiary bank."**

Finally, Plaintiff's fifth argument is that Wells Fargo violated Section 11302(a)(1) by redirecting the wire from an intended San Francisco branch with routing number 121000248 to a New Jersey branch with routing number 021200025. *See* Opposition at 9:16-10:9; Plaintiff's Response to SUF 3. This theory fails because, as stated above, there is no evidence that the wire was "redirected." Plaintiff is relying on a monthly statement that instructs the account holder to use routing number 021200025 for direct deposit. *See* Opposition, 10:5, citing Swirtz Decl., Ex. 3. Direct deposit has nothing to do with the wire in this case.

The claim also fails because Section 11302(a)(1) does not apply to Wells Fargo in this transaction; it governs Plaintiff's banks' obligations when executing the payment order at Plaintiff's direction.

Section 11302(a)(1), titled "Obligations of receiving bank in executing payment order," states as follows:

> **(a)** Except as provided in subdivisions (b) to (d), inclusive, if the receiving bank accepts a payment order pursuant to subdivision (a) of Section 11209, the bank has the following obligations in executing the order:
>
> **(1)** The receiving bank is obliged to issue, on the execution date, a payment order complying with the sender's order and to follow the sender's instructions concerning (i) any intermediary bank or funds–transfer system to be used in carrying out the funds transfer, or (ii) the means by which payment orders are to be transmitted in the funds transfer. If the originator's bank issues a payment order to an intermediary bank, the originator's bank is obliged to instruct the intermediary bank according to the instruction of the originator. An intermediary bank in the funds transfer is similarly bound by an instruction given to it by the sender of the payment order it accepts.

The plain language of the statute makes clear that it governs the relationship between Plaintiff ("sender") and its banks—Caye International (the receiving bank in regards to Plaintiff's order) and Citibank (the intermediary bank used to relay the international wire to Wells Fargo). It requires Caye to issue a payment order complying with Plaintiff's/sender's order and to follow the Plaintiff's/sender's instructions concerning any intermediary banks (Citibank) and the means by which the funds are transferred. In plain English, it requires Plaintiffs' banks to do as Plaintiff instructs.

Additionally, the statute expressly states that it applies only "if the receiving bank accepts a payment order pursuant to subdivision (a) of Section 11209," and subsection 11209(a) applies to only "a receiving bank ***other than the beneficiary's bank***." Cal. U. Com. Code §§ 11302(a) and 11209(a), emphasis added. Here, Wells Fargo is both the receiving bank and beneficiary bank.

The statute simply does not apply to Wells Fargo. Plaintiff's legal theory fails, and its factual assertion in opposition to UMF 3 is without merit. UMF 3 remains undisputed: "Wells Fargo processed the Wire Transfer automatically, without human intervention, based on the beneficiary account number alone."

**C. Section 11303(c) Does Not Apply To Wells Fargo**

Plaintiff argues in summary fashion that, pursuant to Section 11303(c), Wells Fargo must restore to plaintiff the amount of the wire. Opposition, 10:10-19. This argument fails for the simple reason that Section 11303(c) does not create liability from Wells Fargo to Plaintiff. To the contrary, it expressly tells Plaintiff that its remedy is from the account holder.

Section 11303(c) states as follows:

> **(c)** If a receiving bank executes the payment order of the sender by issuing a payment order to a beneficiary different from the beneficiary of the sender's order and the funds transfer is completed on the basis of that error, the sender of the payment order that was erroneously executed and all previous senders in

> the funds transfer are not obliged to pay the payment orders they issued. **The issuer of the erroneous order is entitled to recover from the beneficiary of the order the payment received to the extent allowed by the law governing mistake and restitution.**

Cal. U. Com. Code § 11303(c).

Plaintiff's opposition cites most of Section 11303(c), but for some reason ends with an ellipse and fails to include the above language in bold. That sentence clearly states that any recourse is from the beneficiary to the extent allowed by the law of mistake and restitution.

The official comments are instructive as well. Comment #4 provides the following hypothetical:

> Suppose Originator instructs Originator's Bank to pay $1,000,000 to Account #12345 in Beneficiary's Bank. Originator's Bank erroneously instructs Beneficiary's Bank to pay $1,000,000 to Account #12346 and Beneficiary's Bank accepted. **Subsection (c) covers this case.** Originator is not obliged to pay its payment order, but Originator's Bank is required to pay $1,000,000 to Beneficiary's Bank. The remedy of Originator's Bank is to recover $1,000,000 from the holder of Account #12346 that received payment by mistake. Recovery based on the law of mistake and restitution is described in Comment 2.

Cal. U. Com. Code § 11303, cmt 4.

Comment 4 is instructive on two points. First, it illustrates that Section 11303(c) applies when the sender (Plaintiff) instructs the Originator Bank (Caye International) to pay Account 12345 and the Originator Bank mistakenly issues a payment order to pay Account 1234**<u>6</u>**. That is not the case here. In this case, the error started with the Plaintiff. Second, the comment makes clear that the remedy of Originator's Bank (Caye; not the Plaintiff) is to recover from the account holder (Ms. Aquino). Under no circumstances is the beneficiary bank (Wells Fargo) liable

to anyone. Plaintiff's demand for restitution from Wells Fargo under Section 11303 fails as a matter of law.

## III. CONCLUSION

Wells Fargo met its burden and Plaintiff has not raised a triable issue of material fact. Accordingly, Wells Fargo respectfully requests that its motion for summary judgment be granted.

DATED: August 3, 2020

SEVERSON & WERSON
A Professional Corporation

By: *\/s/Loren W. Coe*
LOREN W. COE

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

# PROOF OF SERVICE

***Grand Bayman Belize, Ltd. v. Wells Fargo & Company***
**USDC Central District Case No. 19-cv-07698 ODW (RAOx)**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On August 3, 2020, I served true copies of the following document(s): **REPLY IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & SORIANO, LLP<br>1900 Avenue of the Stars, 25th Fl.<br>Los Angeles, CA 90067-4506 | Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.<br><br>Telephone: (310) 282-8989<br>Facsimile: (310) 282-8903<br>Email: srothschild@khpslaw.com |

☒ **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 3, 2020, at Huntington Beach, California.

RYAN J. BROOKS

KING, HOLMES, PATERNO & SORIANO, LLP
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiff
Grand Baymen Belize

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO. 19-CV-7698 ODW(RAOx)<br>Hon. Otis D. Wright, II<br>Ctrm 5D (1st St.)<br><br>**DECLARATIONS OF RAFAEL AMUCHASTEGUI, DIKKA AMUCHASTEGUI AND STEPHEN D. ROTHSCHILD**<br><br>[Filed concurrently with Plaintiff's Opposition to Motion for Summary Judgment; Memorandum of Points and Authorities; Statement of Genuine Disputes of Material Fact]<br><br>Date: August 10, 2020<br>Time: 1:30 p.m.<br>Crtrm.: 5D<br><br>Action Commenced: May 23, 2019<br>Trial Date: October 23, 2020 |

# DECLARATION OF RAFAEL AMUCHASTEGUI

I, Rafael Amuchastegui, declare as follows:

1. I am an adult over the age of eighteen and am a Principal of RAD Architecture, Inc., ("RAD") and I held that position throughout 2018. I have personal knowledge of the matters below and could and would testify competently to them if asked.

2. In my capacity as a Principal of RAD, I am fully aware of the banking arrangements and accounts held and maintained by RAD, RAD's business operations, and RAD's corporate structure.

3. RAD is and throughout 2018 was a corporation organized and existing under the laws of the State of Florida.

4. RAD's 's address, and the address used for all banking purposes, is and in 2018 was 117 N.W. 42nd Avenue, Suite CU2, Miami, Florida, 33126.

5. RAD has never opened, held, or maintained an account at Wells Fargo Bank, N.A.

6. RAD never held or maintained an account identified by number 28490 73420.

7. RAD has never requested, received or authorized any payment from or on behalf of Grand Bayman Belize, Ltd. at any account maintained at Wells Fargo Bank, N.A.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 8, 2019, at MIAMI, DADE, Florida.

Rafael Amuchastegui

5307.060/1519701.1

**DECLARATION OF DIKKA AMUCHASTEGUI**

I, Dikka Amuchastegui, declare as follows:

1. I am an adult over the age of eighteen and am Director of RAD Architecture, Inc., ("RAD") and I held that position throughout 2018. I have personal knowledge of the matters below and could and would testify competently to them if asked.

2. In my capacity as a Director of RAD, I am fully aware of the banking arrangements and accounts held and maintained by RAD, RAD's business operations, and RAD's corporate structure.

3. RAD is and throughout 2018 was a corporation organized and existing under the laws of the State of Florida.

4. RAD's 's address, and the address used for all banking purposes, is and in 2018 was 117 N.W. 42nd Avenue, Suite CU2, Miami, Florida, 33126.

5. RAD has never opened, held, or maintained an account at Wells Fargo Bank, N.A.

6. RAD never held or maintained an account identified by number 28490 73420.

7. RAD has never requested, received or authorized any payment from or on behalf of Grand Bayman Belize, Ltd. at any account maintained at Wells Fargo Bank, N.A.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 8, 2019, at Miami, Dade, Florida.

[signature]

Dikka Amuchastegui

5307.060/1519610.1

**DECLARATION OF STEPHEN D. ROTHSCHILD**

I, Stephen D. Rothschild, declare:

1. I am an attorney admitted to practice before this Court and am a partner of King, Holmes, Paterno & Soriano, LLP, attorneys for plaintiff Grand Bayan Belize, Ltd. ("plaintiff") herein. I have persona knowledge of the matters below and could and would testify competently to them if asked.

2. I make this declaration in support of plaintiff's opposition to the motion of defendant Wells Fargo Bank, NA ("Wells Fargo") for summary judgment.

3. Attached hereto as **Exhibit 1** is a true and correct copy of Wells Fargo's December 23, 2019, responses to plaintiff's first set of requests for admission.

4. Attached hereto as **Exhibit 2** is a true and correct copy of Wells Fargo's December 23, 2019, responses to plaintiff's first set of requests for production. Request number 3 sought account records for the fraudulent account to which Wells Fargo paid in response to plaintiff's payment order at issue herein. Wells Fargo agreed to produce those documents and did so, in redacted form.

5. Attached hereto as **Exhibit 3** are a true and correct copies of documents that Wells Fargo produced to my office in response to plaintiff's first set of requests for production, pages WF 3, 12 and 15, identifying account holder Julieta P. Aquino.

6. Attached hereto as **Exhibit 4** is a true and correct copy of page 2 of Westlaw PeopleMap report dated February 7, 2020, for Julieta P. Aquino, which reflects her address as "118 N 1ST ST, BERGENFIELD, NJ 07621-1811 | BERGEN County."

/ / /

/ / /

/ / /

/ / /

/ / /

7. Attached hereto as **Exhibit 5** is a true and correct copy of plaintiff's October 2, 2018 outgoing wire transfer request, produced herein as P00065.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 27, 2020, at Los Angeles, California.

*/s/ Stephen D. Rothschild*
Stephen D. Rothschild

# EXHIBIT 1

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 19-cv-07698 ODW (RAOx)<br>Hon. Otis D. Wright, II<br>Ctrm. 5D (1st St.)<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS, SET ONE (1)**<br><br>Action Filed: May 23, 2019<br>Removal Date: September 5, 2019<br>Trial Date: None Set |

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation) ("Defendant") responds to Plaintiff GRAND BAYMAN BELIZE, LTD.'s ("Plaintiff") first set of Requests for Admission as follows:

## **REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Admit that, on or about October 2, 2018, Caye International Bank, Ltd. issued an Outgoing Wire Transfer Request to pay the sum of $226,991.45 (the "Funds") from plaintiff's account to a Wells Fargo account held in the name of RAD Architecture, Inc. ("RAD") (the "Wire Request").

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, and to the extent Wells Fargo understands the request, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a $226,991.45 wire from Citibank with instructions to pay the wire to Wells Fargo account x3420. The wire instructions further indicated that the intended beneficiary was RAD Architecture, Inc., but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)). Wells Fargo lacks information to admit or deny the remainder of this request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Wire Request identified RAD's address as 11 NW 42 Ave., #CU-2, Miami, FL 33126 ("RAD's Address").

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a wire transfer from Citibank in the amount of $226,991.45 with instructions to pay the wire to Wells Fargo account x3420. The wire instructions further identified RAD's address as 117 NW 42 AVE. CU 2 MIAMI, FL 33126 USA, but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)). Wells Fargo lacks information to admit or deny the remainder of this request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the wire instructions that defendant received to carry out the Wire Request stated RAD's name as the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follow: Wells Fargo admits that the wire instructions it received in connection with the $226,991.45 wire indicated that the intended beneficiary was RAD Architecture, Inc., but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 4:**

Admit that the payment order to carry out the Wire Request (the "Payment Order") stated RAD's name as the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection: vague and ambiguous, particularly to the extent Payment Order is used interchangeably with "wire instructions" and is defined as carrying out the "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follow: Wells Fargo admits that the wire instructions it received in connection with the $226,991.45 wire indicated that the intended beneficiary was RAD Architecture, Inc., but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 5:**

Admit that the instructions that defendant received to carry out the Wire Request stated RAD's Address as the address of the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that the wire instructions it received in connection with the $226,991.45 wire identified RAD's address as 117 NW 42 AVE. CU 2 MIAMI, FL 33126 USA, but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 6:**

Admit that the Payment Order stated RAD's Address as the address of the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Objection: vague and ambiguous, particularly to the terms "Payment Order," which Plaintiff seems to use interchangeably with "wire instructions," and "Wire Request."

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a wire from Citibank in the amount of $226,991.45 with instructions to pay the wire to Wells Fargo account x3420. The wire instructions identified "117 NW 42 AVE. CU 2 MIAMI, FL 33126 USA" as the address of the intended beneficiary, but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 7:**

Admit that Wells Fargo accepted the Payment Order.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Objection: vague and ambiguous as to the term "Payment Order," which Plaintiff appears to use interchangeably with "wire instructions."

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a wire from Citibank in the amount of $226,991.45 with instructions to pay the wire to Wells Fargo account x3420. Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 8:**

Admit that the name of the holder of the account in which Wells Fargo deposited the Funds (the "Fraudulent Account") bore no similarity to RAD's name.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Objection: third party privacy rights.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that the name of the holder of Wells Fargo account x3420 was different from the name of the beneficiary stated in the instructions received by Wells Fargo for processing the subject wire. However, Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 9:**

Admit that the address of the holder of the Fraudulent Account bore no similarity to the address of the beneficiary stated on the payment order to carry out the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Objection: vague and ambiguous as to "payment order" and "Wire Request"; third party privacy rights.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that the address of the holder of Wells Fargo account x3420 was different from the address of the beneficiary stated in the instructions received by Wells Fargo for processing the subject wire. However, Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 10:**

Admit Wells Fargo did not verify the beneficiary's address provided with the Wire Instructions matched the address associated with the Fraudulent Account

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Objection: vague and ambiguous, particularly as to "Wire Instructions," which is capitalized but not defined and seemingly used interchangeably with "Payment Order."

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that Wells Fargo did not verify that the beneficiary's address provided in the wire instructions matched the address of the account holder because Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 11:**

Admit that RAD was not the holder of the Fraudulent Account at any time.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Admit that the name of the holder of Wells Fargo account x3420 was not RAD Architecture, Inc.

**REQUEST FOR ADMISSION NO. 12:**

Admit that RAD was not a Wells Fargo account holder when Wells Fargo deposited the Funds into the Fraudulent Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Objection: vague and ambiguous as to scope; the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

Subject to and without waiving the foregoing objection, and based on Wells Fargo's understanding that this request asks Wells Fargo to admit that there was no Wells Fargo business checking account in the name of "RAD Architecture, Inc." on October 5, 2018, Wells Fargo responds as follows: Admit.

**REQUEST FOR ADMISSION NO. 13:**

Admit that Wells Fargo did nothing to verify that the holder of the Fraudulent Account was authorized to receive the Funds.

**RESPONSE TO REQUEST FOR ADMISSION NO. 13:**

Deny.

**REQUEST FOR ADMISSION NO. 14:**

Admit that Wells Fargo did nothing to determine whether the name of the account holder of the Fraudulent Account bore any similarity to RAD's name.

**RESPONSE TO REQUEST FOR ADMISSION NO. 14:**

Objection: vague and ambiguous.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follows: Admit that Wells Fargo did not verify that the name of the holder of Wells Fargo account x3420 was "RAD Architecture, Inc." because Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 15:**

Admit that Wells Fargo did nothing to determine whether the address of the account holder of the Fraudulent Account was the same as the beneficiary's address on the payment order to implement the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 15:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo; duplicative of Request for Admission No. 10.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that Wells Fargo did not verify that the beneficiary's address provided in the wire instructions matched the address of the account holder because Wells Fargo processed the wire: (1) using automated procedures without any human

intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 16:**

Admit that plaintiff notified defendant that the Funds had been paid to an account that did not belong to RAD before the deadline for preserving its claim that Wells Fargo had wrongfully paid the Funds.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Objection: vague and ambiguous, particularly to the terms "deadline for preserving its claim"; irrelevant because, after Wells Fargo processed the wire using automated procedures based on the valid account number and without actual knowledge of any discrepancies, Wells Fargo had no obligation to attempt to retrieve funds. In fact, Wells Fargo would have been expressly prohibited by Financial Code section 1450 from retrieving/returning the funds to the originator (Plaintiff). See also *Venture General Agency, LLC v. Wells Fargo Bank, N.A.* (N.D. Cal) 2019 U.S.Dist. LEXIS 179291, at *11-12.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follows: Wells Fargo admits that, on November 2, 2018, Wells Fargo learned the funds had been deposited in an account that was not held by RAD.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the account holder to which defendant paid the Wire was not the account holder to which plaintiff wired the Funds.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Deny.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the Fraudulent Account was a personal account of an individual.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Admit.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Fraudulent Account was not a business account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Admit.

**REQUEST FOR ADMISSION NO. 20:**

Admit that Wells Fargo has no facts suggesting that the holder of the Fraudulent Account was the beneficiary of the payment order to implement the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follows: Deny.

DATED: December 23, 2019

SEVERSON & WERSON
A Professional Corporation

By: [signature]
LOREN W. COE

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

## PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On December 23, 2019, I served true copies of the following document(s): **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS, SET ONE (1)** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & SORIANO, LLP<br>1900 Avenue of the Stars, 25th Fl.<br>Los Angeles, CA 90067-4506 | Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.<br><br>Telephone: (310) 282-8989<br>Facsimile: (310) 282-8903<br>Email: srothschild@khpslaw.com |

☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ **BY E-MAIL: By agreement of the parties or by court order**, I caused a copy of the document(s) to be sent from e-mail address lwc@severson.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted, and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 23, 2019, at Irvine, California.

LOREN W. COE

# EXHIBIT 2

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE (1)**

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation) ("Defendant") responds to Plaintiff GRAND BAYMAN BELIZE, LTD.'s ("Plaintiff") first set of Requests for Production as follows:

**DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 1:**

All policies, procedures, manuals, instructions, memoranda, or other documents that set forth Wells Fargo's policies and procedures for processing payment orders including, but not limited to, for depositing funds in Wells Fargo accounts pursuant to such instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Objection: vague and ambiguous to the extent it is unclear if Plaintiff seeks policies and procedures concerning incoming and/or outgoing wires. For the same reason, to the extend Plaintiff requests all documents relating to procedures (including training manuals) for wiring funds from Wells Fargo customer accounts—rather than procedures relating to the receipt and processing of wires to Wells Fargo accounts, the request is overbroad and unduly burdensome and not relevant to any party's claim or defense, or proportional to the needs of the case (Fed. R. Civ. P. 26(b)). The request is also unlimited in time and scope.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive policies and procedures (from the relevant timeframe and relating to the receipt/processing of wire transfer orders) in its possession, custody or control subject to the parties entering into a protective order.

**REQUEST FOR PRODUCTION NO. 2:**

All policies, procedures, manuals, instructions, memoranda, or other documents that set forth Wells Fargo's policies and procedures for confirming the

identities of persons who open individual checking or savings accounts at Wells Fargo.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2</u>:**

Objection: overbroad and unduly burdensome as to time and scope, making the request harassive; the information sought, which relates to the opening of Wells Fargo accounts rather than the processing of wire transfer orders, is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

**<u>REQUEST FOR PRODUCTION NO. 3</u>:**

All Writings, including, but not limited to, all electronic records, signature cards, account applications, account records, emails, correspondence, ledgers, account or other financial statements, cancelled checks, wire instructions, records of reserves, memoranda, interviews, witness statements, statements of employees, and all other documents that refer or relate to the Fraudulent Account or, if that is not the account to which Wells Fargo deposited the Funds, the account to which Wells Fargo did deposit the funds. (For purposes of these requests, (a)"Writing" includes all "writings," "recordings," "photographs," "originals" and "duplicates" as those terms are defined in Fed.R.Evid. 1001; (b) "Funds" means the funds referenced in the October 2, 2018, Caye International Bank, Ltd. Outgoing Wire Transfer Request to pay the sum of $226,991 from plaintiff's account to a Wells Fargo account held in the name of RAD Architecture, Inc.; and (c) the "Fraudulent Account" means Wells Fargo account number 201800156776.)

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 3</u>:**

Objection: vague and ambiguous, particularly to the definition of "Fraudulent Account" because the funds were deposited into Wells Fargo account x3420, not account number 201800156776; overbroad and unduly burdensome, making the request harassive; compound; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P.

26(b)); potentially invades the attorney-client privilege and/or work product doctrine; the account holder has objected to the disclosure of his/her personal and/or financial information, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 4:**

All Writings that Wells Fargo generated, sent, received or came into possession of that relate or refer to any investigations or inquiries it conducted concerning the Wire Request, the Wire Instructions, the Payment Order, the Funds, the Fraudulent Account, the holder of the Fraudulent Account, or plaintiff. (For purposes of these requests, (a) the "Wire Request" means the October 2, 2018, Caye International Bank, Ltd. Outgoing Wire Transfer Request to pay the sum of $226,991 from plaintiff's account to a Wells Fargo account held in the name of RAD Architecture, Inc.; (b) the "Wire Instructions" mean the form, document, or other electronic information that Wells Fargo received to implement the Wire Request; (c) the "Payment Order" means the payment order pursuant to which Wells Fargo deposited the Funds into the Fraudulent Account, and (d) the "Funds" means the funds referenced in the Wire Request, the Wire Instructions and the Payment Order.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Objection: vague and ambiguous, particularly as to the terms Fraudulent Account, Wire Request, Wire Instructions, and Payment Order; overbroad and unduly burdensome, making the request harassive; compound; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)); potentially invades the attorney-client privilege and/or work product doctrine; the account holder has objected to the disclosure of his/her personal and/or financial information, precluding Wells Fargo from producing

such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658). To the extent this interrogatory seeks information or documents that Wells Fargo is absolutely prohibited from producing under 31 U.S.C. § 5318(g), 31 C.F.R. § 1020.320(e), 12 C.F.R. § 21.11(k), including whether or not it filed a Suspicious Activity Report (SAR), Wells Fargo objects and declines to produce any such information or documents and declines to state whether or not any such information or documents exists.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: a diligent search and reasonable inquiry has been made in an effort to locate the item requested, but Wells Fargo is unable to comply because the document never existed.

**REQUEST FOR PRODUCTION NO. 5:**

All Writings that refer or relate to the Wire Request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Objection: vague and ambiguous, particularly as to the term Wire Request.

Subject to and without waiving the foregoing instructions, and based on Wells Fargo's understanding that "Wire Request" refers to Plaintiff's instructions provided to its bank, Wells Fargo responds as follows: Wells Fargo does not have any responsive documents in its possession, custody or control because the "Wire Request" was not directed to Wells Fargo.

**REQUEST FOR PRODUCTION NO. 6:**

All Writings that refer or relate to the Wire Instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Objection: vague and ambiguous, particularly as to the term Wire Instructions; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**<u>REQUEST FOR PRODUCTION NO. 7</u>:**

All Writings that refer or relate to the Payment Order.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 7</u>:**

Objection: vague and ambiguous, particularly as to the terms Payment Order; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**<u>REQUEST FOR PRODUCTION NO. 8</u>:**

All Writings that refer or relate to the Funds.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 8</u>:**

Objection: vague and ambiguous; overbroad and unduly burdensome, making the request harassive; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 9:**

All Writings that refer or relate to the holder of the Fraudulent Account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection: vague and ambiguous; overbroad and unduly burdensome as to time and scope, making the request harassive; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 10:**

All Writings that refer or relate to RAD Architecture, Inc.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection: overbroad as to time and scope (the request is not limited to the wire transfer in question or a particular account); vague and ambiguous; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, and based on Wells Fargo's understanding that the request seeks documents relating to the subject wire

transfer, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 11:**

All Writings that refer or relate to plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Objection: overbroad as to time and scope (the request is not limited to the wire transfer in question or a particular account); vague and ambiguous; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, and based on Wells Fargo's understanding that the request seeks documents relating to the subject wire transfer, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 12:**

All Writings that Wells Fargo contends show that it is not responsible to determine whether the name of the holder of accounts in which it deposits funds pursuant to a payment order bears any similarity to the name of the beneficiaries stated in the payment order or in any wire request or instructions associated with it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Objection: calls for legal analysis and legal conclusion; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce documents establishing that it processed the wire using automated procedures, without any human intervention, based on the Wells Fargo account number identified and without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR PRODUCTION NO. 13:**

All Writings that Wells Fargo contends show that it is not responsible to determine whether the account to which it is depositing funds pursuant to a payment order does not share an identical address as what may be provided with wire instructions or a payment order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Objection: calls for legal analysis and legal conclusion; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce documents establishing that it processed the wire using automated procedures without any human intervention based on the Wells Fargo account number identified and without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR PRODUCTION NO. 14:**

All Writings that Wells Fargo contends show that it is not responsible to determine whether the account to which it is depositing funds pursuant to a payment order is held by the beneficiary identified in the payment order or the wire instructions or request associated with it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Objection: calls for legal analysis and legal conclusion; duplicative of Request for Production No. 12; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce documents establishing that it processed the wire using automated procedures without any human intervention based on the Wells Fargo account number identified and without actual knowledge of

a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR PRODUCTION NO. 15:**

All Writings not otherwise responsive to these requests that refer or relate to the Wire Request, the Wire Instructions, the Payment Order, the Funds, the Fraudulent Account, or the holder of the Fraudulent Account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Objection: vague and ambiguous, particularly as to the terms Wire Request, Wire Instructions, and Payment Order; overbroad and unduly burdensome, making the request harassive; compound; violates third party privacy rights; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)); potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo is not aware of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 16:**

All Writings that identify circumstances under which Wells Fargo policies or procedures dictate that it refuse to honor a payment order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Objection: overbroad as to time and scope; vague and ambiguous; the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)); potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents for the relevant time period in its possession, custody or control subject to the parties entering into a protective order.

**REQUEST FOR PRODUCTION NO. 17:**

All Writings that support Wells Fargo's responses to plaintiffs first set of interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 18:**

All Writings that contain information that Wells Fargo reviewed to respond to plaintiff's first set of interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 19:**

All Writings that Wells Fargo contends support its denial of the allegations in plaintiffs complaint.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 19</u>:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**<u>REQUEST FOR PRODUCTION NO. 20</u>:**

If Wells Fargo's responses to any of the requests for admission served herewith is anything but an unqualified admission, all Writings that support such responses.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 20</u>:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**<u>REQUEST FOR PRODUCTION NO. 21</u>:**

All Writings that Wells Fargo contends support the denial in its answer to plaintiffs complaint that Plaintiff has been damaged in the amounts alleged, or in any other amount or amounts, or at all, by reason of any act or omission on the part of Defendant, or any of its agents, servants, or employees.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 21</u>:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 22:**

All Writings that Wells Fargo contends support its first affirmative defense that "[p]laintiff, by reason of its knowledge, statements, conduct, approval, authorization and/or ratification, are estopped from recovery herein."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 23:**

All Writings that Wells Fargo contends support its second affirmative defense, that "[a]ny and all activities of Defendant alleged in the Complaint were conducted with Plaintiffs consent, and Defendant is therefore free from actionable fault."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**<u>REQUEST FOR PRODUCTION NO. 24</u>:**

All Writings that Wells Fargo contends support its third affirmative defense, that "[e]ach of the acts attributed to Defendant, as alleged by Plaintiff in the Complaint, was acquiesced in and/or ratified by, participated in and/or consented to by Plaintiff and/or its agents."

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 24</u>:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**<u>REQUEST FOR PRODUCTION NO. 25</u>:**

All Writings that Wells Fargo contends support its fourth affirmative defense, that "[p]laintiff is at fault with respect to the matters alleged in the Complaint, and Plaintiffs recovery, if any, should be barred or reduced in proportion to their comparative fault."

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 25</u>:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 26:**

All Writings that Wells Fargo contends support its fifth affirmative defense, that "[i]f Plaintiff was damaged, the damage was caused, in part or in whole, by the acts or omissions of independent third parties, not Defendant."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 27:**

All Writings that Wells Fargo contends support its sixth affirmative defense, that "[p]laintiffs causes of action, or some of them, are displaced by the Uniform Commercial Code."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or

financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 28:**

All Writings that Wells Fargo contends support its seventh affirmative defense, that "[p]laintiff assumed the risk of the matters referred to in the Complaint, that Plaintiff knew and appreciated the nature of the risk, and that Plaintiff voluntarily accepted the risk."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 29:**

All Writings that Wells Fargo contends support its eighth affirmative defense, that "[d]efendant's compliance with the statutes, rules, and regulations which govern the subject matter of this lawsuit, including, but not limited to Cal. U. Com. Code§ 11207(b), preclude its liability to Plaintiff."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or

financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 30:**

All Writings that Wells Fargo contends support its ninth affirmative defense, that "[p]laintiff assumed the risk of the matters referred to in the Complaint, that Plaintiff knew and appreciated the nature of the risk, and that Plaintiff voluntarily accepted the risk."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 31:**

All Writings that support any affirmative defense that Wells Fargo intends to assert but did not identify in its answer to the complaint, as stated in its tenth affirmative defense.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Objection: vague and ambiguous.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo is not aware of any responsive documents supporting affirmative defenses that have not yet been asserted.

DATED: December 23, 2019

SEVERSON & WERSON
A Professional Corporation

By: LOREN W. COE

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On December 23, 2019, I served true copies of the following document(s): **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE (1)** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & SORIANO, LLP<br>1900 Avenue of the Stars, 25th Fl.<br>Los Angeles, CA 90067-4506 | Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.<br><br>Telephone: (310) 282-8989<br>Facsimile: (310) 282-8903<br>Email: srothschild@khpslaw.com |

☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ **BY E-MAIL: By agreement of the parties or by court order**, I caused a copy of the document(s) to be sent from e-mail address lwc@severson.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted, and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 23, 2019, at Irvine, California.

LOREN W. COE

# EXHIBIT 3

Consumer Account Application

## Customer 1 Information

| | |
|---|---|
| Customer Name: [redacted] | Street Address: 118 N 1ST ST |
| Customer Number (ECN): [redacted] | Address Line 2: |
| Account Relationship: Sole Owner | Address Line 3: |
| Taxpayer Identification Number (TIN): [redacted] TIN Type: SSN Date of Birth: [redacted] | City: [redacted] State: [redacted] |
| Primary ID Type: [redacted] Primary ID Description: [redacted] | ZIP/Postal Code: [redacted] Country: [redacted] Time at this address: Year(s) Month(s) |
| Primary ID St/Ctry/Prov: [redacted] Primary ID Issue Date: [redacted] Primary ID Expiration Date: [redacted] | Directional Address: *(Document when no physical residence, business or alternate street address.)* |
| Secondary ID Type: [redacted] Secondary ID Description: [redacted] | |
| Secondary ID State/Country: Secondary ID Issue Date: Secondary ID Expiration Date: | Previous Street Address: |
| Home Phone: [redacted] Business Phone: | City: State: |
| Current Employer: [redacted] | ZIP/Postal Code: Country: Time at this address: Year(s) Month(s) |
| Check Reporting: [redacted] | Country of Citizenship: US |
| Customer Status: Customer present | |

## Customer Signatures

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open or maintain the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**

Customer 1 Name
[redacted]

Customer 1 Signature
[redacted]

☐ Submit manually
☐ Signature not required

Date: 08/10/2018

[redacted]

DSG8921 (2-18 SVP )


Wells Fargo Confidential

**GRAND BAYMAN - WF 0003**

# Wells Fargo Everyday Checking

Account number: [redacted]3420 ■ October 11, 2018 - November 9, 2018 ■ Page 1 of 3

WELLS FARGO

[redacted]

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS** (1-800-869-3557)

*TTY:* 1-800-877-4833
*En español:* 1-877-727-2932
華語 1-800-288-2288 *(6 am to 7 pm PT, M-F)*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (347)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ☑ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☑ | Overdraft Protection | ☐ |
| Mobile Banking | ☑ | Debit Card | |
| My Spending Report | ☑ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 10/11 | [redacted] |
| Deposits/Additions | |
| Withdrawals/Subtractions | |
| **Closing balance on 10/17** | **$0.00** |

Account number: [redacted]3420
**JULIETA P AQUINO**
*New Jersey account terms and conditions apply*
For Direct Deposit use
Routing Number (RTN): [redacted]

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

**GRAND BAYMAN - WF 0012**

# Wells Fargo Everyday Checking

Account number: [redacted]3420 ■ September 13, 2018 - October 10, 2018 ■ Page 1 of 3

WELLS FARGO

[redacted]

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS** (1-800-869-3557)

*TTY:* 1-800-877-4833
*En español:* 1-877-727-2932
華語 1-800-288-2288 *(6 am to 7 pm PT, M-F)*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (347)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ☑ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☑ | Overdraft Protection | ☐ |
| Mobile Banking | ☑ | Debit Card | |
| My Spending Report | ☑ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 9/13 | [redacted] |
| Deposits/Additions | |
| Withdrawals/Subtractions | |
| **Ending balance on 10/10** | [redacted] |

Account number: [redacted]3420
**JULIETA P AQUINO**
*New Jersey account terms and conditions apply*
For Direct Deposit use
Routing Number (RTN): [redacted]

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

# EXHIBIT 4

No Documents Were Found In These Sources

Permissible Uses and FCRA Disclaimer
Permissible Uses

## Possible People Information

### Person Overview

**JULIETA P AQUINO**

118 N 1ST ST
BERGENFIELD, NJ 07621-1811 | BERGEN County

**Phone Number(s):**
201-387-1660
201-384-1925
201-289-7515

**SSN:**
132-82-XXXX - issued in NY in 1994-1996

**DOB:**
06/XX/1971 (Age: 48)

**Spouse/Close Association:**
GUILLERMA




### Date of Birth Summary

| Date of Birth | Source |
|---|---|
| 02/1971 (Age: 48) | Experian Credit Header Real Time \| People Find \| People Historical \| People Household #1 \| People Household #2 \| People Household #3 \| People Household #4 \| People Household #5 \| People Household #6 |
| 06/XX/1971 (Age: 48) | Experian Credit Header \| Experian Credit Header Real Time |

### SSN Summary

| SSN | Source |
|---|---|
| 132-82-XXXX - issued in NY in 1994-1996 | Equifax Credit Header \| Experian Credit Header \| Experian Credit Header Real Time \| People Find #1 \| People Find #2 \| People Historical \| Utility #1 \| Utility #2 \| Utility #3 \| Utility #4 \| Utility #5 |

### Name Variations

| Name | Source |
|---|---|
| JULIETA AQUINO | Experian Credit Header \| Experian Credit Header Real Time \| Liens and |

# EXHIBIT 5

CAYE
International Bank Ltd.

| Day | Month | Year |
|---|---|---|
| 2nd | October | 2018 |

2373.28 + 116 245,491.45 ok!

# Outgoing Wire Transfer Request

**50. Ordering Customer Information**

Account Number and Currency*: 12682 USD

Account Name*: Grand Bayman Belize, Ltd.-Oceanfront

Indemnity Password/Authorized Code*:

Telephone Number*: (501) 226-3569

Authorized Signature/(s)*:

**Payment Information**

Ordering amount & currency*: $226,991.45 USD

**If sending funds other than the currency of the ordering account, please check here to authorize conversion:**

☐ Please convert funds from my account and send the ordering amount and currency as stated above.

**WIRE INSTRUCTIONS:**

**Beneficiary Bank Information**

SWIFT Code/ABA/Routing*: Swift: WFBIUS6S Routing #: 121 000248

Bank Name*: Wells Fargo Bank

Physical Address*: 420 Montgomery Street

City & State*: San Francisco, California 94104 Country*: USA

**Beneficiary Customer Information**

Account Number*: Account #: 28490 73420

Account Name & Date of Birth **if Personal Account***: RAD Architecture, Inc.

Physical/Operating Address (No P.O. Box)*: 117 NW 42 Ave., #CU-2

City & State*: Miami, FL 33126 Country*: USA

**Reason for Payment*** Funds represent payment for Architecture Phase (Retainer, Charrette/Concept, Schematic Design) & Disbursements Category (Airfare, Hotel, Meal, Taxi)

**Intermediary Bank Information (if applicable)**

SWIFT Code/ABA/ Routing:

Bank Name:

Physical Address:

City & State: Country:

COMPLIANCE APPROVED

Note:
1. All sections indicated by asterisk (*) are required for wire transfer request to be processed.
2. All wire transfers requests received by Caye International Bank, Ltd. before 2pm EST will be processed the same day. If received after 2pm EST it will be processed the following business day.
3. Kindly allow 2 to 5 business days for funds to be credited to beneficiary account.

October 31, 2018

03/10/18

GB RAD Architecture

KING, HOLMES, PATERNO & SORIANO, LLP
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiff
Grand Bayman Belize, Ltd.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO. 19-CV-7698 ODW(RAOx)<br>Hon. Otis D. Wright, II<br>Ctrm 5D (1st St.)<br><br>**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed concurrently with declarations of Rafael Amuchastegui, Dikka Amuchastegui and Stephen D. Rothschild, and statement of genuine disputes of material fact]<br><br>Date: August 10, 2020<br>Time: 1:30 p.m.<br>Crtrm.: 5D<br><br>Action Commenced: May 23, 2019<br>Trial Date: October 23, 2020 |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Plaintiff Grand Bayman Belize, Ltd. ("plaintiff") respectfully submits the following memorandum of points and authorities in support of its opposition to defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for summary judgment.[1]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[1] This opposition was due on August 20, 2020. Plaintiff's counsel's calendaring system reflected the date as August 27, 2020, because it calculated the dates in this removed case based on California state rules and had not been changed when the case was removed. Counsel discovered the error as he was finalizing the opposition. Plaintiff is filing an *ex parte* application to continue the hearing date to August 17, 2020. Wells Fargo does not oppose the application.

## TABLE OF CONTENTS

Page


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

A. Procedural History .......... 2

B. Factual Background .......... 2

III. APPLICABLE LAW .......... 3

A. Section 11209 Precluded Acceptance Because RAD Did Not Have an Account with Wells Fargo .......... 3

B. Section 11207(a) Precluded Acceptance Because the Payment Order Referred to an Unidentifiable Beneficiary .......... 5

C. Commercial Code section 11207(b) Does Not Apply Because There Was a Total Disconnect Between "RAD" and the Fraudulent Account Holder's Name .......... 7

D. Evidence that Wells Fargo Had Actual Knowledge of the Mismatch .......... 8

E. Wells Fargo Violated Section 11302(a)(1) by Misdirecting Payment to an Account at a Different Bank than the One the Wire Instructions Identified .......... 9

IV. WELLS FARGO MUST RESTORE THE IMPROPERLY PAID FUNDS TO PLAINTIFF .......... 10

V. CONCLUSION .......... 11


## TABLE OF AUTHORITIES

Page(s)

Cases


*Corfan Banco Asuncion Paraguay v. Ocean Bank*, 714 S.2d (Fla.App. 1998) .......... 4

*Corfan Banco Asuncion Paraguay v. Ocean Bank,* 715 So.2d 967 (Fla.App. 1998), *supra* .......... 7

*New South Federal Savings Bank v. Flatbush Federal Savings and Loan Association of Brooklyn,* 40 UCC Rep.Serv.2d , 2002 WL 31413680 (S.D.N.Y. 2002) .......... 6, 8

*Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, 2017 WL 6539843 (N.D.CA 2017) .......... 8

*TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal.App.4th 1021 .......... 7, 8

*Venture Recycling Group, Inc. v. JP Morgan Chase and Co.*, 2019 WL 4543104 (C.D.CA 2019) .......... 8

Statutes

31 U.S.C. 5318(h)(2)(b) .......... 9
California Commercial Code section 11207 .......... 4, 5, 6
Florida Statutes section 670.207 .......... 4
Section 11207(a) .......... 5, 7
Section 11207(a) and (b) .......... 6
Section 11207(b) .......... 5, 7, 8

Regulations

31 CFR § 1020.210(b)(5)(ii) .......... 9

Other Authorities

6A Hawkland UCC Series § 4A-207:1 .......... 7
U.C.C. § 4A-207(a) .......... 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Wells Fargo's "hear no evil, see no evil, speak no evil" approach ignores its duties under the California Commercial Code and the many obvious red flags that showed that the account to which it paid plaintiff's funds was fraudulent and held my someone other than the named and intended recipient of the payment.

Section 11209(c)[2] prohibited Well Fargo from paying payment orders when "the beneficiary of the payment order does not have an account with the receiving bank." It is undisputed that the beneficiary of the payment order at issue, RAD Architecture, Inc. ("RAD"), had no account at Wells Fargo.

Section 11207(a) prohibited Wells Fargo from paying payment orders when "the name, bank account number, ***or*** other identification of the beneficiary refers to a nonexistent or unidentifiable person or account" (Emphasis added.) The payment order included RAD's name and Florida address (a means of identification specifically contemplated in the official comments to section 11207), neither of which Wells Fargo could have identified because RAD did not have an account at Wells Fargo and because the name and address attached to the account number in the payment order—Julieta Aquino with a Bergan County, New Jersey address--bore no similarity to RAD's name and Florida address.

Cases interpreting section 11207(b) prohibited Wells Fargo from paying payment orders when there is a complete disconnect between the name of the

---

[2] All statutory references in this brief are to the California Commercial Code. The Commercial Code provides the following definitions that will be used throughout this memorandum: "Payment order" means an instruction to pay an amount of money to a beneficiary, assuming certain conditions are met. (§ 11103(a)(1).) "Beneficiary" means the person to be paid. (§ 11103(a)(2).) "Sender" means the person who sent the instruction to the receiving bank. (§ 11103(a)(5).) "Receiving bank" is the bank to which the instruction is addressed. (§ 11103(a)(4).) The "sender" is not necessarily the initiator of a payment order—that is the "originator." (§ 11104(c).)

beneficiary and the name of the recipient account holder. In this case, "RAD Architecture, Inc." and "Julieta Aquino" are completely dissimilar.

Section 11302(a) required Wells Fargo to adhere to the payment order instructions. In this case, Wells Fargo ignored the instructions and sent payment to the New Jersey branch where Ms. Aquino maintained her fraudulent account, instead of, as the payment order instructed, to its San Francisco branch—a separate "bank" for purposes of the Commercial Code.

## II. STATEMENT OF FACTS

### A. Procedural History

Plaintiff filed the instant action in Los Angeles Superior Court on May 23, 2019. Wells Fargo removed the case to this Court on September 5, 2019, based on diversity of citizenship, and on the same date filed its answer generally denying the allegations in the complaint. [DOC 1, which includes the complaint and answer]

The Percipient/Fact Discovery Cutoff herein is August 17, 2020, and the Deadline for Hearing Motions from is August 17, 2020. A two-day bench trial is set for October 23, 2020.

### B. Factual Background

Plaintiff is in the business of developing and operating resort communities. (Declaration of Stephen D. Rothschild ("Rothschild Decl."), ¶ 3.) On October 5, Wells Fargo received a wire transfer order to pay $226,991.45 from plaintiff to RAD Architecture, Inc." at address "117 NW 42 Ave., # CU-2, Miami, FL 33126," with a fraudulent account number, Routing Number 121000248; Account Number 2849073420; identifying the funds as "payment for Architecture Phase (Retainer, Charrette/Concept, Schematic Design) & Disbursements Category (Airfare, Hotel)". Wells Fargo's processing log for plaintiff's payment order lists "RAD ARCHITECTURE, INC.," with its Florida address, as the beneficiary in two separate places. (Declaration of Michelle Swirtz in support of the instant motion ("Swirtz Decl."), ¶ 14 and Ex. 1, pp. WF 0018, 19. [DOC 17-2])

However, documents that Wells Fargo produced reveal the name of the fraudulent account holder as Julieta P. Aquino with an address of "118 N. 1st St." (Rothschild Decl., Ex. 3, pp. WF 003, 012 and 015.) A PeopleMap report reveals that Ms. Aquino's address is 118 N. 1st St. Bergenfield, NJ 07621. (Rothschild Dec., Ex. 4.) Obviously her name and address bear no resemblance to RAD's name and 114 NW 42 Ave, Miami, Florida address. Wells Fargo's processing log also notes a "[p]ossible name mismatch." (Swirtz Decl., Ex. 1, p. WF 0020.)

## III. APPLICABLE LAW

### A. Section 11209 Precluded Acceptance Because RAD Did Not Have an Account with Wells Fargo

Section 11209(c) provides, in pertinent part, as follows:

> Acceptance [of a payment order] does not occur under paragraph (2) or (3) of subdivision (b) [governing when acceptance occurs] ***if the beneficiary does not have an account with the receiving bank*** … .

(Emphasis added.)

In this case, RAD, the beneficiary, did not have an account with Wells Fargo. (Declarations of Rafael Amuchastegui, Dikka Amuchastegui; Rothschild Decl., Ex. 1, Wells Fargo response to request for admission no. 12.) Therefore, Wells Fargo could not have accepted the plaintiff's payment order and acceptance of it and payment to the fraudulent account were wrongful.

Wells Fargo may argue that section 11209 is subject to section 11207(b), which requires a bank to have actual knowledge of a mismatch between the name attached to the payee account and the beneficiary identified in the payment order for the bank to be liable for a wrongful payment. However, nothing in section 11209 suggests that it is subject to section 11207(b) and plaintiff is not aware of any authority that it is. When one section of the Commercial Code is subject to another section, the code so states expressly. See, e.g., section 11402(a) ([t]his section is subject to sections 11205 and 11207").

Wells Fargo also may argue that since an account existed with the number stated on the wire instructions, the "beneficiary of the payment" had an account at Wells Fargo. However, section 11209(c) unambiguously requires the beneficiary of the payment order to hold an account at the bank, not merely that an account exist. Such an argument might have some appeal if the beneficiary's name as reflected on the wire instructions was a variation of the real beneficiary's name, as usually occurs in schemes such as that perpetrated against plaintiff. That is not the case here, because "RAD" bears no similarity to the fraudster's name and where the addresses were in different states.

Wells Fargo may argue that its reading of section 11209 conforms to common practice and that the statute must be read in concert with section 11207, which allows banks to electronically process payment orders and, absent a complete disconnect between name and account number, rely on the account number. That is not a basis to disregard the plain language of the statute. Defendant bank made a similar argument in *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 714 S.2d 967 (Fla.App. 1998). In that case, the payment order identified an account holder, but a correct account holder. Construing Florida Statutes section 670.207, which is substantively identical to California Commercial Code section 11207, the court held as follows:

> Corfan Bank argues that this language is clear and unambiguous, where a name or bank account number, or other identification refers either to a nonexistent or unidentified person or a nonexistent account, the order cannot be accepted. Ocean Bank responds that such a "highly technical" reading of the statute is "contrary to commercial and practical considerations and common sense." ***It suggests that we look to the legislative intent and conclude that the "or" in the statute should be given conjunctive rather than disjunctive effect. We respectfully decline Ocean Bank's invitation to look behind the plain language of the statute and conclude that given its clarity it must be read as written.***

*Id.* at 969 (emphasis added, footnote omitted).

Section 11209 clearly and unambiguously provides that a bank cannot accept

a payment order if the beneficiary does not have an account at the bank. As in the *Corfan* case, there is no basis to look behind the plain language of section 11209 and conclude that it must be read other than as written. In the case at bar, it is undisputed that RAD, the beneficiary of the payment order, had no account at Wells Fargo and, therefore, that payment could not have occurred under section 11209(c).

### B. Section 11207(a) Precluded Acceptance Because the Payment Order Referred to an Unidentifiable Beneficiary

Section 11207(a) provides as follows:

> Subject to subdivision (b), if, in a payment order received by the beneficiary's bank, the ***name***, bank account number, ***or other identification of the beneficiary*** refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.[3]

(Emphasis added.)

In this case, RAD's name and address referred to an unidentifiable person, because RAD did not have an account at Wells Fargo and its name and address were not those of the fraudulent account holder. The comments to section 11207 expressly contemplate that "other identification" of an account holder includes its

---

[3] Section 11207(b) provides as follows:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subdivision (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.

address. (See Section 11207, comment 2, penultimate paragraph.) There would be no reason for an originator to provide a correct name and address, as plaintiff did in this case, if the bank could ignore them. That is consistent with the payment order forms, which require the payee's address. Obviously, the address would not be required unless it constituted further "identification" to be used by banks processing payment orders. Therefore, Wells Fargo could not accept the payment order and its payment to the fraudulent account holder was wrongful.

Section (a) is not subject to section (b) in this instance because there is no similarity between the name "RAD" and the fraudulent account holder's name, and because RAD's Florida address is not the fraudulent account holder's New Jersey address. See *New South Federal Savings Bank v. Flatbush Federal Savings and Loan Association of Brooklyn,* 40 UCC Rep.Serv.2d 137, 2002 WL 31413680 (S.D.N.Y. 2002) ("[i]n a case where the number identifies an existing account and the name arguably identifies an existing account, subsection (a) should not govern"). "RAD" and its address did not arguably identify an existing account.

The leading commentator on the UCC explains the intersection between Section 11207(a) and (b), as follows:

> The requirements of U.C.C. § 4A-207(a) are stated in the disjunctive. ***Thus, if the beneficiary's name in payment order and the bank account number provide an identifiable or known person but "other identification of the beneficiary" refers to a nonexistent or unidentifiable person or account, U.C.C. § 4A-207(a) is literally applicable.*** The express deference in U.C.C. § 4A-207(a) to U.C.C. § 4A-207(b) does not appear to resolve this conundrum. U.C.C. § 4A-207(b) provides rules only for payment orders in which the beneficiary is identified "by both name and an identifying or bank account number" in the instance in which the name and the number identify different persons.5
>
> It does not appear that this anomaly in U.C.C. § 4A-207(a) was intended; nonetheless, U.C.C. § 4A-207(a) suggests only one preventive mechanism for avoiding this conundrum: the sender should include no "other identification of the beneficiary" which might "refer … to a nonexistent or unidentifiable person or account." Then U.C.C. § 4A-207(a) would be harmonized with U.C.C. §

> 4A-207(b) as long as the name and account number refer to the same identifiable person or account. If they refer to different identifiable persons or accounts, then U.C.C. § 4A-207(b) controls. ***If either the name or account number refers to a nonexistent or unidentifiable person then U.C.C. § 4A-207(a) is again applicable***.

(6A Hawkland UCC Series § 4A-207:1, emphasis added.)

In *Corfan Banco Asuncion Paraguay v. Ocean Bank,* 715 So.2d 967 (Fla.App. 1998), *supra*, the payment request correctly identified the beneficiary but incorrectly identified the beneficiary's account number. Defendant bank argued that reading section 11207(a) in the disjunctive was "highly technical" and "contrary to commercial and practical considerations and common sense," so that it could rely on the correct identification of the beneficiary by name. (*Id.*, at 969.) The court rejected the argument and held that the "plain and ordinary" meaning of the statue requires reading it as disjunctive and that it is that "acceptance of the order could not have occurred" because, although it "correctly identified the beneficiary, it referred to a non-existent account number." (*Id.* at 970.) Wells Fargo would require this Court to read "or" in section 11207(a) in the conjunctive, which is not what is says.

In this case the payment order directed payment to RAD, which it identified by name and address. RAD's name and address referred to an unidentifiable person, because RAD did not have an account at Wells Fargo, the address on the payment order was not associated with the fraudulent account or a Wells Fargo account holder, and RAD's name was completely dissimilar to the fraudulent accountholder's name. Therefore, section 11207(a) precluded acceptance of plaintiff's payment order.

**C. Commercial Code section 11207(b) Does Not Apply Because There Was a Total Disconnect Between "RAD" and the Fraudulent Account Holder's Name**

Section 11207(b) shields banks from liability for wrongful payment of wires when the mismatch between the named beneficiary and the name of the holder of a fraudulent account is not obvious. See *TME Enterprises, Inc. v. Norwest Corp.*, 124

Cal.App.4th 1021, 1027 (payment deposited in account of "Vieri Gaines Guadagni" named beneficiary, "Vieri Gaines Guadagni, Trustee fbo McDaniel"); *Sliders Trading Co. L.L.C. v. Wells Fargo Bank NA*, 2017 WL 6539843 *1 (N.D.CA 2017) (payment deposited in account of "Grow More of 156000 New Century Drive, Gardena, California 90248," named beneficiary "Grow More, Inc."); *New South Federal Savings Bank v. Flatbush Federal Savings and Loan Association*, 2002 WL 31413680 *2 (S.D.N.Y. 2002) (payment deposited into account of "Femi Gold Ultimate Network," named beneficiary "Femi Gold").

However, banks may not take advantage of the section 11207(b) safe harbor if there is a "complete disconnect between the names." *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal.App.4th 1021, 1034 (2004). "A 'complete disconnect' is when the designated name and account bear no resemblance to each other and have nothing in common with each other." *Id.*

Wells Fargo will argue that the "complete disconnect" rule applies only when a human processes a payment request, but not where, as Wells Fargo claims here, the transaction was processed electronically. Although the *TME* case involved a manual review, the court did not limit the complete disconnect rule to manual reviews, and plaintiff is not aware of any authority that imposes such a limitation. See also *Venture Recycling Group, Inc. v. JP Morgan Chase and Co.*, 2019 WL 4543104 *5 (C.D.CA 2019) (denying motion to dismiss because, *inter alia*, plaintiff alleged total disconnect between beneficiary's name and name on account to which funds paid).

In this case, the complete disconnect between "RAD" and the account holder's name precludes Wells Fargo from taking refuge under section 11207(b).

**D. Evidence that Wells Fargo Had Actual Knowledge of the Mismatch**

Even if Wells Fargo could take advantage of the section 11207(b) safe harbor, at least two facts show that Wells Fargo had actual knowledge of the mismatch. First, Wells Fargo's processing log reflects a possible mismatch. (Swirtz Decl., Ex.

2, p. WF 0020.) Second, contrary to the wire instructions, which stated that payment was to be directed to Wells Fargo's bank at 420 Montgomery Street in San Francisco, California, Wells Fargo redirected payment to the New Jersey branch were the fraudster maintained her account. That redirection suggests a manual intervention whereby a person would have reviewed the transaction and seen that RAD did not have an account with Wells Fargo and was not the holder of the fraudulent account.

Moreover, Wells Fargo was under a duty under federal anti-fraud and anti-money laundering status to take action in this case. See Under 31 U.S.C. 5318(h)(2)(b), requiring banks to "maintain[] records of the information used to verify a person's identity, including ***name, address, and other identifying information***," 31 CFR § 1020.210(b)(5)(ii), which require banks to implement procedures for "[c]onducting ongoing monitoring to identify and report suspicious transactions." In this case, Wells Fargo failed to comply with that duty by paying a payment order directed to "RAD" in Florida to Ms. Aquino in New Jersey.

### E. Wells Fargo Violated Section 11302(a)(1) by Misdirecting Payment to an Account at a Different Bank than the One the Wire Instructions Identified

Section 11302(a)(1) provides that "[t]he receiving bank is obligated to issue, on the execution date, a payment order complying with the sender's order and to follow the sender's instructions … (ii) the means by which payment orders are to be transmitted in the funds transfer." Section 11105(a)(2) provides that "'Bank'" means a *person* engaged in the business of banking and includes a savings bank, savings and loan association, credit union, and trust company. ***A branch or separate office of a bank is a separate bank for purposes of this division***." (Emphasis added.)

Plaintiff's wire instruction identified "beneficiary's bank" as Wells Fargo Bank, 420 Montgomery Street, San Francisco, California 94104, with a routing number of 121 000 248. (Rothschild Decl., Ex. 5.) Wells Fargo's processing log

also contains an entry reflecting that routing number and identifying it as San Francisco, California. (Swirtz Decl., Ex. 1, p. WF 0019.) Wells Fargo failed to comply with that instruction when it directed payment to the fraudster's bank, Wells Fargo's Bergen County, New Jersey Branch, which, pursuant to section 11105(a)(2), is a different bank. See Swirtz Decl., Ex. 3, p. WF 0170, reflecting routing number 021200025. It also appears that Wells Fargo violated section 11208(a)(1) by obtaining information outside the "four corners" of the wire instructions to identify the beneficiary's bank when it knew that the "person" referred to in the wire instructions as the "receiver" was the San Francisco bank.

## IV. WELLS FARGO MUST RESTORE THE IMPROPERLY PAID FUNDS TO PLAINTIFF

Commercial Code section 11303(c) provides as follows:

> (c) If a receiving bank executes the payment order of the sender by issuing a payment order to a beneficiary different from the beneficiary of the sender's order and the funds transfer is completed on the basis of that error, the sender of the payment order that was erroneously executed and all previous senders in the funds transfer are not obliged to pay the payment orders they issued. …

Pursuant to section 11303(c), Wells Fargo must restore to plaintiff the amount it received in satisfaction of plaintiff's payment order because Wells Fargo paid an incorrect beneficiary.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V. CONCLUSION

For each of the foregoing reasons, plaintiff respectfully requests that this Court deny the instant motion, in its entirety.

DATED: July 27, 2020

KING, HOLMES, PATERNO & SORIANO, LLP

By: /s/ *Stephen D. Rothschild*
STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff
Grand Bayman Belize

## DECLARATION OF STEPHEN D. ROTHSCHILD

I, Stephen D. Rothschild, declare:

1. I am an attorney admitted to practice before this Court and am a partner of King, Holmes, Paterno & Soriano, LLP, attorneys for plaintiff Grand Bayan Belize, Ltd. ("plaintiff") herein. I have persona knowledge of the matters below and could and would testify competently to them if asked.

2. I make this declaration in support of plaintiff's opposition to the motion of defendant Wells Fargo Bank, NA ("Wells Fargo") for summary judgment.

3. Attached hereto as **Exhibit 1** is a true and correct copy of Wells Fargo's December 23, 2019, responses to plaintiff's first set of requests for admission.

4. Attached hereto as **Exhibit 2** is a true and correct copy of Wells Fargo's December 23, 2019, responses to plaintiff's first set of requests for production. Request number 3 sought account records for the fraudulent account to which Wells Fargo paid in response to plaintiff's payment order at issue herein. Wells Fargo agreed to produce those documents and did so, in redacted form.

5. Attached hereto as **Exhibit 3** are a true and correct copies of documents that Wells Fargo produced to my office in response to plaintiff's first set of requests for production, pages WF 3, 12 and 15, identifying account holder Julieta P. Aquino.

6. Attached hereto as **Exhibit 4** is a true and correct copy of page 2 of Westlaw PeopleMap report dated February 7, 2020, for Julieta P. Aquino, which reflects her address as "118 N 1ST ST, BERGENFIELD, NJ 07621-1811 | BERGEN County."

/ / /

/ / /

/ / /

/ / /

/ / /

7. Attached hereto as **Exhibit 5** is a true and correct copy of plaintiff's October 2, 2018 outgoing wire transfer request, produced herein as P00065.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 27, 2020, at Los Angeles, California.

*/s/ Stephen D. Rothschild*
Stephen D. Rothschild

**DECLARATION OF STEPHEN D. ROTHSCHILD**

I, Stephen D. Rothschild, declare:

1. I am an attorney admitted to practice before this Court and am a partner of King, Holmes, Paterno & Soriano, LLP, attorneys for plaintiff Grand Bayan Belize, Ltd. ("plaintiff") herein. I have persona knowledge of the matters below and could and would testify competently to them if asked.

2. I make this declaration in support of plaintiff's opposition to the motion of defendant Wells Fargo Bank, NA ("Wells Fargo") for summary judgment.

3. Attached hereto as **Exhibit 1** is a true and correct copy of Wells Fargo's December 23, 2019, responses to plaintiff's first set of requests for admission.

4. Attached hereto as **Exhibit 2** is a true and correct copy of Wells Fargo's December 23, 2019, responses to plaintiff's first set of requests for production. Request number 3 sought account records for the fraudulent account to which Wells Fargo paid in response to plaintiff's payment order at issue herein. Wells Fargo agreed to produce those documents and did so, in redacted form.

5. Attached hereto as **Exhibit 3** are a true and correct copies of documents that Wells Fargo produced to my office in response to plaintiff's first set of requests for production, pages WF 3, 12 and 15, identifying account holder Julieta P. Aquino.

6. Attached hereto as **Exhibit 4** is a true and correct copy of page 2 of Westlaw PeopleMap report dated February 7, 2020, for Julieta P. Aquino, which reflects her address as "118 N 1ST ST, BERGENFIELD, NJ 07621-1811 | BERGEN County."

/ / /

/ / /

/ / /

/ / /

/ / /

7. Attached hereto as **Exhibit 5** is a true and correct copy of plaintiff's October 2, 2018 outgoing wire transfer request, produced herein as P00065.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 27, 2020, at Los Angeles, California.

*/s/ Stephen D. Rothschild*
Stephen D. Rothschild

# EXHIBIT 1

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 19-cv-07698 ODW (RAOx)<br>Hon. Otis D. Wright, II<br>Ctrm. 5D (1st St.)<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS, SET ONE (1)**<br><br>Action Filed: May 23, 2019<br>Removal Date: September 5, 2019<br>Trial Date: None Set |

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation) ("Defendant") responds to Plaintiff GRAND BAYMAN BELIZE, LTD.'s ("Plaintiff") first set of Requests for Admission as follows:

**REQUESTS FOR ADMISSION**

**REQUEST FOR ADMISSION NO. 1:**

Admit that, on or about October 2, 2018, Caye International Bank, Ltd. issued an Outgoing Wire Transfer Request to pay the sum of $226,991.45 (the "Funds") from plaintiff's account to a Wells Fargo account held in the name of RAD Architecture, Inc. ("RAD") (the "Wire Request").

**RESPONSE TO REQUEST FOR ADMISSION NO. 1:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, and to the extent Wells Fargo understands the request, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a $226,991.45 wire from Citibank with instructions to pay the wire to Wells Fargo account x3420. The wire instructions further indicated that the intended beneficiary was RAD Architecture, Inc., but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)). Wells Fargo lacks information to admit or deny the remainder of this request.

**REQUEST FOR ADMISSION NO. 2:**

Admit that the Wire Request identified RAD's address as 11 NW 42 Ave., #CU-2, Miami, FL 33126 ("RAD's Address").

**RESPONSE TO REQUEST FOR ADMISSION NO. 2:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a wire transfer from Citibank in the amount of $226,991.45 with instructions to pay the wire to Wells Fargo account x3420. The wire instructions further identified RAD's address as 117 NW 42 AVE. CU 2 MIAMI, FL 33126 USA, but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)). Wells Fargo lacks information to admit or deny the remainder of this request.

**REQUEST FOR ADMISSION NO. 3:**

Admit that the wire instructions that defendant received to carry out the Wire Request stated RAD's name as the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 3:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follow: Wells Fargo admits that the wire instructions it received in connection with the $226,991.45 wire indicated that the intended beneficiary was RAD Architecture, Inc., but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 4:**

Admit that the payment order to carry out the Wire Request (the "Payment Order") stated RAD's name as the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 4:**

Objection: vague and ambiguous, particularly to the extent Payment Order is used interchangeably with "wire instructions" and is defined as carrying out the "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follow: Wells Fargo admits that the wire instructions it received in connection with the $226,991.45 wire indicated that the intended beneficiary was RAD Architecture, Inc., but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 5:**

Admit that the instructions that defendant received to carry out the Wire Request stated RAD's Address as the address of the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 5:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that the wire instructions it received in connection with the $226,991.45 wire identified RAD's address as 117 NW 42 AVE. CU 2 MIAMI, FL 33126 USA, but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 6:**

Admit that the Payment Order stated RAD's Address as the address of the beneficiary of the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 6:**

Objection: vague and ambiguous, particularly to the terms "Payment Order," which Plaintiff seems to use interchangeably with "wire instructions," and "Wire Request."

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a wire from Citibank in the amount of $226,991.45 with instructions to pay the wire to Wells Fargo account x3420. The wire instructions identified "117 NW 42 AVE. CU 2 MIAMI, FL 33126 USA" as the address of the intended beneficiary, but Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 7:**

Admit that Wells Fargo accepted the Payment Order.

**RESPONSE TO REQUEST FOR ADMISSION NO. 7:**

Objection: vague and ambiguous as to the term "Payment Order," which Plaintiff appears to use interchangeably with "wire instructions."

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Wells Fargo admits that, on October 5, 2018, it received a wire from Citibank in the amount of $226,991.45 with instructions to pay the wire to Wells Fargo account x3420. Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 8:**

Admit that the name of the holder of the account in which Wells Fargo deposited the Funds (the "Fraudulent Account") bore no similarity to RAD's name.

**RESPONSE TO REQUEST FOR ADMISSION NO. 8:**

Objection: third party privacy rights.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that the name of the holder of Wells Fargo account x3420 was different from the name of the beneficiary stated in the instructions received by Wells Fargo for processing the subject wire. However, Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 9:**

Admit that the address of the holder of the Fraudulent Account bore no similarity to the address of the beneficiary stated on the payment order to carry out the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 9:**

Objection: vague and ambiguous as to "payment order" and "Wire Request"; third party privacy rights.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that the address of the holder of Wells Fargo account x3420 was different from the address of the beneficiary stated in the instructions received by Wells Fargo for processing the subject wire. However, Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 10:**

Admit Wells Fargo did not verify the beneficiary's address provided with the Wire Instructions matched the address associated with the Fraudulent Account

**RESPONSE TO REQUEST FOR ADMISSION NO. 10:**

Objection: vague and ambiguous, particularly as to "Wire Instructions," which is capitalized but not defined and seemingly used interchangeably with "Payment Order."

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that Wells Fargo did not verify that the beneficiary's address provided in the wire instructions matched the address of the account holder because Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 11:**

Admit that RAD was not the holder of the Fraudulent Account at any time.

**RESPONSE TO REQUEST FOR ADMISSION NO. 11:**

Admit that the name of the holder of Wells Fargo account x3420 was not RAD Architecture, Inc.

**REQUEST FOR ADMISSION NO. 12:**

Admit that RAD was not a Wells Fargo account holder when Wells Fargo deposited the Funds into the Fraudulent Account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 12:**

Objection: vague and ambiguous as to scope; the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

Subject to and without waiving the foregoing objection, and based on Wells Fargo's understanding that this request asks Wells Fargo to admit that there was no Wells Fargo business checking account in the name of "RAD Architecture, Inc." on October 5, 2018, Wells Fargo responds as follows: Admit.

**<u>REQUEST FOR ADMISSION NO. 13</u>:**

Admit that Wells Fargo did nothing to verify that the holder of the Fraudulent Account was authorized to receive the Funds.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 13</u>:**

Deny.

**<u>REQUEST FOR ADMISSION NO. 14</u>:**

Admit that Wells Fargo did nothing to determine whether the name of the account holder of the Fraudulent Account bore any similarity to RAD's name.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 14</u>:**

Objection: vague and ambiguous.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follows: Admit that Wells Fargo did not verify that the name of the holder of Wells Fargo account x3420 was "RAD Architecture, Inc." because Wells Fargo processed the wire: (1) using automated procedures without any human intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**<u>REQUEST FOR ADMISSION NO. 15</u>:**

Admit that Wells Fargo did nothing to determine whether the address of the account holder of the Fraudulent Account was the same as the beneficiary's address on the payment order to implement the Wire Request.

**<u>RESPONSE TO REQUEST FOR ADMISSION NO. 15</u>:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo; duplicative of Request for Admission No. 10.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follow: Admit that Wells Fargo did not verify that the beneficiary's address provided in the wire instructions matched the address of the account holder because Wells Fargo processed the wire: (1) using automated procedures without any human

intervention, based on the valid account number; and (2) without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR ADMISSION NO. 16:**

Admit that plaintiff notified defendant that the Funds had been paid to an account that did not belong to RAD before the deadline for preserving its claim that Wells Fargo had wrongfully paid the Funds.

**RESPONSE TO REQUEST FOR ADMISSION NO. 16:**

Objection: vague and ambiguous, particularly to the terms "deadline for preserving its claim"; irrelevant because, after Wells Fargo processed the wire using automated procedures based on the valid account number and without actual knowledge of any discrepancies, Wells Fargo had no obligation to attempt to retrieve funds. In fact, Wells Fargo would have been expressly prohibited by Financial Code section 1450 from retrieving/returning the funds to the originator (Plaintiff). See also *Venture General Agency, LLC v. Wells Fargo Bank, N.A.* (N.D. Cal) 2019 U.S.Dist. LEXIS 179291, at *11-12.

Subject to and without waiving the foregoing objection, Wells Fargo responds as follows: Wells Fargo admits that, on November 2, 2018, Wells Fargo learned the funds had been deposited in an account that was not held by RAD.

**REQUEST FOR ADMISSION NO. 17:**

Admit that the account holder to which defendant paid the Wire was not the account holder to which plaintiff wired the Funds.

**RESPONSE TO REQUEST FOR ADMISSION NO. 17:**

Deny.

**REQUEST FOR ADMISSION NO. 18:**

Admit that the Fraudulent Account was a personal account of an individual.

**RESPONSE TO REQUEST FOR ADMISSION NO. 18:**

Admit.

**REQUEST FOR ADMISSION NO. 19:**

Admit that the Fraudulent Account was not a business account.

**RESPONSE TO REQUEST FOR ADMISSION NO. 19:**

Admit.

**REQUEST FOR ADMISSION NO. 20:**

Admit that Wells Fargo has no facts suggesting that the holder of the Fraudulent Account was the beneficiary of the payment order to implement the Wire Request.

**RESPONSE TO REQUEST FOR ADMISSION NO. 20:**

Objection: vague and ambiguous, particularly to the term "Wire Request," which does not appear to be a communication directed to or received by Wells Fargo.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follows: Deny.

DATED: December 23, 2019

SEVERSON & WERSON
A Professional Corporation

By: [signature]
LOREN W. COE

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

# PROOF OF SERVICE

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On December 23, 2019, I served true copies of the following document(s): **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS, SET ONE (1)** on the interested parties in this action as follows:

Howard E. King, Esq.
Stephen D. Rothschild, Esq.
KING, HOLMES, PATERNO & SORIANO, LLP
1900 Avenue of the Stars, 25th Fl.
Los Angeles, CA 90067-4506

Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.

Telephone: (310) 282-8989
Facsimile: (310) 282-8903
Email: srothschild@khpslaw.com

☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ **BY E-MAIL: By agreement of the parties or by court order**, I caused a copy of the document(s) to be sent from e-mail address lwc@severson.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted, and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 23, 2019, at Irvine, California.

LOREN W. COE

# EXHIBIT 2

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 19-cv-07698 ODW (RAOx)<br>Hon. Otis D. Wright, II<br>Ctrm. 5D (1st St.)<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE (1)**<br><br>Action Filed: May 23, 2019<br>Removal Date: September 5, 2019<br>Trial Date: None Set |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation) ("Defendant") responds to Plaintiff GRAND BAYMAN BELIZE, LTD.'s ("Plaintiff") first set of Requests for Production as follows:

**DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 1:**

All policies, procedures, manuals, instructions, memoranda, or other documents that set forth Wells Fargo's policies and procedures for processing payment orders including, but not limited to, for depositing funds in Wells Fargo accounts pursuant to such instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Objection: vague and ambiguous to the extent it is unclear if Plaintiff seeks policies and procedures concerning incoming and/or outgoing wires. For the same reason, to the extend Plaintiff requests all documents relating to procedures (including training manuals) for wiring funds from Wells Fargo customer accounts—rather than procedures relating to the receipt and processing of wires to Wells Fargo accounts, the request is overbroad and unduly burdensome and not relevant to any party's claim or defense, or proportional to the needs of the case (Fed. R. Civ. P. 26(b)). The request is also unlimited in time and scope.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive policies and procedures (from the relevant timeframe and relating to the receipt/processing of wire transfer orders) in its possession, custody or control subject to the parties entering into a protective order.

**REQUEST FOR PRODUCTION NO. 2:**

All policies, procedures, manuals, instructions, memoranda, or other documents that set forth Wells Fargo's policies and procedures for confirming the

identities of persons who open individual checking or savings accounts at Wells Fargo.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Objection: overbroad and unduly burdensome as to time and scope, making the request harassive; the information sought, which relates to the opening of Wells Fargo accounts rather than the processing of wire transfer orders, is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

**REQUEST FOR PRODUCTION NO. 3:**

All Writings, including, but not limited to, all electronic records, signature cards, account applications, account records, emails, correspondence, ledgers, account or other financial statements, cancelled checks, wire instructions, records of reserves, memoranda, interviews, witness statements, statements of employees, and all other documents that refer or relate to the Fraudulent Account or, if that is not the account to which Wells Fargo deposited the Funds, the account to which Wells Fargo did deposit the funds. (For purposes of these requests, (a)"Writing" includes all "writings," "recordings," "photographs," "originals" and "duplicates" as those terms are defined in Fed.R.Evid. 1001; (b) "Funds" means the funds referenced in the October 2, 2018, Caye International Bank, Ltd. Outgoing Wire Transfer Request to pay the sum of $226,991 from plaintiff's account to a Wells Fargo account held in the name of RAD Architecture, Inc.; and (c) the "Fraudulent Account" means Wells Fargo account number 201800156776.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Objection: vague and ambiguous, particularly to the definition of "Fraudulent Account" because the funds were deposited into Wells Fargo account x3420, not account number 201800156776; overbroad and unduly burdensome, making the request harassive; compound; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P.

26(b)); potentially invades the attorney-client privilege and/or work product doctrine; the account holder has objected to the disclosure of his/her personal and/or financial information, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 4:**

All Writings that Wells Fargo generated, sent, received or came into possession of that relate or refer to any investigations or inquiries it conducted concerning the Wire Request, the Wire Instructions, the Payment Order, the Funds, the Fraudulent Account, the holder of the Fraudulent Account, or plaintiff. (For purposes of these requests, (a) the "Wire Request" means the October 2, 2018, Caye International Bank, Ltd. Outgoing Wire Transfer Request to pay the sum of $226,991 from plaintiff's account to a Wells Fargo account held in the name of RAD Architecture, Inc.; (b) the "Wire Instructions" mean the form, document, or other electronic information that Wells Fargo received to implement the Wire Request; (c) the "Payment Order" means the payment order pursuant to which Wells Fargo deposited the Funds into the Fraudulent Account, and (d) the "Funds" means the funds referenced in the Wire Request, the Wire Instructions and the Payment Order.)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Objection: vague and ambiguous, particularly as to the terms Fraudulent Account, Wire Request, Wire Instructions, and Payment Order; overbroad and unduly burdensome, making the request harassive; compound; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)); potentially invades the attorney-client privilege and/or work product doctrine; the account holder has objected to the disclosure of his/her personal and/or financial information, precluding Wells Fargo from producing

such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658). To the extent this interrogatory seeks information or documents that Wells Fargo is absolutely prohibited from producing under 31 U.S.C. § 5318(g), 31 C.F.R. § 1020.320(e), 12 C.F.R. § 21.11(k), including whether or not it filed a Suspicious Activity Report (SAR), Wells Fargo objects and declines to produce any such information or documents and declines to state whether or not any such information or documents exists.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: a diligent search and reasonable inquiry has been made in an effort to locate the item requested, but Wells Fargo is unable to comply because the document never existed.

**REQUEST FOR PRODUCTION NO. 5:**

All Writings that refer or relate to the Wire Request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Objection: vague and ambiguous, particularly as to the term Wire Request.

Subject to and without waiving the foregoing instructions, and based on Wells Fargo's understanding that "Wire Request" refers to Plaintiff's instructions provided to its bank, Wells Fargo responds as follows: Wells Fargo does not have any responsive documents in its possession, custody or control because the "Wire Request" was not directed to Wells Fargo.

**REQUEST FOR PRODUCTION NO. 6:**

All Writings that refer or relate to the Wire Instructions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Objection: vague and ambiguous, particularly as to the term Wire Instructions; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 7:**

All Writings that refer or relate to the Payment Order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Objection: vague and ambiguous, particularly as to the terms Payment Order; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 8:**

All Writings that refer or relate to the Funds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Objection: vague and ambiguous; overbroad and unduly burdensome, making the request harassive; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 9:**

All Writings that refer or relate to the holder of the Fraudulent Account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Objection: vague and ambiguous; overbroad and unduly burdensome as to time and scope, making the request harassive; potentially invades the attorney-client privilege and/or work product doctrine and third party privacy rights; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)).

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 10:**

All Writings that refer or relate to RAD Architecture, Inc.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Objection: overbroad as to time and scope (the request is not limited to the wire transfer in question or a particular account); vague and ambiguous; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, and based on Wells Fargo's understanding that the request seeks documents relating to the subject wire

transfer, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 11:**

All Writings that refer or relate to plaintiff.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Objection: overbroad as to time and scope (the request is not limited to the wire transfer in question or a particular account); vague and ambiguous; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, and based on Wells Fargo's understanding that the request seeks documents relating to the subject wire transfer, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control.

**REQUEST FOR PRODUCTION NO. 12:**

All Writings that Wells Fargo contends show that it is not responsible to determine whether the name of the holder of accounts in which it deposits funds pursuant to a payment order bears any similarity to the name of the beneficiaries stated in the payment order or in any wire request or instructions associated with it.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Objection: calls for legal analysis and legal conclusion; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce documents establishing that it processed the wire using automated procedures, without any human intervention, based on the Wells Fargo account number identified and without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**<u>REQUEST FOR PRODUCTION NO. 13</u>:**

All Writings that Wells Fargo contends show that it is not responsible to determine whether the account to which it is depositing funds pursuant to a payment order does not share an identical address as what may be provided with wire instructions or a payment order.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 13</u>:**

Objection: calls for legal analysis and legal conclusion; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce documents establishing that it processed the wire using automated procedures without any human intervention based on the Wells Fargo account number identified and without actual knowledge of a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**<u>REQUEST FOR PRODUCTION NO. 14</u>:**

All Writings that Wells Fargo contends show that it is not responsible to determine whether the account to which it is depositing funds pursuant to a payment order is held by the beneficiary identified in the payment order or the wire instructions or request associated with it.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 14</u>:**

Objection: calls for legal analysis and legal conclusion; duplicative of Request for Production No. 12; potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce documents establishing that it processed the wire using automated procedures without any human intervention based on the Wells Fargo account number identified and without actual knowledge of

a discrepancy between the intended beneficiary and account holder (Cal. Comm. Code § 11207(b)).

**REQUEST FOR PRODUCTION NO. 15:**

All Writings not otherwise responsive to these requests that refer or relate to the Wire Request, the Wire Instructions, the Payment Order, the Funds, the Fraudulent Account, or the holder of the Fraudulent Account.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Objection: vague and ambiguous, particularly as to the terms Wire Request, Wire Instructions, and Payment Order; overbroad and unduly burdensome, making the request harassive; compound; violates third party privacy rights; some of the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)); potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo is not aware of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 16:**

All Writings that identify circumstances under which Wells Fargo policies or procedures dictate that it refuse to honor a payment order.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Objection: overbroad as to time and scope; vague and ambiguous; the information sought is not relevant to any party's claim or defense and proportional to the needs of the case (Fed. R. Civ. P. 26(b)); potentially invades the attorney-client privilege and/or work product doctrine.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents for the relevant time period in its possession, custody or control subject to the parties entering into a protective order.

**REQUEST FOR PRODUCTION NO. 17:**

All Writings that support Wells Fargo's responses to plaintiffs first set of interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 18:**

All Writings that contain information that Wells Fargo reviewed to respond to plaintiff's first set of interrogatories.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 19:**

All Writings that Wells Fargo contends support its denial of the allegations in plaintiffs complaint.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 20:**

If Wells Fargo's responses to any of the requests for admission served herewith is anything but an unqualified admission, all Writings that support such responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 21:**

All Writings that Wells Fargo contends support the denial in its answer to plaintiffs complaint that Plaintiff has been damaged in the amounts alleged, or in any other amount or amounts, or at all, by reason of any act or omission on the part of Defendant, or any of its agents, servants, or employees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 22:**

All Writings that Wells Fargo contends support its first affirmative defense that "[p]laintiff, by reason of its knowledge, statements, conduct, approval, authorization and/or ratification, are estopped from recovery herein."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 23:**

All Writings that Wells Fargo contends support its second affirmative defense, that "[a]ny and all activities of Defendant alleged in the Complaint were conducted with Plaintiffs consent, and Defendant is therefore free from actionable fault."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 24:**

All Writings that Wells Fargo contends support its third affirmative defense, that "[e]ach of the acts attributed to Defendant, as alleged by Plaintiff in the Complaint, was acquiesced in and/or ratified by, participated in and/or consented to by Plaintiff and/or its agents."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 25:**

All Writings that Wells Fargo contends support its fourth affirmative defense, that "[p]laintiff is at fault with respect to the matters alleged in the Complaint, and Plaintiffs recovery, if any, should be barred or reduced in proportion to their comparative fault."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its

possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 26:**

All Writings that Wells Fargo contends support its fifth affirmative defense, that "[i]f Plaintiff was damaged, the damage was caused, in part or in whole, by the acts or omissions of independent third parties, not Defendant."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 27:**

All Writings that Wells Fargo contends support its sixth affirmative defense, that "[p]laintiffs causes of action, or some of them, are displaced by the Uniform Commercial Code."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or

financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 28:**

All Writings that Wells Fargo contends support its seventh affirmative defense, that "[p]laintiff assumed the risk of the matters referred to in the Complaint, that Plaintiff knew and appreciated the nature of the risk, and that Plaintiff voluntarily accepted the risk."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 29:**

All Writings that Wells Fargo contends support its eighth affirmative defense, that "[d]efendant's compliance with the statutes, rules, and regulations which govern the subject matter of this lawsuit, including, but not limited to Cal. U. Com. Code§ 11207(b), preclude its liability to Plaintiff."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or

financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 30:**

All Writings that Wells Fargo contends support its ninth affirmative defense, that "[p]laintiff assumed the risk of the matters referred to in the Complaint, that Plaintiff knew and appreciated the nature of the risk, and that Plaintiff voluntarily accepted the risk."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Objection: seeks confidential information of a third party.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo will produce responsive documents in its possession, custody or control. However, Wells Fargo is unable to comply to the extent the request seeks documents that include the accountholder's personal and/or financial information because accountholder objected to such disclosure, precluding Wells Fargo from producing such information absent a court order (*Valley Bank of Nev. v. Sup.Ct.* (1975) 15 Cal. 3d 652, 658).

**REQUEST FOR PRODUCTION NO. 31:**

All Writings that support any affirmative defense that Wells Fargo intends to assert but did not identify in its answer to the complaint, as stated in its tenth affirmative defense.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Objection: vague and ambiguous.

Subject to and without waiving the foregoing instructions, Wells Fargo responds as follows: Wells Fargo is not aware of any responsive documents supporting affirmative defenses that have not yet been asserted.

DATED: December 23, 2019

SEVERSON & WERSON
A Professional Corporation

By: [signature]
LOREN W. COE

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On December 23, 2019, I served true copies of the following document(s): **DEFENDANT WELLS FARGO BANK, N.A.'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS, SET ONE (1)** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & SORIANO, LLP<br>1900 Avenue of the Stars, 25th Fl.<br>Los Angeles, CA 90067-4506 | Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.<br><br>Telephone: (310) 282-8989<br>Facsimile: (310) 282-8903<br>Email: srothschild@khpslaw.com |

☐ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ **BY E-MAIL: By agreement of the parties or by court order**, I caused a copy of the document(s) to be sent from e-mail address lwc@severson.com to the persons at the e-mail addresses listed in the Service List. The document(s) were transmitted, and I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 23, 2019, at Irvine, California.

LOREN W. COE

# EXHIBIT 3

Consumer Account Application

## Customer 1 Information

Customer Name: [redacted]

Customer Number (ECN): [redacted]

Account Relationship: Sole Owner

Taxpayer Identification Number (TIN): [redacted] TIN Type: SSN Date of Birth: [redacted]

Primary ID Type: [redacted] Primary ID Description: [redacted]

Primary ID St/Ctry/Prov: [redacted] Primary ID Issue Date: [redacted] Primary ID Expiration Date: [redacted]

Secondary ID Type: [redacted] Secondary ID Description: [redacted]

Secondary ID State/Country: Secondary ID Issue Date: Secondary ID Expiration Date:

Home Phone: [redacted] Business Phone:

Current Employer: [redacted]

Check Reporting: [redacted]

Customer Status: Customer present

Street Address: 118 N 1ST ST

Address Line 2:

Address Line 3:

City: [redacted] State: [redacted]

ZIP/Postal Code: [redacted] Country: [redacted] Time at this address: Year(s) Month(s)

Directional Address:
*(Document when no physical residence, business or alternate street address.)*

Previous Street Address:

City: State:

ZIP/Postal Code: Country: Time at this address: Year(s) Month(s)

Country of Citizenship: US

## Customer Signatures

Everything I have stated in this application is correct. You are authorized to make any inquiries that you consider appropriate to determine if you should open or maintain the account. This may include ordering a credit report or other report (i.e. information from any motor vehicle department or other state agency) on me. **I have received a copy of the applicable account agreement and the privacy policy (each may be amended from time to time) and agree to be bound by their terms.** I also agree to the terms of the dispute resolution program described in the foregoing agreements. **Under the dispute resolution program, our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.**

Customer 1 Name: [redacted]

Customer 1 Signature: [redacted]

☐ Submit manually
☐ Signature not required

Date: 08/10/2018

[redacted]

DSG8921 (2-18 SVP)

Page 2 of 2
Wells Fargo Confidential

**GRAND BAYMAN - WF 0003**

# Wells Fargo Everyday Checking

Account number: [redacted]3420 ■ October 11, 2018 - November 9, 2018 ■ Page 1 of 3

WELLS FARGO

[redacted]

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS** (1-800-869-3557)

*TTY:* 1-800-877-4833

*En español:* 1-877-727-2932

華語 1-800-288-2288 *(6 am to 7 pm PT, M-F)*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (347)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ☑ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☑ | Overdraft Protection | ☐ |
| Mobile Banking | ☑ | Debit Card | |
| My Spending Report | ☑ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 10/11 | [redacted] |
| Deposits/Additions | |
| Withdrawals/Subtractions | |
| **Closing balance on 10/17** | **$0.00** |

Account number: [redacted]3420

**JULIETA P AQUINO**

*New Jersey account terms and conditions apply*

For Direct Deposit use
Routing Number (RTN): [redacted]

**Overdraft Protection**

This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

**GRAND BAYMAN - WF 0012**

# Wells Fargo Everyday Checking

Account number: [redacted]3420 ■ September 13, 2018 - October 10, 2018 ■ Page 1 of 3

WELLS FARGO

[redacted]

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS** (1-800-869-3557)

*TTY:* 1-800-877-4833
*En español:* 1-877-727-2932
華語 1-800-288-2288 *(6 am to 7 pm PT, M-F)*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (347)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ☑ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ☑ | Overdraft Protection | ☐ |
| Mobile Banking | ☑ | Debit Card | |
| My Spending Report | ☑ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 9/13 | [redacted] |
| Deposits/Additions | |
| Withdrawals/Subtractions | |
| **Ending balance on 10/10** | [redacted] |

Account number: [redacted]3420
**JULIETA P AQUINO**
*New Jersey account terms and conditions apply*
For Direct Deposit use
Routing Number (RTN): [redacted]

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

**GRAND BAYMAN - WF 0015**

# EXHIBIT 4

No Documents Were Found In These Sources

Permissible Uses and FCRA Disclaimer
Permissible Uses

## Possible People Information

### Person Overview

**JULIETA P AQUINO**

118 N 1ST ST
BERGENFIELD, NJ 07621-1811 | BERGEN County

**Phone Number(s):**
201-387-1660
201-384-1925
201-289-7515

**SSN:**
132-82-XXXX - issued in NY in 1994-1996

**DOB:**
06/XX/1971 (Age: 48)

**Spouse/Close Association:**
GUILLERMA




### Date of Birth Summary

| Date of Birth | Source |
|---|---|
| 02/1971 (Age: 48) | Experian Credit Header Real Time \| People Find \| People Historical \| People Household #1 \| People Household #2 \| People Household #3 \| People Household #4 \| People Household #5 \| People Household #6 |
| 06/XX/1971 (Age: 48) | Experian Credit Header \| Experian Credit Header Real Time |

### SSN Summary

| SSN | Source |
|---|---|
| 132-82-XXXX - issued in NY in 1994-1996 | Equifax Credit Header \| Experian Credit Header \| Experian Credit Header Real Time \| People Find #1 \| People Find #2 \| People Historical \| Utility #1 \| Utility #2 \| Utility #3 \| Utility #4 \| Utility #5 |

### Name Variations

| Name | Source |
|---|---|
| JULIETA AQUINO | Experian Credit Header \| Experian Credit Header Real Time \| Liens and |


The data provided to you by WESTLAW may not be used as a factor in establishing a consumer's eligibility for credit, insurance, employment, or for any other purpose authorized under the FCRA.

# EXHIBIT 5

CAYE
International Bank Ltd.

| Day | Month | Year |
|---|---|---|
| 2nd | October | 2018 |

2373 28 + 116 245,491 45 -ok!

# Outgoing Wire Transfer Request

**50. Ordering Customer Information**

Account Number and Currency*: 12682 USD

Account Name*: Grand Bayman Belize, Ltd.-Oceanfront

Indemnity Password/Authorized Code*:

Telephone Number*: (501) 226-3569

Authorized Signature/(s)*:

**Payment Information**

Ordering amount & currency*: $226,991.45 USD

**If sending funds other than the currency of the ordering account, please check here to authorize conversion:**
☐ Please convert funds from my account and send the ordering amount and currency as stated above.

**WIRE INSTRUCTIONS:**

**Beneficiary Bank Information**

SWIFT Code/ABA/Routing*: Swift: WFBIUS6S Routing #: 121 000248

Bank Name*: Wells Fargo Bank

Physical Address*: 420 Montgomery Street

City & State*: San Francisco, California 94104 Country*: USA

**Beneficiary Customer Information**

Account Number*: Account #: 28490 73420

Account Name & Date of Birth if Personal Account*: RAD Architecture, Inc.

Physical/Operating Address (No P.O. Box)*: 117 NW 42 Ave., #CU-2

City & State*: Miami, FL 33126 Country*: USA

**Reason for Payment*** Funds represent payment for Architecture Phase (Retainer, Charrette/Concept, Schematic Design) & Disbursements Category (Airfare, Hotel, Meal, Taxi)

**Intermediary Bank Information (if applicable)**

SWIFT Code/ABA/ Routing:

Bank Name:

Physical Address:

City & State: Country:

COMPLIANCE APPROVED

03/10/18

Note:
1. All sections indicated by asterisk (*) are required for wire transfer request to be processed.
2. All wire transfers requests received by Caye International Bank, Ltd. before 2pm EST will be processed the same day. If received after 2pm EST it will be processed the following business day.
3. Kindly allow 2 to 5 business days for funds to be credited to beneficiary account.

October 31, 2018

G BRAD Architecture

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Date: August 10, 2020
Time: 1:30 p.m.
Crtrm.: 5D

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

Pursuant to Local Rule 56-1, Defendant Wells Fargo Bank, N.A. (erroneously sued as Wells Fargo & Company) submits the following Statement of Uncontroverted Facts and Conclusions of Law in Support of its Motion for Summary Judgment.

## I. UNCONTROVERTED FACTS

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 1. On October 5, 2018, Wells Fargo received a wire transfer order from Citibank, N.A. ("Citibank") for which Grand Bayman Belize Ltd. ("Plaintiff") was the originator. The wire transfer order was for $226,991.45 ("Wire Transfer"). | Declaration of Michelle Swirtz ("Swirtz Decl."), ¶14 and Ex. 1. |
| 2. The Wire Transfer order identified Wells Fargo account x3420 ("Account x3420") as the intended beneficiary account number and listed RAD Architecture, Inc. and Rad Architecture, Inc.'s address. | Swirtz Decl., ¶14 and Ex. 1;<br><br>Compl., ¶7. |
| 3. Wells Fargo processed the Wire Transfer automatically, without human intervention, based on the beneficiary account number alone. | Swirtz Decl., ¶¶14-15 and Ex. 1. |
| 4. Specifically, Wells Fargo's Money Transfer System ("MTS") received the Wire Transfer order from FedWire at 7:13:39.08 a.m. (Central Time).<br><br>This step is documented in the MTS audit trail as "5-OCT-2018 07:13:39.08." | Swirtz Decl., ¶15(a) Ex. 1. |
| 5. MTS immediately utilized the "Autotrieve" function to confirm that the beneficiary account number contained in the Wire Transfer order | Swirtz Decl., ¶15(b) and Ex. 1. |

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| (x3420) was a Wells Fargo account number.<br><br>This step is documented in the MTS audit trail as: "*AUTOTRIEVE VLD V name & address – CDT Acct. D." | |
| 6. MTS shared the pending Wire Transfer order with an external Wells Fargo application called Global Sanctions Monitoring Operations System ("GSMOS") for screening pursuant to the Office of Foreign Assets Control ("OFAC").<br><br>This step is documented in the MTS audit trail as: "Stop_Check msg routed to EXTERNAL STOP SERVER 5-OCT-2018 07:13:42.60" and "*MRSTOP/*MR/MAP/ /5/$$$FED." | Swirtz Decl., ¶15(c) and Ex. 1. |
| 7. MTS received confirmation from the GSMOS database that the Wire Transfer order passed OFAC sanctions screening, meaning that the Wire Transfer order was not identified for manual review (which, in any event, would only screen for OFAC compliance).<br><br>This step is documented as: "PASS-POFAC – Passed." | Swirtz Decl., ¶15(d) and Ex. 1. |
| 8. On October 5, 2018 at 7:13:46.50, Account x3420 was credited with $226,991.45 .<br><br>This step is documented as: "OPRID: $$$PAY TIME: 5-OCT-2018 07:13:46.50." | Swirtz Decl., ¶15(e) and Ex. 1. |

| **Uncontroverted Fact** | **Supporting Evidence** |
|---|---|
| 9. On October 5, 2018, when the Wire Transfer order was processed, Wells Fargo did not have actual knowledge that the name of the intended beneficiary in the Wire Transfer order did not match the name of the account holder of Account x3420. | Swirtz Decl., ¶¶15, 20-22. |
| 10. By October 17, 2018, the funds had been withdrawn and Account x3420 closed. | Swirtz Decl., ¶¶16-19 and Exs. 2-4. |
| 11. On November 1, 2018, Wells Fargo received a message from Citibank through FedWire requesting the funds be returned. This was the first time Wells Fargo learned about a potential issue with the Wire Transfer. | Swirtz Decl., ¶¶21-22 and Ex. 5. |

## II. CONCLUSIONS OF LAW

### A. Standard of Review on Motion

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 417 U.S. 317, 322 (1986). The moving party may bear its burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

When the moving party meets its burden, the nonmoving party "may not rely on the mere allegations in the pleadings in order to preclude summary judgment …[,]" but instead must produce "significant probative evidence" supporting those allegations. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to present a genuine issue as to a material fact." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). The pleadings define the scope of summary judgment. *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 990-92 (9th Cir. 2006).

Summary judgment may be granted as to each claim as to which there is no material dispute, and partial summary judgment (also known as summary adjudication[1]) may be granted for those parts of the claim as to which the Court determines no dispute exists. Fed. R. Civ. P. 56(a).

**B. The California Commercial Code Governs This Dispute**

Article 4A of the UCC, enacted as Division 11 of the California UCC,[2] governs "Funds Transfers" (hereinafter "Article 4A"). *See* Cal. U. Com. Code, §§ 11101 *et seq*. Section 11104 of the California UCC defines "funds transfers" as:

> the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an

---

[1] *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998); *see also California v. Campbell*, 138 F.3d 772, 776 (9th Cir. 1998).

[2] In California, Article 4A was codified as California Uniform Commercial Code section 11101 et seq. Official Uniform Commercial Code section numbers can be transliterated into California Uniform Commercial Code numbers by exchanging "11" for "4A-"; hence, official section 4A-207 becomes California section 11207.

> intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Cal. U. Com. Code, § 11104(a). The wire transfer at issue here fits squarely within the definition of a "funds transfer."

The California Supreme Court has held that Article 4A displaces any common law claim where the gravamen of the claim is that the bank improperly accepted and executed a funds transfer. *See Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 253-54 (2007) ("Zengen") (involving claims for breach of contract and negligence based on a bank's payment of four allegedly unauthorized wire transfers). The court confirmed that, in enacting Article 4A, it was the Legislature's intent to establish a "detailed scheme for analyzing the rights, duties and liabilities of banks and their customers" with respect to funds transfers. *Id.* at 251-52. And as enacted, Article 4A of the UCC was intended to be the "exclusive means of determining the rights, duties and liabilities" of banks and their customers with respect to funds transfers:

> Funds transfers involve competing interests—those of the banks that provide funds transfer services and the commercial and financial organizations that use the services, as well as the public interest. These competing interests were represented in the drafting process and they were thoroughly considered. The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, **resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article**.

*Id.* at 252, emphasis added.

Because Plaintiff's claim for "wrongful payment of wire transfer" alleges improper acceptance of a wire transfer, it falls squarely under Article 4A. Article 4A therefore exclusively governs this dispute. *See Chino Commercial Bank, N.A. v. Peters*, 190 Cal. App. 4th 1163, 1174 (2010).

**1. Plaintiff's Claim Is For Violation of Commercial Code § 11207(a)**

Plaintiff's sole claim for "wrongful payment of wire transfer" is based on Wells Fargo's processing of the wire. Plaintiff asserts (erroneously) that the Bank had actual knowledge that the intended beneficiary (identified in the Payment Order) did not match the name of the actual beneficiary (owner of Account x3420). (Compl., ¶¶ 10-12.)

This is a claim for violation of California UCC section 11207(a), which provides that "[s]ubject to subdivision (b) if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur." Cal. U. Com. Code, § 11207(a).

**2. Wells Fargo Falls Within The Safe Harbor Provided By Commercial Code § 11207(b)**

Section 11207(b) provides immunity from liability—a "safe harbor"—for banks that process wire transfers based on the beneficiary account number contained in a payment order. Cal. U. Com. Code § 11207(b). Section 11207(b) provides, in pertinent part:

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply: … **if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order**. The beneficiary's bank

> need not determine whether the name and number refer to the same person.

Cal. U. Com. Code § 11207(b), emphasis added.

In other words, beneficiary banks have no liability for a mismatch between a sender's intended and actual recipient unless they have actual knowledge of the mismatch. The safe harbor allows banks to employ automated means to process high volumes of wire transfers. Cal. U. Com. Code § 11207, cmt. 2 (noting that automated processing is economical and reduces clerical errors).

Knowledge, in this situation, means **actual knowledge** at the time of payment. *TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1032 (2004); Cal. U. Com. Code § 11207, cmt. 2. Actual knowledge of an inconsistency "does not exist unless bank personnel handling the transaction are aware that the name of the owner of the account number designated in the wire bears no resemblance to, and has nothing in common with, the named beneficiary." *TME Enters., Inc.*, 124 Cal. App. 4th at 1025. Constructive knowledge based on account records is not sufficient. *Id.*

Moreover, a beneficiary bank has no affirmative duty to determine whether there is a conflict between the beneficiary identified in the wire instructions and the accountholder (*i.e.*, the "actual" beneficiary). *Id.* at 1032; *accord Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) (applying UCC 4A-207 and noting that the benefits of automated payments would be lost if beneficiary banks had a duty to determine whether the beneficiary account number and name refer to the same person).

In this case, Wells Fargo received the Payment Order on October 5, 2018 and processed it automatically, without human intervention, based on the beneficiary account number alone. *See* Memorandum of Points and Authorities, pp. 7-9. Accordingly, Wells Fargo did not have actual knowledge that the owner of Account x3420 (*i.e.*, an individual) did not match the name of the beneficiary identified on

the Payment Order (*i.e.*, RAD Architecture, Inc.).

Wells Fargo is not liable to Plaintiff because its processing of the wire falls within Section 11207(b)'s safe harbor. Summary judgment should be granted.

DATED: June 26, 2020

SEVERSON & WERSON
A Professional Corporation

By: /s/ Loren W. Coe
Loren W. Coe

Attorneys for Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 19-cv-07698 ODW (RAOx)<br>Hon. Otis D. Wright, II<br>Ctrm. 5D (1st St.)<br><br>**DECLARATION OF MICHELLE SWIRTZ IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Action Filed: May 23, 2019<br>Removal Date: September 5, 2019<br>Trial Date: None Set |

I, Michelle Swirtz, state and declare as follows:

1. I make this declaration in support of Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment or, in the Alternative, Motion For Summary Adjudication. I have personal knowledge of the facts contained in this declaration and, if called upon as a witness, I would testify truthfully with respect to the matters stated herein.

2. I am a Business Support Manager, SVP, Enterprise Wire Services for Wells Fargo Bank, N.A. ("Wells Fargo"), defendant in the above-entitled action, and I am duly authorized to make this Declaration on Wells Fargo's behalf.

3. In my position, I manage day-to-day operations for Wells Fargo's Wire Transfer Services department. My job duties include analytical support, quality assurance, and production support for wire transfers. Specifically, I manage the support functions for Wells Fargo's Enterprise Wire Services department. My duties include oversight of all wire transfer related project work from ideation through user acceptance testing and implementation. This includes the core wire transfer applications and the peripheral support technology. Additionally, my team manages Production Support which ensures all applications are functioning properly, acting in a rapid response manner to escalate and resolve any production related issues from our operations team in coordination with technology. Lastly, I have responsibility for process improvements, audit and compliance reviews and corrective actions, adherence to compliance and policy, and reporting for the business to include metrics and service level reporting. In my role, I understand the required wire transfer formats and the related regulations Wells Fargo must adhere to and coordinate related activities for the Enterprise Wire Services operations teams.

/ / /

/ / /

/ / /

4. I have been employed by Wells Fargo since December 1996, and I have been in my current position for more than five (5) years. As such, I have extensive knowledge of Wells Fargo's wire transfer policies, procedures, and recordkeeping. I have personal knowledge of these topics and/or have been trained on standard practices, policies, and procedures pertaining thereto.

5. As part of my duties, I am familiar with, and have access to, the electronic systems of record that Wells Fargo uses to create and record information related to, among other things, checking accounts and wire transfers. Much of the information stored in Wells Fargo's electronic systems is captured automatically at or about the time of the events recorded. Information that is not automatically captured electronically by the Wells Fargo's electronic systems is entered manually by Wells Fargo employees who have personal knowledge of that information. All of Wells Fargo's computerized records are created and maintained in the regular course of its business and Wells Fargo relies on those records in the ordinary course to conduct its business. Wells Fargo employs industry-accepted computer systems to store and generate records in the course of its business. The systems are maintained to assure reliability and accuracy in the storage and retrieval of information. Wells Fargo authorizes specific personnel trained to access and produce information from these records. In my position as Business Support Manager, SVP, Enterprise Wire Services, I am one of Wells Fargo's custodians of its business records. The documents referenced herein and attached hereto are business records produced and/or maintained by Wells Fargo.

**Wire Transfer Processing (Incoming Wires)**

6. Wells Fargo receives approximately 70,000 incoming wire transfers each day via the primary Financial Market Utilities FedWire and The Clearing House Interbank Payments System ("CHIPS"). Because of the volume and demand to process these orders quickly, Wells Fargo uses automation to execute these transactions.

7. More specifically, Wells Fargo processes wire transfers sent via FedWire and CHIPs through an electronic system (application) called the Money Transfer System ("MTS"). MTS is a software application offered by ACI Worldwide. MTS creates an automated audit trail that contemporaneously documents the various steps in the wire transfer process (described in more detail below).

8. When MTS receives an incoming wire transfer order, MTS utilizes the Autotrieve function to confirm that the beneficiary account number contained in a wire transfer order is a valid Wells Fargo demand deposit or savings account number. This process is programmed to be completely automated.

9. If the beneficiary account number is a valid Wells Fargo demand deposit or savings account, the name and address corresponding to the identified Wells Fargo account are automatically populated into the appropriate MTS fields from information maintained in HOGAN (the mainframe application that houses information about Wells Fargo's customers' demand deposit and savings accounts).

10. After a Wells Fargo account is identified but before funds are released, MTS shares the pending wire transfer order with a second application call Global Sanctions Monitoring Operations System ("GSMOS"). GMSOS is external to MTS and maintains lists and databases of persons, entities, and states subject to sanctions, including such lists and databases released by the Department of Treasury's Office of Foreign Assets Control ("OFAC").

11. GSMOS screens each field in a wire transfer order against OFAC lists/databases. This initial screening is completely automated. GSMOS assigns a score based on how closely data in a wire transfer order matches data in the GSMOS database. Wire transfer orders that score less than 77% are automatically released with no human intervention of any kind. This is known as a "straight-through" transaction and describes the vast majority of wire transfer orders. In MTS, straight-

through wires are notated as having "Passed" OFAC review. This process is completed within minutes, if not seconds.

12. Wire transfer orders that score above 77% by GSMOS are identified for manual review. However, the review is limited to determining whether the wire transfer order in question has run afoul of OFAC regulations.

13. With the exception of OFAC screening explained above, beneficiary/recipient information included on a straight-through incoming wire transfer order is not reviewed and does not affect the execution of a wire transfer order. If MTS's Autotrieve function identifies a valid account number, and the order passes GSMOS, the wire transfer order is processed and the funds are credited to the identified beneficiary account number without any human involvement.

**The $226,991.45 Wire Transfer**

14. On October 5, 2018, Wells Fargo received a wire transfer order from Citibank, N.A. ("Citibank") for which Caye International Bank Ltd. ("Caye") was the ordering bank and Grand Bayman Belize Ltd. ("Plaintiff") was the originator. The wire transfer order was for #226,991.45 and was received by Wells Fargo at 7:13:39.09 a.m. Central Time ("Wire Transfer"). The beneficiary listed on the Wire Transfer orders was Wells Fargo account x3420 ("Account x3420"), followed by Rad Architecture, Inc. and Rad Architecture, Inc.'s address. Attached as **Exhibit 1** is a true and correct copy of the Wire Transfer details as maintained by Wells Fargo's MTS system.[1]

15. The Wire Transfer details maintained by MTS and reflected on Exhibit 1 demonstrate that the Wire Transfer was processed as a "straight-through" transaction. Specifically, on the third page of Exhibit 1 (bates WF 0020), under the heading "MESSAGE HISTORY SEQUENCE," the details indicate the following:

---

[1] The Exhibits attached hereto have been redacted to comply with the Federal Rules of Civil Procedure and the Local Rules.

a. MTS received the wire on "5-OCT-2018 07:13:39.08" (Central Time).

b. MTS utilized the Autotrieve to confirm that the beneficiary account number contained in the Wire Transfer order (x3420) was a valid Wells Fargo account number. This step is documented as: "*AUTOTRIEVE VLD V name & address – CDT Acct. D."

c. MTS routed the Wire Transfer to Wells Fargo's external GSMOS database for OFAC sanctions screening. This step is documented as: "Stop_Check msg routed to EXTERNAL STOP SERVER 5-OCT-2018 07:13:42.60" and "*MRSTOP/*MR/MAP/ /5/$$$FED."

d. MTS received confirmation from the GSMOS database that the Wire Transfer passed OFAC sanctions screening, meaning that the Wire Transfer was not identified for manual review (which, in any event, would only screen for OFAC compliance). This step is documented as: "PASS-POFAC – Passed."

e. On October 5, 2018 at 7:13:46.50—i.e., approximately 7 seconds after the wire was received—account x3420 was credited with $226,991.45 . This step is documented as: "OPRID: $$$PAY TIME: 5-OCT-2018 07:13:46.50."

16. A true and correct copy of the September 13, 2018 – October 10, 2018 statement for account x3420 reflecting the aforementioned credits is attached hereto as **Exhibit 2**.

17. A true and correct copy of the October 11, 2018 – November 9 statement for account x3420 is attached hereto as **Exhibit 3**

18. Exhibits 2 and 3 show that account x3420 had a zero balance by October 17, 2018.

19. On October 18, 2018, Wells Fargo mailed correspondence to the account holder stating that account x3420 had been closed. A true and correct copy of the October 18, 2018 correspondence is attached hereto as **Exhibit 4**.

20. The wire transfer details attached as Exhibit 1 include the following statement: “Possible name mismatch in CDT party.” This is an auto-populated entry by MTS in connection with a feature offered by the MTS suite of applications that is *not* licensed by Wells Fargo. Wells Fargo chooses not to license the feature—which was designed with the intent to identify a mismatch between the intended beneficiary in a wire transfer order and the holder of the account by comparing more than just the account number—because it does not perform at a level that would make it effective for use at Wells Fargo. Accordingly, because Wells Fargo does not license the feature, MTS does not compare the intended beneficiary’s information with that of the account holder, and the notation “Possible name mismatch in CDT party” does not indicate that an actual mismatch was detected. “Possible name mismatch in CDT party” is an auto-populated system memo that would have appeared in this case even if there was a perfect match in all respects between the intended beneficiary and account holder.

21. On November 1, 2018, Wells Fargo received a message from Citibank through FedWire requesting the funds be returned. A true and correct copy of the November 1, 2018 message received in connection with the Wire Transfer is attached hereto as **Exhibit 5**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

22. Aside from the Wire Transfer orders, Wells Fargo has no record of receiving any communications related to the Wire Transfers before the November 1, 2018 message attached as Exhibit 5. And, Wells Fargo did not initiate any communications with any parties relating to the Wire Transfer prior to the funds being credited to Account x3420. As noted above, the Wire Transfer was received and credited to Account x3420 in approximately 7 seconds.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed June 25th, 2020, at Littleton, CO.

**Wells Fargo Bank, N.A.**

By: [signature]

Name: Michelle Swirtz

Title: Business Support Manager, SVP, Enterprise Wire Services

# EXHIBIT 1

<<< TRN: 181005-033570 >>>

------------------------------------------------------------------------------

**** MESSAGE ENVELOPE **** ( Bank : 121 )

SND DATE: 18/10/05
SRC:FED CALLER: EXT:

RPT# AMT:226,991.45 CUR:USD RATE: 1. TRDR#
TEST: VAL: TYP:FTR/ FNDS:S CHG:DB:W CD:R COM:N CBL:N

------------------------------------------------------------------------------

DBT A/021000089 CDT *D/00000[redacted]3420 ADV:LTR
DEBIT VAL: 18/10/05 CTYP CREDIT VAL: 18/10/05 CTYP
AMT:226,991.45 CUR:USD AMT:226,991.45 CUR:USD
GL RECON: 114114 GL RECON: 347347
DEPT:0002729 [redacted]
CITIBANK N.A. NEW YORK, NY [redacted]
NEW YORK, NY [redacted]
UNITED STATES BNF:/[redacted]3420 CHG: BK?N
COUNTRY OF RESIDENCY: US RAD ARCHITECTURE, INC
SEND:S/CRASGB2L 117 NW 42 AVE. CU 2
CROWN AGENTS BANK LTD MIAMI, FL 33126 USA
ORIG TO BNF INFO:
FUNDS REPRESENT PAYMENT FOR ARCHITE
COUNTRY OF RESIDENCY: GB CTURE PHASE (RETAINER, CHARRETTE/CO
SNDR REF NUM:S06827813FF601 NCEPT, SCHEMATIC DESIGN)AND DISBURS
ORDERING BNK:S/CAYEBZBZ EMENT CATEGORY(AIRFARE, HOTEL)
CAYE INTERNATIONAL BANK LTD.
COCONUT DRIVE
SAN PEDRO,BZ 220029
COUNTRY OF RESIDENCY: BZ
ORIG:/12682
GRAND BAYMAN BELIZE LTD
COCONUT DRIVE AND HURRICANE WAY
SAN PEDRO, AMBERGRIS CAYE, BELIZE

**** MESSAGE TEXT ****
{1100} Message Disposition:
Format Version: 30 (New expanded format)
Test Production Code: P (Production)
Msg Duplication Code: (Original incoming msg)
Msg Status Indicator: N (Incoming msg)

{1110} Acceptance Timestamp:
Receipt Date: 10/05
Receipt Time: 08:13
Receipt Application Id: FT03
{1120} OMAD:

Output cycle date: 2018/10/05
Output Destination Id: I1B7031R
Output sequence number: 003759
Output date: 10/05
Output time: 08:13
Output application Id: FT03

WELLS FARGO BANK N.A. Page143867
FULL TRANSACTION REPORT FOR 05-OCT-2018
{1510} Type/Subtype Code:
Type Code: 10 (Transfer of funds)
Subtype Code: 00 (Regular transfer)

{1520} IMAD:
Input Cycle date: 2018/10/05
Input Source id: B1Q8021C
Input Sequence number: 013162

{2000} Amount: $226,991.45

{3100} Sending Bank:
ABA number: 021000089
Short name: CITIBANK NA
ABA lookup (REL): CITIBANK N.A. NEW YORK, NY
NEW YORK, NY
UNITED STATES

{3320} Sender Reference: S06827813FF601

{3400} Receiving Bank:
ABA number: 121000248
Short name: WELLS FARGO BANK N
ABA lookup (AUX): WELLS FARGO BANK, NA
SAN FRANCISCO, CA
{3600} Business Function Code: CTP (Customer transfer plus)

{3710} Instructed Amount: USD 226991.45

{4200} Beneficiary: D/[redacted]3420
RAD ARCHITECTURE, INC
117 NW 42 AVE. CU 2
MIAMI, FL 33126 USA

{5000} Originator: D/12682
GRAND BAYMAN BELIZE LTD
COCONUT DRIVE AND HURRICANE WAY
SAN PEDRO, AMBERGRIS CAYE, BELIZE

{5100} Originator's Bank: B/CAYEBZBZ
{5200} Instructing Bank: B/CRASGB2LXXX
CROWN AGENTS BANK LTD

{6000} Originator to Beneficiary Info: FUNDS REPRESENT PAYMENT FOR ARCHITE
CTURE PHASE (RETAINER, CHARRETTE/CO
NCEPT, SCHEMATIC DESIGN)AND DISBURS
EMENT CATEGORY(AIRFARE, HOTEL)

*****Remittance Data Unavailable*****

MESSAGE HISTORY SEQUENCE
--------------------------------
WELLS FARGO BANK N.A. Page143868
FULL TRANSACTION REPORT FOR 05-OCT-2018

121 is the owning bank. Priority:
REF_INDEX REF #: 181005033570 5-OCT-2018 07:13:39.08
FEDMQIN1 SEQ #: 3761 5-OCT-2018 07:13:39.09 Info: FNPN.TODI
.121000248.A1||||20181005
FEDIN1 SEQ #: 3759 5-OCT-2018 07:13:39.09
FLASHRCV ABA: 021000089 FED REF: S06827813FF601
IMAD: 1005B1Q8021C01316210050813FT03
FEDINQ DEQ
FEDIN_LOG AMT: 226991.45 TIME: 5-OCT-2018 07:13:42.22
ABA_INDEX KEY: 021000089
*SYS_MEMO *AUTOTRIEVE VLD V name & address - CDT Acct. D
/00000[redacted]3420
*SYS_MEMO RC 0067549 N 347347 08691
00000
*SYS_MEMO Possible name mismatch in CDT party
*SYS_MEMO *CVD:7 DVD:6 PSD:3 SSD:--- DBD:1 CBD:1
*SYS_MEMO Stop_Check msg routed to EXTERNAL STOP SERVER 5-OCT
-2018 07:13:42.60
*SYS_MEMO *MRSTOP/*MR/MAP/ /5/$$$FED
*GL__INQ_DBT
NOF_ACC_NDX KEY: 121D00000[redacted]3420
Memo: CDT
*ADR_MSG_QUE TEXT: 2018100500033570
Memo: DBT/1092370
*ADR_MSG_QUE TEXT: 2018100500033570
Memo: SBK/1430295
* BEGIN DESTINATION *DST(1), DLV STATE: Q
RTE: /
DST: ENQ//////

Queue: 121//RGW0_OUTQ
RGW0_OUTQ TEXT: 2018100500033570 AMOUNT: 226991.45 USD
Memo: (OFC)
* END DESTINATION
OFC_OUTQ DEQ
OFC3_PNDDLVQ DEQ
OFC3_SRF KEY: 0500033570009331
OFC3_OUT SEQ #: 9331 5-OCT-2018 07:13:43.08 Info:
0500033570009331 F
OFC3_SND SEQ #: 9331 5-OCT-2018 07:13:43.08 Info:
0500033570009331 F
OFC3_RCV SEQ #: 399 5-OCT-2018 07:13:46.41
*SYS_MEMO GSMOS Ref Num: UMTA20181005MTS118801
*SYS_MEMO
*SYS_MEMO
*SYS_MEMO PASS-POFAC - Passed
PAYADVQ DEQ
PAYADV_LOG OPRID: $$$PAY TIME: 5-OCT-2018 07:13:46.50
*FED_GL SAM_DBT AMOUNT: 226991.45 USD
*DUE_FROM SAM_CDT AMOUNT: 226991.45 USD
*DUE_TO SAM_DBT AMOUNT: 226991.45 USD
*DUE_TO SAM_CDT AMOUNT: 226991.45 USD
*DUE_FROM SAM_DBT AMOUNT: 226991.45 USD
*NOF_BAL SAM_CDT AMOUNT: 226991.45 USD
SYSPRFBAL PRF_DDA_CDT AMOUNT: 226991.45 USD
DDA_BACKEND TEXT: 2018100500033570 AMOUNT: 226991.45 USD
GL_BACKEND TEXT: 2018100500033570 AMOUNT: 226991.45 USD
NOF_POSTQ DEQ
BEGIN DESTINATION *DST(2), DLV STATE: Q
ELLS FARGO BANK N.A. Page143869
ULL TRANSACTION REPORT FOR 05-OCT-2018
RTE: /
DST: ENQ///////
Queue: 121//BCP_OUTQ
BC2_ACKPNDQ DEQ
Memo: >>>ISIACKPND017625201810050003357OBC2_OUT|*CUS
BCP_OUTQ DEQ
BC2_OUT SEQ #: 17625 5-OCT-2018 07:13:45.99 Info: *CUS
END DESTINATION
BEGIN DESTINATION *DST(3), DLV STATE: Q
RTE: /
DST: ENQ///////
Queue: 121//RGW0_OUTQ
RGW0_OUTQ TEXT: 2018100500033570 AMOUNT: 226991.45 USD
END DESTINATION
DDA_PDM_26 SEQ #: 2220 5-OCT-2018 07:13:46.55 Info: PD
DDA_POST_26 SEQ #: 2220 5-OCT-2018 07:13:46.65 Info: PD
Memo: Dbt posted - tc: 114WNRPO|181005033570|||

DDA_PDM_26 SEQ #: 2221 5-OCT-2018 07:13:46.65 Info: PC
DDA_POST_26 SEQ #: 2221 5-OCT-2018 07:13:46.76 Info: PC
Memo: Cdt posted - tc: 347RBASI|181005033570|||
* BEGIN DESTINATION *DST(4), DLV STATE: D
RTE: /
DST: ENQ///////
Queue: 121//IXM0_OUTQ
IXM0_OUTQ DEQ
IXM0_SRF KEY: 0500033570005661
IXM0_OUT SEQ #: 5661 5-OCT-2018 07:13:47.03 Info:
0500033570005661 F
IXM0_SND SEQ #: 5661 5-OCT-2018 07:13:47.03 Info:
0500033570005661 F
IXM0_ACK SEQ #: 5661 5-OCT-2018 07:13:47.12 Info:
0500033570005661 +
* END DESTINATION

WELLS FARGO BANK N.A. Page143870
FULL TRANSACTION REPORT FOR 05-OCT-2018

# EXHIBIT 2

# Wells Fargo Everyday Checking

Account number: [redacted]3420 ■ September 13, 2018 - October 10, 2018 ■ Page 1 of 3

WELLS FARGO

[redacted]

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS** (1-800-869-3557)

*TTY:* 1-800-877-4833
*En español:* 1-877-727-2932
華語 1-800-288-2288 *(6 am to 7 pm PT, M-F)*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (347)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ✓ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ✓ | Overdraft Protection | ☐ |
| Mobile Banking | ✓ | Debit Card | ✓ |
| My Spending Report | ✓ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 9/13 | $60.00 |
| Deposits/Additions | 262,891.45 |
| Withdrawals/Subtractions | - 201,826.98 |
| **Ending balance on 10/10** | **$61,124.47** |

Account number: [redacted]3420
[redacted]
*New Jersey account terms and conditions apply*
For Direct Deposit use
Routing Number (RTN): 021200025

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

**GRAND BAYMAN - WF 0167**

WELLS FARGO

## Transaction history

| *Date* | *Check Number* | *Description* | *Deposits/ Additions* | *Withdrawals/ Subtractions* | *Ending daily balance* |
|---|---|---|---|---|---|
| 9/20 | | [redacted] | | | |
| 9/20 | | | | | |
| 9/21 | | | | | |
| 9/24 | | | | | |
| 9/27 | | | | | |
| 10/5 | | WT Fed#03162 Caye International /Org=Grand Bayman Belize Ltd Srf# S06827813Ff601 Trn#181005033570 Rfb# | 226,991.45 | | |
| 10/5 | | [redacted] | | 16.00 | 226,985.47 |
| 10/9 | | [redacted] | | 1.00 | |
| 10/9 | | [redacted] | | 99,630.00 | 127,354.47 |
| 10/10 | | [redacted] | 35,400.00 | | |
| 10/10 | | [redacted] | | 101,330.00 | |
| 10/10 | | [redacted] | | 300.00 | 61,124.47 |
| **Ending balance on 10/10** | | | | | **61,124.47** |
| **Totals** | | | **$262,891.45** | **$201,826.98** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

### Monthly service fee summary

For a complete list of fees and detailed account information, see the Wells Fargo Account Fee and Information Schedule and Account Agreement applicable to your account (EasyPay Card Terms and Conditions for prepaid cards) or talk to a banker. Go to wellsfargo.com/feefaq for a link to these documents, and answers to common monthly service fee questions.

| Fee period 09/13/2018 - 10/10/2018 | Standard monthly service fee $10.00 | You paid $0.00 |
|---|---|---|

We waived the fee this fee period to allow you to meet the requirements to avoid the monthly service fee. This is the final period with the fee waived. For the next fee period, you need to meet the requirement(s) to avoid the monthly service fee.

| **How to avoid the monthly service fee** | Minimum required | This fee period |
|---|---|---|
| Have any **ONE** of the following account requirements | | |
| · Minimum daily balance | $1,500.00 | $10.02 ☐ |
| · Total amount of qualifying direct deposits | $500.00 | $0.00 ☐ |
| · Total number of posted Wells Fargo Debit Card purchases and/or payments | 10 | 1 ☐ |
| · The fee is waived when the account is linked to a Wells Fargo Campus ATM or Campus Debit Card | | |

**Monthly service fee discount(s)** ***(applied when box is checked)***

Age of primary account owner is 17 - 24 ($10.00 discount) ☐

RC/RC

**GRAND BAYMAN - WF 0168**

WELLS FARGO

## Worksheet to balance your account

Follow the steps below to reconcile your statement balance with your account register balance. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

**A** **Enter the ending balance** on this statement. $ ________

**B** **List outstanding deposits and other credits** to your account that do not appear on this statement. **Enter the total** in the column to the right.

| Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| Total | $ |

\+ $ ________

**C** **Add A and B** to calculate the subtotal. = $ ________

**D** **List outstanding checks, withdrawals, and other debits** to your account that do not appear on this statement. **Enter the total** in the column to the right.

| Number/Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Total | $ |

\- $ ________

**E** **Subtract D from C** to calculate the adjusted ending balance. This amount should be the same as the current balance shown in your register. = $ ________

## General statement policies for Wells Fargo Bank

- **To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts.** You have the right to dispute the accuracy of information that Wells Fargo Bank, N.A. has furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.
- **In case of errors or questions about your electronic transfers,** telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  1. Tell us your name and account number (if any).
  2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
  3. Tell us the dollar amount of the suspected error.

  We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

©2010 Wells Fargo Bank, N.A. All rights reserved NMLSR ID 399801 Member FDIC. EQUAL HOUSING LENDER

# EXHIBIT 3

# Wells Fargo Everyday Checking

Account number: [redacted]3420 ■ October 11, 2018 - November 9, 2018 ■ Page 1 of 3

WELLS FARGO

[redacted]

## Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-TO-WELLS** (1-800-869-3557)

*TTY:* 1-800-877-4833
*En español:* 1-877-727-2932
華語 1-800-288-2288 *(6 am to 7 pm PT, M-F)*

*Online:* wellsfargo.com

*Write:* Wells Fargo Bank, N.A. (347)
P.O. Box 6995
Portland, OR 97228-6995

## You and Wells Fargo

Thank you for being a loyal Wells Fargo customer. We value your trust in our company and look forward to continuing to serve you with your financial needs.

## Account options

*A check mark in the box indicates you have these convenient services with your account(s). Go to wellsfargo.com or call the number above if you have questions or if you would like to add new services.*

| | | | |
|---|---|---|---|
| Online Banking | ✓ | Direct Deposit | ☐ |
| Online Bill Pay | ☐ | Auto Transfer/Payment | ☐ |
| Online Statements | ✓ | Overdraft Protection | ☐ |
| Mobile Banking | ✓ | Debit Card | ✓ |
| My Spending Report | ✓ | Overdraft Service | ☐ |

## Activity summary

| | |
|---|---|
| Beginning balance on 10/11 | $61,124.47 |
| Deposits/Additions | 0.00 |
| Withdrawals/Subtractions | - 61,124.47 |
| **Closing balance on 10/17** | **$0.00** |

Account number: [redacted]3420
[redacted]
*New Jersey account terms and conditions apply*
For Direct Deposit use
Routing Number (RTN): 021200025

**Overdraft Protection**
This account is not currently covered by Overdraft Protection. If you would like more information regarding Overdraft Protection and eligibility requirements please call the number listed on your statement or visit your Wells Fargo store.

**GRAND BAYMAN - WF 0170**

WELLS FARGO

## Transaction history

| Date | Check Number | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|---|---|---|---|---|---|
| 10/11 | | [redacted] | | 60,400.00 | 724.47 |
| 10/12 | | | | 300.00 | 424.47 |
| 10/15 | | | | 193.75 | |
| 10/15 | | | | 32.37 | 198.35 |
| 10/16 | | | | 191.27 | 7.08 |
| 10/17 | | | | 5.07 | |
| 10/17 | | | | 2.01 | 0.00 |
| **Ending balance on 11/9** | | | | | **0.00** |
| **Totals** | | | **$0.00** | **$61,124.47** | |

*The Ending Daily Balance does not reflect any pending withdrawals or holds on deposited funds that may have been outstanding on your account when your transactions posted. If you had insufficient available funds when a transaction posted, fees may have been assessed.*

# IMPORTANT ACCOUNT INFORMATION

As a reminder, the total year-to-date number and amount of Overdraft and Return Item Fees waived due to our Overdraft Rewind (sm) feature located on your account statement is as of February 5, 2018.

WELLS FARGO

## Worksheet to balance your account

Follow the steps below to reconcile your statement balance with your account register balance. Be sure that your register shows any interest paid into your account and any service charges, automatic payments or ATM transactions withdrawn from your account during this statement period.

**A** **Enter the ending balance** on this statement. $ ______

**B** **List outstanding deposits and other credits** to your account that do not appear on this statement. **Enter the total** in the column to the right.

| Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| Total | $ |

\+ $ ______

**C** **Add** **A** **and** **B** to calculate the subtotal. = $ ______

**D** **List outstanding checks, withdrawals, and other debits** to your account that do not appear on this statement. **Enter the total** in the column to the right.

| Number/Description | Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| Total | $ |

\- $ ______

**E** **Subtract** **D** **from** **C** to calculate the adjusted ending balance. This amount should be the same as the current balance shown in your register. = $ ______

## General statement policies for Wells Fargo Bank

- **To dispute or report inaccuracies in information we have furnished to a Consumer Reporting Agency about your accounts.** You have the right to dispute the accuracy of information that Wells Fargo Bank, N.A. has furnished to a consumer reporting agency by writing to us at Overdraft Collection and Recovery, P.O. Box 5058, Portland, OR 97208-5058. Please describe the specific information that is inaccurate or in dispute and the basis for the dispute along with supporting documentation. If you believe the information furnished is the result of identity theft, please provide us with an identity theft report.

- **In case of errors or questions about your electronic transfers,** telephone us at the number printed on the front of this statement or write us at Wells Fargo Bank, P.O. Box 6995, Portland, OR 97228-6995 as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  1. Tell us your name and account number (if any).
  2. Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
  3. Tell us the dollar amount of the suspected error.

  We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

©2010 Wells Fargo Bank, N.A. All rights reserved NMLSR ID 399801

Member FDIC. EQUAL HOUSING LENDER

# EXHIBIT 4

WELLS FARGO

October 18, 2018

[redacted]

Subject: Your Wells Fargo account ending in 3420 is closed

Retention Version Sent Online Only

View your closed account ending in 3420 online

Your deposit account ending in 3420 was closed on 10/17/2018.

You can continue to view Statements and Documents for this account online for approximately 90 days from the date your account was closed.

If you have any questions, please call us at 1-800-869-3557, 24 hours a day, 7 days a week, or visit a Wells Fargo banking location to speak with a banker. To find a location near you, visit us online at wellsfargo.com/locator.

Thank you. We appreciate your business.

Wells Fargo Bank, N.A.

# EXHIBIT 5

{1100}30P S
{1110}11010717FT03
{1120}20181101I1B7032R00371111010717FT03
{1510}1007
{1520}20181101B1Q8021C013649
{2000}000022699145
{3100}021000089
{3320}G01830514149O1*
{3400}121000248
{3500}WELLS FARGO
{3600}SVC
{4320}NO REF*
{9000}OUR REFERENCE CIT181023-004963IMAD1*
81005B1Q8021C013162PLEASE BE ADVISE*
D THAT WE HAVE BEEN CONTACTED BYOUR*
CLIENT WHO HAS REQUESTED A RECALL*
OF THISPAYMENT. PLEASE URGENTLY RET*
URN THESE FUNDS ANDINFORM US VIA RE*
TURN TESTED MESSAGE FULL STATUSOF T*
HIS REQUEST. PLEASE ALSO CONSIDER T*
HIS OURINITIAL REQUEST FOR UNJUST E*
NRICHMENT INRELATION TO THIS PAYMEN*
T*

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF WELLS FARGO BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Date: August 10, 2020
Time: 1:30 p.m.
Crtrm.: 5D

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 4

II. THE UNCONTROVERTED FACTS .......... 4

III. WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT .......... 5

- A. The Section 11207(b) Safe Harbor .......... 5
- B. Wells Fargo Is Entitled To The Safe Harbor Because It Processed The Wire Using Automated Procedures Based On The Account Number Alone And Without Actual Knowledge Of The Discrepancy .......... 7

IV. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Sliders Trading Co. v. Wells Fargo Bank NA*,
No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) ........ 6

*TME Enters., Inc. v. Norwest Corp.*,
124 Cal. App. 4th 1021 (2004) ........ 6

*Zengen, Inc. v. Comerica Bank*,
41 Cal. 4th 239 (2007) ........ 9

**Statutes**

California Commercial Code § 11207 ........ 6, 9, 10

California Commercial Code § 11207(a) ........ 4

California Commercial Code § 11207(b) ........ 4, 5, 9

California Commercial Code § 11404 ........ 8

Uniform Commercial Code article 4A ........ 9

Uniform Commercial Code article 4A-207 ........ 6

**Other Authorities**

12 C.F.R. § 229.10(b) ........ 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In October 2018, Plaintiff fell for a common business email compromise scheme. A hacker spoofed a business associate's email, and directed Plaintiff to wire $223,991.45 to a Wells Fargo account ending in x3420. Plaintiff complied without first verifying the instructions.

On October 5, 2018, Wells Fargo processed the wire transfer order automatically, without human intervention, based on the account number alone. Account x3420 was credited with the $223,991.45 within seconds. At the time, Wells Fargo was unaware that the actual recipient of the funds (*i.e.*, the owner of account x3420) was different than Plaintiff's intended beneficiary. Indeed, it was not until four weeks later—when Plaintiff's bank requested that the funds be returned—that Wells Fargo was alerted to the alleged mismatch.

Plaintiff now sues Wells Fargo, alleging that it wrongfully processed the wire transfer order in violation of California Commercial Code section 11207(a). The claim fails because Wells Fargo falls under the safe harbor of section 11207(b)—which is a complete defense—since Wells Fargo did not have actual knowledge of the mismatch when the wire was processed. This is because the wire was processed using automated means, without any human intervention, based on the account number alone. Judgment should therefore be entered in Wells Fargo's favor.

## II. THE UNCONTROVERTED FACTS

On or about October 1, 2018, Plaintiff received a fraudulent email stating that it was from Plaintiff's vendor, RAD Architecture, Inc. ("RAD" or "Intended Beneficiary"), and directing Plaintiff to wire funds due from Plaintiff to RAD's Wells Fargo account ending in x3420. Compl., ¶5.

On October 2, 2018, ***without verifying the wire instructions***, Plaintiff instructed its bank to wire $226,991.45 to Wells Fargo account x3420. Compl., ¶7.

On October 5, 2018, Wells Fargo received a wire transfer order from Citibank, N.A. for which Grand Bayman Belize Ltd. ("Plaintiff") was the originator. Statement of Undisputed Facts ("SUF") 1. The wire transfer order was for $226,991.45 ("Wire Transfer"). SUF 1.

The Wire Transfer identified Wells Fargo account x3420 ("Account x3420") as the intended beneficiary account number; it also listed RAD Architecture, Inc. and RAD Architecture, Inc.'s address. SUF 2.

Wells Fargo processed the Wire Transfer and deposited the funds into Account x3420 automatically, without human intervention, based on the beneficiary account number alone. SUF 3-8. Wells Fargo did not have actual knowledge that the name of the intended beneficiary in the Wire Transfer order did not match the name of the account holder of Account x3420. SUF 9.

By October 17, 2018, the funds had been withdrawn and Account x3420 closed. SUF 10.

On November 1, 2018—*i.e.*, four weeks after the wire was received and processed on October 5, 2018—Wells Fargo received a message from Citibank through FedWire requesting the funds be returned. This was the first time Wells Fargo learned about a potential issue with the Wire Transfer.

## III. WELLS FARGO IS ENTITLED TO SUMMARY JUDGMENT

### A. The Section 11207(b) Safe Harbor

Section 11207(b) provides immunity from liability—a "safe harbor"—for banks that process wire transfers based on the beneficiary account number contained in wire transfer instructions. (Com. Code § 11207(b).) Section 11207(b) provides, in pertinent part:

> If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply: … **if the beneficiary's bank does not know that**

> **the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order**. The beneficiary's bank need not determine whether the name and number refer to the same person.

Cal. U. Com. Code § 11207, emphasis added.

In other words, beneficiary banks have no liability for a mismatch between a sender's intended and actual recipient unless they have actual knowledge of the mismatch. The safe harbor allows banks to employ automated means to process high volumes of wire transfers. Cal. U. Com. Code § 11207, cmt. 2 (noting that automated processing is economical and reduces clerical errors).

Knowledge, in this situation, means **actual knowledge** at the time of payment. *TME Enters., Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1032 (2004); Cal. U. Com. Code § 11207, cmt. 2. Actual knowledge of an inconsistency "does not exist unless bank personnel handling the transaction are aware that the name of the owner of the account number designated in the wire bears no resemblance to, and has nothing in common with, the named beneficiary." *TME Enters., Inc.*, 124 Cal. App. 4th at 1025. Constructive knowledge based on account records is not sufficient. *Id.* .

Moreover, a beneficiary bank has no affirmative duty to determine whether there is a conflict between the beneficiary identified in the wire instructions and the accountholder (*i.e.*, the "actual" beneficiary). *Id.* at 1032; *accord Sliders Trading Co. v. Wells Fargo Bank NA*, No. 17-cv-04930-LB, 2017 U.S. Dist. LEXIS 211169 (N.D. Cal. Dec. 18, 2017) (applying UCC 4A-207 and noting that the benefits of automated payments would be lost if beneficiary banks had a duty to determine whether the beneficiary account number and name refer to the same person).

**B. Wells Fargo Is Entitled To The Safe Harbor Because It Processed The Wire Using Automated Procedures Based On The Account Number Alone And Without Actual Knowledge Of The Discrepancy**

Wells Fargo received the Wire Transfer on October 5, 2018 and processed it automatically, without human intervention, based on the beneficiary account number alone. SUF 3-9.

Specifically, the Wire Transfer was processed automatically by Wells Fargo's electronic systems as explained in the following five steps:

- First, Wells Fargo's Money Transfer System ("MTS") received the Wire Transfer from FedWire at 7:13.39 a.m. Central Time. This step is documented in the "MESSAGE HISTORY SEQUENCE" of the MTS audit trail as "REF #: 181005033570 5-OCT-2018 07:13:39.08." SUF 4.
- Second, MTS immediately utilized the "Autotrieve" software function to confirm that the beneficiary account number contained in the Wire Transfer (x3420) was a valid Wells Fargo account number. This step is documented in the MTS audit trail as: "*AUTOTRIEVE VLD V name & address – CDT Acct. D." SUF 5.
- Third, MTS shared the pending Wire Transfer with an external Wells Fargo application called Global Sanctions Monitoring Operations System ("GSMOS") for screening pursuant to the Office of Foreign Assets Control ("OFAC").[1] This step is documented in the MTS audit

[1] GSMOS screens each field in a wire transfer order against OFAC lists/databases. This initial screening is completely automated. GSMOS assigns a score based on how closely data in a wire transfer order matches data in the GSMOS database. Wire transfer orders that score less than 77% are automatically released with no human intervention of any kind. This is known as a "straight-through" transaction and describes the vast majority of wire transfer orders. In MTS, straight-
(footnote continued)

trail as: "Stop_Check msg routed to EXTERNAL STOP SERVER 5-OCT 2018 07:13:42.60" and "*MRSTOP/*MR/MAP/ /5/$$$FED." SUF 6.

- Fourth, MTS received confirmation from the GSMOS database that the Wire Transfer passed OFAC sanctions screening, meaning that the Wire Transfer was not identified for manual review (which, in any event, would only screen for OFAC compliance). This step is documented as: "PASS-POFAC – Passed." SUF 7.
- Fifth, having passed the OFAC screening, the Wire Transfer was completed and the funds paid to Account x3420 at 7:13:46 a.m.—about 7 seconds after it was received. This step is documented in the MTS audit trails as: "OPRID: $$$PAY TIME: 5-OCT-2018 07:13:46.50." SUF 8.

Accordingly, when the Wire Transfer was processed on October 5, 2018, Wells Fargo did not have actual knowledge that the owner of Account x3420 (*i.e.*, an individual) did not match the name of the beneficiary identified in the Wire Transfer (*i.e.*, RAD Architecture, Inc.). SUF 9.

In fact, Wells Fargo did not learn about the discrepancy until Citibank, N.A. initiated a wire recall request approximately four weeks later on November 2, 2018. SUF 11. By that time, however, the funds had been withdrawn.[2] SUF 10.

---

through wires are notated as having "Passed" OFAC review. Swirtz Decl., ¶11. Wire transfer orders that score above 77% by GSMOS are identified for manual review. However, the review is limited to determining whether the wire transfer order in question has run afoul of OFAC regulations. Swirtz Decl., ¶12.

[2] Even if the funds remained, Wells Fargo would not be able to stop the account holder from withdrawing them. Indeed, the beneficiary's bank must "ignore any instruction by the originator to withhold payment to the beneficiary." Cal. U. Com. Code § 11404, cmt. 3 (emphasis added); *see also* 12 C.F.R. § 229.10(b) (requiring a bank to "make funds received for deposit in an account an electronic (footnote continued)

Plaintiff's anticipated reliance on the system memo "Possible name mismatch in CDT party" is also misplaced. This is an auto-populated entry by MTS in connection with a feature offered by the MTS suite of applications that is *not* licensed by Wells Fargo. Swirtz Decl., ¶20. Wells Fargo chooses not to license the feature—which was designed with the intent to identify a mismatch between the intended beneficiary in a wire transfer order and the holder of the account by comparing more than just the account number—because it does not perform at a level that would make it effective for use at Wells Fargo. *Id.* Accordingly, because Wells Fargo does not license and use this feature, MTS does not compare the intended beneficiary's information with that of the account holder, and the notation "Possible name mismatch in CDT party" does not indicate that an actual mismatch was detected. *Id.* "Possible name mismatch in CDT party" is an auto-populated system memo, created by default, that would have appeared in this case even if there was a perfect match in all respects between the intended beneficiary and account holder. *Id.*

Wells Fargo is entitled to the protections of section 11207(b) because the Wire Transfer was processed automatically, without human intervention, based on the beneficiary account number alone. SUF 3-8. Consequently, Wells Fargo lacked actual knowledge of any mismatch between Plaintiff's intended and actual beneficiary. SUF 9.

This is a complete defense to Plaintiff's cause of action for violation of Commercial Code section 11207.

---

payment available for withdrawal not later than the business day after the banking day on which the bank received the electronic payment"). The California Supreme Court has noted the comments to Article 4A—quoted above—are especially "persuasive in interpreting the statute," as "the Legislature adopted article 4A of the Uniform Commercial Code exactly as written." *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 252 (2007).

## IV. CONCLUSION

Wells Fargo complied with the California Commercial Code by processing the Wire Transfer that Plaintiff authorized his financial institution to initiate. Plaintiff's claim for violation of Section 11207 fails. Wells Fargo's motion for summary judgment should be granted.

DATED: June 26, 2020

SEVERSON & WERSON
A Professional Corporation

By: /s/ Loren W. Coe
Loren W. Coe

Attorneys for Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

LOREN W. COE (State Bar No. 273124)
lwc@severson.com
ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19-cv-07698 ODW (RAOx)
Hon. Otis D. Wright, II
Ctrm. 5D (1st St.)

**WELLS FARGO BANK, N.A.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Date: August 10, 2020
Time: 1:30 p.m.
Crtrm.: 5D

Action Filed: May 23, 2019
Removal Date: September 5, 2019
Trial Date: None Set

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 10, 2020, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 5D of the United States District Court for the Central District of California, Western Division, located at First Street Courthouse, 350 West 1st Street, 6th Floor, Los Angeles, CA 90012, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") will, and hereby does, move the Court for an order granting summary judgment against Plaintiff Grand Bayman Belize, Ltd. ("Plaintiff") as to the sole claim alleged against Wells Fargo in Plaintiff's Complaint.

This motion is made pursuant to Fed. R. Civ. P. 56, on the grounds that the undisputed facts establish that there is no genuine issue as to any material fact in Plaintiff's sole claim for "wrongful payment of wire transfer." Accordingly, Wells Fargo is entitled to judgment as a matter of law.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the accompanying declaration of Michelle Swirtz, the accompanying Separate Statement of Undisputed Facts and Conclusions of Law, all the pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 18, 2020.

DATED: June 26, 2020

SEVERSON & WERSON
A Professional Corporation

By: /s/ Loren W. Coe
Loren W. Coe

Attorneys for Defendant WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

Electronically FILED by Superior Court of California, County of Los Angeles on 06/27/2019 02:18 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Fowler,Deputy Clerk

ELIZABETH C. FARRELL (State Bar No. 280056)
ecf@severson.com
LOREN W. COE (State Bar No. 273124)
lwc@severson.com
SEVERSON & WERSON
A Professional Corporation
The Atrium
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK I. WRAIGHT (State Bar No. 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as
Wells Fargo & Company, a Delaware corporation)

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES — WEST DISTRICT**

GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,

Plaintiff,

vs.

WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 19SMCV00966
Hon. Elaine W. Mandel
Dept. P

**DEFENDANT WELLS FARGO BANK, N.A.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

Action Filed: May 23, 2019
Trial Date: None Set

Pursuant to California Code of Civil Procedure section 431.30, subdivision (d), Defendant WELLS FARGO BANK, N.A. (erroneously sued as "Wells Fargo & Company, a Delaware corporation") ("Defendant") denies generally and specifically each and every allegation contained in the Complaint of Plaintiff GRAND BAYMAN BELIZE, LTD. ("Plaintiff") and specifically denies that Plaintiff has been damaged in the amounts alleged, or in any other amount or amounts, or at all, by reason of any act or omission on the part of Defendant, or any of its agents, servants, or employees. As separate and distinct affirmative defenses to the Complaint and to each allegation contained therein, Defendant hereby alleges the following:

As separate and distinct affirmative defenses to the Complaint and to each allegation contained therein, Defendant hereby alleges the following:

**FIRST AFFIRMATIVE DEFENSE**

**(Estoppel)**

1. Plaintiff, by reason of its knowledge, statements, conduct, approval, authorization and/or ratification, are estopped from recovery herein.

**SECOND AFFIRMATIVE DEFENSE**

**(Consent)**

2. Any and all activities of Defendant alleged in the Complaint were conducted with Plaintiff's consent, and Defendant is therefore free from actionable fault.

**THIRD AFFIRMATIVE DEFENSE**

**(Ratification)**

3. Each of the acts attributed to Defendant, as alleged by Plaintiff in the Complaint, was acquiesced in and/or ratified by, participated in and/or consented to by Plaintiff and/or its agents.

**FOURTH AFFIRMATIVE DEFENSE**

**(Comparative Fault)**

4. Plaintiff is at fault with respect to the matters alleged in the Complaint, and Plaintiff's recovery, if any, should be barred or reduced in proportion to their comparative fault.

**FIFTH AFFIRMATIVE DEFENSE**

**(Acts of Third Parties)**

5. If Plaintiff was damaged, the damage was caused, in part or in whole, by the acts or omissions of independent third parties, not Defendant.

**SIXTH AFFIRMATIVE DEFENSE**

**(Displacement)**

6. Plaintiff's causes of action, or some of them, are displaced by the Uniform Commercial Code.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

7. Plaintiff assumed the risk of the matters referred to in the Complaint, that Plaintiff knew and appreciated the nature of the risk, and that Plaintiff voluntarily accepted the risk.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Compliance with Governing Law)**

8. Defendant's compliance with the statutes, rules, and regulations which govern the subject matter of this lawsuit, including, but not limited to Cal. U. Com. Code § 11207(b), preclude its liability to Plaintiff.

**NINTH AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

9. Plaintiff assumed the risk of the matters referred to in the Complaint, that Plaintiff knew and appreciated the nature of the risk, and that Plaintiff voluntarily accepted the risk.

**TENTH AFFIRMATIVE DEFENSE**

**(Unknown Affirmative Defenses)**

10. Defendant presently has insufficient knowledge and information on which to form a belief as to whether it has additional affirmative defenses, and Defendant reserves the right to assert additional affirmative defenses in the event discovery indicates such defenses would be appropriate.

///

## PRAYER

WHEREFORE, Defendant prays for judgment as follows:

1. That Plaintiff takes nothing by way of the Complaint;
2. For recovery of Defendant's costs of suit herein; and
3. For such other and further relief as this Court finds just and proper.

DATED: June 27, 2019

SEVERSON & WERSON
A Professional Corporation

By: [signature]
LOREN W. COE

Attorneys for Defendant
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo & Company, a Delaware corporation)

**PROOF OF SERVICE**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Orange, State of California. My business address is The Atrium, 19100 Von Karman Avenue, Suite 700, Irvine, CA 92612.

On June 27, 2019, I served true copies of the following document(s): **DEFENDANT WELLS FARGO BANK, N.A.'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & SORIANO, LLP<br>1900 Avenue of the Stars, 25th Fl.<br>Los Angeles, CA 90067-4506 | Attorneys for Plaintiff GRAND BAYMAN BELIZE, LTD.<br><br>Telephone: (310) 282-8989<br>Facsimile: (310) 282-8903<br>Email: srothschild@khpslaw.com |

☒ **BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Severson & Werson's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY ELECTRONIC SERVICE:** I electronically served the document(s) described above via ***[Vendor Name]**, on the recipients designated on the Transaction Receipt located on the ***[Vendor Name]** website (https://***[Vendor Web Site]**) pursuant to the Court Order establishing the case website and authorizing service of documents.

☐ **BY FEDEX:** I enclosed said document(s) in an envelope or package provided by FedEx and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FedEx or delivered such document(s) to a courier or driver authorized by FedEx to receive documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 27, 2019, at Irvine, California.

RYAN J. BROOKS

Electronically FILED by Superior Court of California, County of Los Angeles on 05/23/2019 03:18 PM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal,Deputy Clerk
19SMCV00966
Assigned for all purposes to: Santa Monica Courthouse, Judicial Officer: Elaine Mandel

KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
STEPHEN D. ROTHSCHILD, ESQ., STATE BAR NO. 132514
SROTHSCHILD@KHPSLAW.COM
1900 AVENUE OF THE STARS, TWENTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE: (310) 282-8903

Attorneys for Plaintiff Grand Bayman Belize, Ltd.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| GRAND BAYMAN BELIZE, LTD., a Seychelles limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT FOR WRONGFUL PAYMENT OF WIRE TRANSFER |

Plaintiff Grand Bayman Belize, Ltd. ("plaintiff") hereby alleges as follows:

1. Plaintiff is and at all times material herein has been a limited liability company organized and existing under the laws of the Republic of Seychelles.

2. Defendant Wells Fargo & Company ("Wells Fargo") is and at all times material herein has been a financial services company organized and existing under the laws of the State of Delaware, with offices and retail banks throughout Los Angeles County, California.

3. Plaintiff sues Does 1 through 10, inclusive, herein under fictitious names. Plaintiff does not know their true names and capacities. When plaintiff ascertains the Doe defendants' true names and capacities, plaintiff will amend this complaint by inserting their true names and capacities herein. On information and belief each defendant named herein as a Doe acted with the other defendants and is responsible for the damages to plaintiff herein alleged. Each reference in

this complaint to defendant also refers to all defendants sued under fictitious names.

4. On information and belief at all times material herein each of the defendants was the agent and employee of the other defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

5. On or about October 1, 2018, plaintiff received a fraudulent email (the "Fraudulent Email") stating that it was from plaintiff's vendor, RAD Architecture, Inc. ("RAD" or the "Intended Beneficiary"), and directing plaintiff to wire funds due from plaintiff to RAD to RAD's Wells Fargo Account No. 28490 73420 (the "Fraudulent Account"). The Fraudulent Email included as an attachment a fraudulent invoice (the "Fraudulent Invoice") which appeared to be a RAD invoice and which contained wire instructions for the Fraudulent Account. The Fraudulent Invoice reflected an undisputed amount due from plaintiff to RAD of $226,991.45 (the "Amount").

6. Plaintiff is informed and believes and based thereon alleges that the Fraudulent Email originated not from RAD, but from a person or persons who had, through illegal means, hacked into RAD's email server or account, forged the Fraudulent Invoice, and "spoofed," or forged, RAD's email address in order to cause plaintiff to direct payment of the amount to the Fraudulent Account, and thereby to misappropriate plaintiff's funds.

7. On October 2, 2018, plaintiff initiated an outgoing payment order (the "Order") through its bank to the Fraudulent Account. The Order identified "RAD Architecture, Inc." as the Intended Beneficiary, and included RAD's street address in Miami, Florida to further identify the Intended Beneficiary.

8. Plaintiff is informed and believes and based thereon alleges that plaintiff's correspondent bank transmitted the Order to Wells Fargo.

9. On or shortly after October 2, 2019, Wells Fargo accepted the Order.

10. On or shortly after October 2, 2019, Wells Fargo paid the Amount to an account not maintained by the Intended Beneficiary and released the funds to a person or persons other than the Intended Beneficiary of the Order.

11. Plaintiff is informed and believes and based thereon alleges that Wells Fargo was

not lawfully permitted to accept the Order.

12. Plaintiff is informed and believes and based thereon alleges that, when Wells Fargo paid the Amount to the account number identified on the Order and associated with the Fraudulent Account, Wells Fargo had actual knowledge that there was a complete disconnect between both the Intended Beneficiary's name and the account number identified on the Order, in that the name and address actually registered to the account number that received the Amount were dissimilar to and readily distinguishable from RAD's name and address, both of which were stated on the Order, or, in the alternative, that the Fraudulent Account was not an existing account, and, therefore, that Wells Fargo wrongfully paid the Amount to a person or persons without any right to receive payment.

13. Prior to filing suit, plaintiff requested Wells Fargo to disclose the name and other information concerning the person or persons who received the Amount. Wells Fargo refused to disclose that information. Wells Fargo also has not disclosed how it processed the Order or determined that the Order was lawfully acceptable and payable to any person or persons, or whether it has conducted any investigation concerning the matter, including to determine whether Wells Fargo or any of its personnel might have intentionally converted the Amount by knowingly and willfully diverting it to an unlawful beneficiary.

14. As a direct and proximate result of Wells Fargo's wrongful acceptance and payment of the Order, plaintiff has been damaged in the amount of at least $226,991.45, plus interest at the legal rate.

///

///

///

///

///

///

///

///

WHEREFORE, plaintiff prays for judgment as follows:

1. For compensatory damages in an amount according to proof of not less than $226,991.00, plus interest at the legal rate;

2. For costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

DATED: May 23, 2019

KING, HOLMES, PATERNO & SORIANO, LLP

By: ______________________

HOWARD E. KING
STEPHEN D. ROTHSCHILD
Attorneys for Plaintiff Grand Bayman Belize, Ltd.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 1. Notice of Appeal from a Judgment or Order of a United States District Court

Name of U.S. District Court: Central District - Western Division

U.S. District Court case number: 19cv-07698 ODW (RAOx)

Date case was first filed in U.S. District Court: September 5, 2019

Date of judgment or order you are appealing: 01/21/21 and 01/25/21

Fee paid for appeal? *(appeal fees are paid at the U.S. District Court)*

◉ Yes ○ No ○ IFP was granted by U.S. District Court

---

**List all Appellants** *(List **each** party filing the appeal. Do not use "et al." or other abbreviations.)*

Grand Bayman Belize, LTD

Is this a cross-appeal? ○ Yes ◉ No

If Yes, what is the first appeal case number?

Was there a previous appeal in this case? ○ Yes ◉ No

If Yes, what is the prior appeal case number?

Your mailing address:

King, Holmes, Paterno & Soriano, LLP

1900 Avenue of the Stars, 25th Floor

City: Los Angeles State: CA Zip Code: 90067

Prisoner Inmate or A Number (if applicable):

**Signature** /s/ Stephen D. Rothschild **Date** February 18, 2021

*Complete and file with the attached representation statement in the U.S. District Court*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

Grand Bayman Belize, LTD, Defendant

Name(s) of counsel (if any):

King, Holmes, Paterno & Soriano, LLP
Howard E. King
Stephen D. Rothschild

Address: 1900 Avenue of the Stars, 25th Floor, Los Angeles, CA 90067

Telephone number(s): 310.282.8989

Email(s): hking@khpslaw.com; srothschild@khpslaw.com

Is counsel registered for Electronic Filing in the 9th Circuit? ◉ Yes ○ No

---

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Wells Fargo Bank, N.A., Plaintiff

Name(s) of counsel (if any):

Severson & Werson
Loren W. Coe

Address: 19100 Von Karman Ave., Suite 700, Irvine, Ca 92612

Telephone number(s): 949.442.7110

Email(s): lwc@severson.com

*To list additional parties and/or counsel, use next page.*

Continued list of parties and counsel: *(attach additional pages as necessary)*

**Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit? ○ Yes ○ No

---

**Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

---

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

ACCO,(RAOx),APPEAL,CLOSED,DISCOVERY,MANADR,PROTORD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA (Western Division - Los Angeles)
# CIVIL DOCKET FOR CASE #: 2:19-cv-07698-ODW-RAO

| | |
|---|---|
| Grand Bayman Belize, Ltd. v. Wells Fargo and Company, et al | Date Filed: 09/05/2019 |
| Assigned to: Judge Otis D. Wright, II | Date Terminated: 01/25/2021 |
| Referred to: Magistrate Judge Rozella A. Oliver | Jury Demand: None |
| Demand: $227,000 | Nature of Suit: 380 Personal Property: Other |
| Case in other court: Los Angeles Superior Court, 19SMCV00966<br>Ninth Circuit, 21-55146 | Jurisdiction: Diversity |
| Cause: 28:1441 Notice of Removal - Fraud | |

**Plaintiff**

| | | |
|---|---|---|
| **Grand Bayman Belize, Ltd.**<br>*a Seychelles limited liability company* | represented by | **Howard E King**<br>King Holmes Paterno and Soriano LLP<br>1900 Avenue of the Stars 25th Floor<br>Los Angeles, CA 90067-4506<br>310-282-8989<br>Fax: 310-282-8903<br>Email: hking@khpslaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Stephen D Rothschild**<br>King Holmes Paterno and Soriano LLP<br>1900 Avenue of the Stars 25th Floor<br>Los Angeles, CA 90067<br>310-282-8989<br>Fax: 310-282-8903<br>Email: srothschild@khpslaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

V.

**Defendant**

**Wells Fargo and Company**
*a Delaware corporation*

**Defendant**

**Does**
*1 through 10*

**Defendant**

| | | |
|---|---|---|
| **Wells Fargo Bank, N.A.**<br>*Erroneously Sued As*<br>Wells Fargo and Company, a Delaware corporation | represented by | **Elizabeth Courtney Farrell**<br>Severson and Werson APC<br>19100 Von Karman Avenue Suite 700<br>Irvine, CA 92612<br>949-442-7110 |

Fax: 949-442-7118
Email: ecf@severson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Loren W Coe**
Severson and Werson PC
1900 Von Karman Avenue Suite 700
Irvine, CA 92612
949-442-7110
Fax: 949-442-7118
Email: lwc@severson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marquis Ian Wraight**
Severson and Werson APC
One Embarcadero Center Suite 2600
San Francisco, CA 94111
415-398-3344
Fax: 415-956-0439
Email: miw@severson.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/05/2019 | 1 | NOTICE OF REMOVAL from Los Angeles Superior Court, case number 19SMCV00966 Receipt No: 0973-24385922 - Fee: $400, filed by Defendant Wells Fargo Bank, N.A.. (Attachments: # 1 Complaint, # 2 Answer) (Attorney Loren W Coe added to party Wells Fargo Bank, N.A.(pty:dft))(Coe, Loren) (Entered: 09/05/2019) |
| 09/05/2019 | 2 | CIVIL COVER SHEET filed by Defendant Wells Fargo Bank, N.A.. (Coe, Loren) (Entered: 09/05/2019) |
| 09/05/2019 | 3 | CERTIFICATE of Interested Parties filed by Defendant Wells Fargo Bank, N.A., identifying Wells Fargo & Company. (Coe, Loren) (Entered: 09/05/2019) |
| 09/05/2019 | | CONFORMED COPY OF COMPLAINT against defendants Does, Wells Fargo and Company, filed by plaintiff Grand Bayman Belize, Ltd. (filed in state court 5/23/19, submitted as document 1, attachment 1) (esa) (Entered: 09/06/2019) |
| 09/05/2019 | | CONFORMED COPY OF ANSWER to Complaint filed by defendant Wells Fargo Bank, N.A. (filed in state court 6/27/19, submitted as document 1, attachment 2)(esa) (Entered: 09/06/2019) |
| 09/06/2019 | 4 | NOTICE OF ASSIGNMENT to District Judge Christina A. Snyder and Magistrate Judge Rozella A. Oliver. (esa) (Entered: 09/06/2019) |
| 09/06/2019 | 5 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (esa) (Entered: 09/06/2019) |
| 09/19/2019 | 6 | ORDER RETURNING CASE FOR REASSIGNMENT by Judge Christina A. Snyder. ORDER case returned to the Clerk for random reassignment pursuant to General Order 19-03. Case randomly reassigned from Judge Christina A. Snyder to Judge Otis D. Wright, II |

| | | |
|---|---|---|
| | | for all further proceedings. The case number will now reflect the initials of the transferee Judge 2:19-cv-7698 ODW(RAOx). (esa) (Entered: 09/19/2019) |
| 12/02/2019 | 7 | ORDER that the Scheduling Conference is set for 2/24/2019 1:30 PM ; compliance with FRCP 16, and 26(f) and filing of joint report; Counsel for plaintiff shall immediately serve this Order on all parties, including any new parties to the action by Judge Otis D Wright, II (lc) (Entered: 12/02/2019) |
| 01/23/2020 | 8 | Joint STIPULATION for Discovery as to Stipulated Protective Order filed by Defendant Wells Fargo Bank, N.A.. (Attachments: # 1 Proposed Order)(Coe, Loren) (Entered: 01/23/2020) |
| 01/30/2020 | 9 | PROTECTIVE ORDER by Magistrate Judge Rozella A. Oliver re Stipulation for Discovery 8 (dml) (Entered: 01/30/2020) |
| 02/19/2020 | 10 | JOINT REPORT Rule 26(f) Discovery Plan ; estimated length of trial 2 days, filed by Plaintiff Grand Bayman Belize, Ltd... (Rothschild, Stephen) (Entered: 02/19/2020) |
| 02/20/2020 | 11 | ORDER/REFERRAL to ADR Procedure No 1 by Judge Otis D. Wright, II. Case ordered to Magistrate Judge Rozella A. Oliver for Settlement Conference. (lc) (Entered: 02/20/2020) |
| 02/20/2020 | 12 | SCHEDULING AND CASE MANAGEMENT ORDER by Judge Otis D Wright II: THE SCHEDULING CONFERENCE IS VACATED. SEE THE LAST PAGE OF THIS ORDER FOR THE SPECIFIED DATES. Bench trial: 10/23/20 9:00 AM; File final trial exhibit stipulation: 10/22/20; hearing on motions in limine: 10/19/20 1:30 PM; Final Pretrial Conference: 10/5/20 1:30 PM; file motions in limine: 10/5/20; lodge Pretrial conference order and pretrial exhibit stipulation, file contentions of fact and law, exhibit and witness lists, status report regarding settlement: 9/28/20; last date to conduct settlement conference: 7/17/20; last day for hearing motions: 7/27/20; expert discovery cutoff: 7/30/20 ; percipient/fact discovery cutoff: 6/19/20; last date to amend pleadings or add parties: 5/18/20. (lc) Modified on 6/18/2020 (lc). (Entered: 02/20/2020) |
| 04/10/2020 | 13 | MINUTE ORDER (IN CHAMBERS) RE: SETTLEMENT PROCEEDINGS by Magistrate Judge Rozella A. Oliver. This case has been referred to Magistrate Judge Rozella A. Oliver for settlement proceedings. Within five (5) court days from the entry of this order, counsel for the parties shall confer with each other and present at least two (2) prospective dates to this Court's clerk via email. SEE ORDER FOR DETAILS. (dml) (Entered: 04/10/2020) |
| 04/16/2020 | 14 | SETTLEMENT CONFERENCE ORDER by Magistrate Judge Rozella A. Oliver. This matter having been referred to U.S. Magistrate Judge Rozella A. Oliver for a settlement conference, IT IS ORDERED that a settlement conference shall be held in Courtroom 590, 5th Floor of the Roybal Federal Building and U.S. Courthouse, 255 E. Temple Street, Los Angeles, California, on June 22, 2020 at 10:00 a.m. Each party shall submit a settlement conference statement directly to Judge Oliver's chambers not later than June 11, 2020. SEE ORDER FOR DETAILS. (dml) (Entered: 04/16/2020) |
| 06/12/2020 | 15 | STIPULATION to Extend Discovery Cut-Off Date to August 17, 2020 filed by Plaintiff Grand Bayman Belize, Ltd.. (Attachments: # 1 Declaration Declaration, # 2 Proposed Order Proposed Order)(Rothschild, Stephen) (Entered: 06/12/2020) |
| 06/18/2020 | 16 | ORDER RE STIPULATION 15 by Judge Otis D. Wright, II: The Percipient/Fact Discovery Cutoff in the above-entitled action is extended from June 19, 2020, to August 17, 2020, the Expert Discovery Cutoff is extended from July 3, 2020, to August 17, 2020, and the Deadline for Hearing Motions is extended from July 27, 2020, to August 17, 2020. (lc) (Entered: 06/18/2020) |

| | | |
|---|---|---|
| 06/22/2020 | 20 | MINUTES OF Settlement Conference held before Magistrate Judge Rozella A. Oliver: On June 22, 2020, the Court conducted a telephonic settlement conference with the parties, but they were unable to reach a settlement. Court Recorder: N/A. (dml) (Entered: 06/29/2020) |
| 06/26/2020 | 17 | NOTICE OF MOTION AND MOTION for Summary Judgment filed by Defendant Wells Fargo Bank, N.A.. Motion set for hearing on 8/10/2020 at 01:30 PM before Judge Otis D. Wright II. (Attachments: # 1 Memorandum of Points and Authorities In Support of Wells Fargo Bank, N.A.s Motion for Summary Judgment, # 2 Declaration of Michelle Swirtz In Support of Defendant Wells Fargo Bank, N.A.s Motion for Summary Judgment, # 3 Statement of Uncontroverted Facts and Conclusions of Law In Support of Wells Fargo Bank, N.A.s Motion for Summary Judgment) (Coe, Loren) (Entered: 06/26/2020) |
| 06/26/2020 | 18 | NOTICE TO FILER OF DEFICIENCIES in Electronically Filed Documents RE: Wells Fargo Bank, N.A. NOTICE OF MOTION AND MOTION for Summary Judgment 17 . The following error(s) was/were found: Local Rule 56-1 proposed judgment lacking. Proposed Document was not submitted as separate attachment. Other error(s) with document(s): MISSING the proposed judgment. As an alternative, prepare and e-file a formal Notice of Lodging, to be docketed only under its specific event: Notice of Lodging, to which the formal proposed judgment is submitted as Separate Attachment thereto. In response to this notice, the Court may: (1) order an amended or correct document to be filed; (2) order the document stricken; or (3) take other action as the Court deems appropriate. You need not take any action in response to this notice unless and until the Court directs you to do so. (lc) (Entered: 06/26/2020) |
| 06/29/2020 | 19 | NOTICE OF LODGING filed re NOTICE OF MOTION AND MOTION for Summary Judgment 17 (Attachments: # 1 [Proposed] Judgment)(Coe, Loren) (Entered: 06/29/2020) |
| 07/17/2020 | 21 | MINUTE ORDER (IN CHAMBERS) RE DISCOVERY DISPUTE by Magistrate Judge Rozella A. Oliver. The Court is in receipt of an email from counsel for Plaintiff regarding an anticipated motion to compel. If the parties can agree to an expedited briefing schedule for the motion to compel, they shall file a joint stipulation and proposed order with their proposed schedule. See Order for details. (dml) (Entered: 07/17/2020) |
| 07/20/2020 | 22 | STIPULATION for Discovery as to Dispute filed by Plaintiff Grand Bayman Belize, Ltd.. (Attachments: # 1 Proposed Order Proposed Order)(Rothschild, Stephen) (Entered: 07/20/2020) |
| 07/21/2020 | 23 | ORDER by Magistrate Judge Rozella A. Oliver, re Stipulation for Discovery 22 . The hearing on the motion shall proceed on August 14, 2020 at 9:00 a.m. before Magistrate Judge Rozella A. Oliver. The hearing will be held telephonically. Call-in information will be emailed to counsel. Counsel shall provide the call-in information to the third-party. SEE ORDER FOR COMPLETE DETAILS AND DEADLINES. (dml) (Entered: 07/21/2020) |
| 07/21/2020 | 24 | NOTICE OF MOTION AND MOTION to Compel Production of Documents filed by Plaintiff Grand Bayman Belize, Ltd.. Motion set for hearing on 8/14/2020 at 09:00 AM before Judge Otis D. Wright II. (Attachments: # 1 Proposed Order Proposed Order) (Rothschild, Stephen) (Entered: 07/21/2020) |
| 07/27/2020 | 25 | RESPONSE IN SUPPORT of MOTION to Compel Production of Documents 24 filed by Defendant Wells Fargo Bank, N.A.. (Coe, Loren) (Entered: 07/27/2020) |
| 07/27/2020 | 26 | MEMORANDUM in Opposition to NOTICE OF MOTION AND MOTION for Summary Judgment 17 filed by Plaintiff Grand Bayman Belize, Ltd.. (Rothschild, Stephen) (Entered: 07/27/2020) |
| 07/27/2020 | 27 | Plaintiff's Statment of Genuine Disputes of Material Fact in Opposition to Defendant's Motion for Summary Judgment Opposition re: NOTICE OF MOTION AND MOTION for |

| | | |
|---|---|---|
| | | Summary Judgment 17 filed by Plaintiff Grand Bayman Belize, Ltd.. (Rothschild, Stephen) (Entered: 07/27/2020) |
| 07/27/2020 | 28 | DECLARATION of Rafael Amuchastegui, Dikka Amuchastegui and Stephen D. Rothschild Opposition NOTICE OF MOTION AND MOTION for Summary Judgment 17 filed by Plaintiff Grand Bayman Belize, Ltd.. (Rothschild, Stephen) (Entered: 07/27/2020) |
| 07/27/2020 | 29 | EX PARTE APPLICATION to Continue Motion for Summary Judgment from 8/10/2020 to 8/17/2020 Re: NOTICE OF MOTION AND MOTION for Summary Judgment 17 filed by Plaintiff Grand Bayman Belize, Ltd.. (Attachments: # 1 Proposed Order Proposed Order) (Rothschild, Stephen) (Entered: 07/27/2020) |
| 07/29/2020 | 30 | ORDER UPON PLAINTIFF'S EX PARTE APPLICATION 29 by Judge Otis D. Wright, II: The hearing on defendant Wells Fargo Bank, N.A.s motion for summary judgment, currently set for August 10, 2020, is hereby continued to August 17, 2020 at 1:30 PM 17 . (lc) (Entered: 07/29/2020) |
| 08/03/2020 | 31 | REPLY In Support Of NOTICE OF MOTION AND MOTION for Summary Judgment 17 filed by Defendant Wells Fargo Bank, N.A.. (Coe, Loren) (Entered: 08/03/2020) |
| 08/06/2020 | 32 | SCHEDULING NOTICE by Magistrate Judge Rozella A. Oliver, re: MOTION to Compel Production of Documents 24 . Telephonic Motion hearing set for 8/14/2020 at 9:00 AM is before Magistrate Judge Oliver and not District Judge Wright. THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (dml) TEXT ONLY ENTRY (Entered: 08/06/2020) |
| 08/10/2020 | 33 | The hearing on the MOTION for Summary Judgment 17 , scheduled for August 17, 2020 at 1:30 P.M., is hereby VACATED and taken off calendar. No appearances are necessary. The matter stands submitted, and will be decided upon without oral argument. An order will issue.THERE IS NO PDF DOCUMENT ASSOCIATED WITH THIS ENTRY. (sce) TEXT ONLY ENTRY (Entered: 08/10/2020) |
| 08/14/2020 | 34 | MINUTES OF TELEPHONIC HEARING RE: MOTION TO COMPEL 24 held before Magistrate Judge Rozella A. Oliver. The case was called for a telephonic hearing and counsel made their appearances. There was no appearance made by or on behalf of the third-party account holder whose account records are at issue, and Defendant's counsel represented that counsel has not heard from the account holder regarding Plaintiff's pending Motion to Compel. A separate order will issue granting the Motion to Compel. Tape #: AT&T 08/14/2020. Court Recorder: AT&T System. (dml) (Entered: 08/14/2020) |
| 08/14/2020 | 35 | ORDER by Magistrate Judge Rozella A. Oliver: granting 24 Motion to Compel. Defendant shall produce its account and other records concerning the third party forthwith, but in no event later than August 17, 2020. (dml) (Entered: 08/14/2020) |
| 09/15/2020 | 36 | STIPULATION to Continue Trial from 10/23/2020 to 3/12/2021 filed by Plaintiff Grand Bayman Belize, Ltd.. (Attachments: # 1 Proposed Order Proposed Order)(Rothschild, Stephen) (Entered: 09/15/2020) |
| 09/16/2020 | 37 | ORDER PER STIPULATION EXTENDING TRIAL AND PRETRIAL DATES 36 by Judge Otis D. Wright, II: Trial: 3/12/21 9:00 AM; Hearing on Motions in Limine: 3/8/21 1:30 PM; Final Pretrial Conference: 2/22/21 1:30 PM. (SEE DOCUMENT FOR ALL SPECIFIED DEADLINES). (lc) (Entered: 09/16/2020) |
| 01/21/2021 | 38 | ORDER GRANTING WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT. WELLS FARGO SHALL SUBMIT A PROPOSED JUDGMENT WITHIN 7 DAYS OF DATE OF THIS ORDER 17 by Judge Otis D. Wright, II. (lc) (Entered: 01/21/2021) |
| 01/25/2021 | 39 | NOTICE OF LODGING filed re Order on Motion for Summary Judgment 38 (Attachments: # 1 [Proposed] Judgment)(Coe, Loren) (Entered: 01/25/2021) |

| | | |
|---|---|---|
| 01/25/2021 | 40 | JUDGMENT by Judge Otis D. Wright, II: On January 21, 2021 the Court entered Order granting Wells Fargo's Motion for Summary Judgment 38 . Judgment is entered in favor of Defendant WELLS FARGO BANK, N.A. and against Plaintiff GRAND BAYMAN BELIZE, LTD.IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff GRAND BAYMAN BELIZE, LTD. take nothing by way of its Complaint. (MD JS-6, Case Terminated). (lc) Modified on 1/25/2021 (lc). (Entered: 01/25/2021) |
| 02/18/2021 | 41 | NOTICE OF APPEAL to the 9th Circuit Court of Appeals filed by Plaintiff Grand Bayman Belize, Ltd.. Appeal of Order on Motion for Summary Judgment 38 , Judgment, 40 . (Appeal Fee - $505 Fee Paid, Receipt No. ACACDC-30599993.) (Rothschild, Stephen) (Entered: 02/18/2021) |
| 02/23/2021 | 42 | NOTIFICATION from Ninth Circuit Court of Appeals of case number assigned and briefing schedule. Appeal Docket No. 21-55146 assigned to Notice of Appeal to 9th Circuit Court of Appeals, 41 as to Plaintiff Grand Bayman Belize, Ltd. (lc) (Entered: 02/24/2021) |

---



| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 07/21/2021 13:29:53 | | | |
| **PACER Login:** | SROTHSCHILD | **Client Code:** | 5307.060 |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-07698-ODW-RAO End date: 7/21/2021 |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

## PROOF OF SERVICE

**Grand Bayman Belize, Ltd. v. Wells Fargo & Company**
**Case No. 21-55146**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1900 Avenue of the Stars, Twenty-Fifth Floor, Los Angeles, CA 90067-4506.

On July 27, 2021, I served true copies of the following document(s) described as **APPENDIX, VOLUME 1** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 27, 2021, at Los Angeles, California.

*/s/ Amelia L Booth*
Amelia L Booth

**SERVICE LIST**
**Grand Bayman Belize, Ltd. v. Wells Fargo & Company**
**Case No. 21-55146**

| | |
|---|---|
| Elizabeth C. Farrell, Esq.<br>Severson & Werson<br>A Professional Corporation<br>The Atrium<br>19100 Von Karman Avenue, Suite 700<br>Irvine, CA 92612<br>Tel: 949-442-7110<br>Fax: 949-442-7118<br>Email: ecf@severson.com | Attorneys for Defendant Wells Fargo Bank, N.A. |
| Jan T. Chilton, Esq.<br>Severson & Werson<br>A Professional Corporation<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Tel: 415-677-5603<br>Fax: 415-956-0439<br>Email: jtc@severson.com | Attorneys for Defendant Wells Fargo Bank, N.A. |