No. 21-55146

# United States Court Of Appeals
# For The Ninth Circuit

GRAND BAYMAN BELIZE, LTD.,

*Plaintiff and Appellant,*

vs.

WELLS FARGO BANK, N.A.,

*Defendant and Appellee.*

*Appeal from United States District Court,*
*Central District of California, Case No. 2:19-cv-07698 ODW (RAOx)*
*Hon. Otis D. Wright, II, United States District Judge*

# Corrected Appellee's Brief


Jan T. Chilton (SBN 47582)
jtc@severson.com
Mark I. Wraight (SBN 228303)
miw@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant and Appellee
WELLS FARGO BANK, N.A.

# CORPORATE DISCLOSURE STATEMENT

[Fed. R. App. 26.1]

Pursuant to Fed. R. App. P. 26.1, defendants and appellees state:

Wells Fargo Bank, N.A. is a wholly owned subsidiary of Wells Fargo & Company, which is publicly traded on the New York Stock Exchange under the symbol WFC. Wells Fargo & Company is a publicly traded corporation that has no parent corporation.

## TABLE OF CONTENTS

*Page*

I. JURISDICTIONAL STATEMENT .......... 1

II. QUESTION PRESENTED .......... 2

III. STATEMENT OF THE CASE .......... 2

A. Substantive Facts .......... 2

B. Procedural Facts .......... 4

IV. STANDARD OF REVIEW .......... 5

V. SUMMARY OF ARGUMENT .......... 6

VI. ARGUMENT .......... 9

A. Section 11207(b)'s Safe Harbor Shields Wells Fargo From Liability .......... 9

B. Grand Bayman's Three Arguments Lack Merit .......... 12

1. Grand Bayman's "Other Information" Argument Lacks Merit .......... 13

(a) Section 11207(a) Does Not Apply .......... 13

(b) Section 11207(b) Does Apply .......... 15

2. Section 11207(b)(1) Applies Despite The "Total Disconnect" Between Beneficiary's And Accountholder's Names .......... 23

3. Grand Bayman's "Different Branch" Argument Lacks Merit .......... 25

VII. CONCLUSION .......... 29

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Calatayud v. State of California*,
18 Cal. 4th 1057 (1998) ....................16, 19

*Corfan Banco Asuncion Paraguay v. Ocean Bank*,
715 So.2d 967 (Fla. App. 1998) ....................20, 22

*Donmar Enters., Inc. v. S. Nat'l Bank*,
828 F. Supp. 1230 (W.D. N.C. 1993),
aff'd, 64 F.3d 944 (4th Cir. 1995) ....................14, 20

*Harris v. Capital Growth Investors XIV*,
|52 Cal. 3d 1142 (1991) ....................16

*JP Morgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*,
536 U.S. 88 (2002)....................1

*Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*,
572 F.3d 1039 (9th Cir. 2009) ....................6

*Langston & Langston, PLLC v. SunTrust Bank*,
480 F. Supp. 3d 737 (S.D. Miss. 2020) ....................11

*New S. Fed. Sav. Bank v. Flatbush Fed. Sav. & Loan Ass'n*,
No. 01 Civ. 9024, 2002 U.S. Dist. LEXIS 20512
(S.D.N.Y. Oct. 24, 2002) ....................*passim*

*P.S. Marcato Elevator Co. v. J.P. Morgan Chase Bank & Co.*,
No. 603292/03, 2005 N.Y. Misc. LEXIS 8675
(Sup. Ct. Mar. 31, 2005) ....................18

*Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*,
795 Fed. Appx. 741 (11th Cir. 2019)....................6, 7, 12, 24

*Remtek Servs. v. Wells Fargo Bank, N.A.*,
No. 19-12790, 2020 U.S. Dist. LEXIS 7678 (D.N.J. Jan. 16, 2020) ....................17

*Rouse v. Wachovia Mortgage*,
747 F.3d 707 (9th Cir. 2014) ....................1

# TABLE OF AUTHORITIES

*Page(s)*

*Cases*

*Song Chuan Tech. (Fujian) Co. v. Bank of Am.*,
No. 2:16-3269-RMG, 2017 U.S. Dist. LEXIS 34335
(D. S.C. Mar. 10, 2017) ....................................................................13, 20

*TME Enterprises, Inc. v. Norwest Corp.*,
124 Cal. App. 4th 1021 (2004) ....................................................................*passim*

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*,
No. 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707
(S.D. N.Y. Feb. 26, 2003)....................................................................14

*Venture Recycling Grp., Inc. v. JPMorgan Chase & Co.*,
No. CV 19-2253-MWF, 2019 U.S. Dist. LEXIS 167094,
2019 WL 4543104 (C.D. Cal. July 9, 2019)....................................................25

*Whitman v. Mineta*,
541 F.3d 929 (9th Cir. 2008) ....................................................................6

*Zeal Glob. Servs. Private Ltd. v. Suntrust Bank,*
No. 1:20-cv-00908-AT, 2020 U.S. Dist. LEXIS 237984
(N.D. Ga. Dec. 18, 2020)....................................................................17

**Statutes**

United States Code
Title 28
Section 1291 ....................................................................1
Section 1332 ....................................................................1
Section 1348 ....................................................................1
Section 1441 ....................................................................1

California Commercial Code
Section 1202....................................................................11, 12
Section 11207....................................................................*passim*
Section 11209....................................................................25, 27, 28
Section 11302....................................................................25, 27
Section 11405....................................................................28

*Other Authorities*

1 Brady on Bank Checks and Funds Transfers § 20.04 (2020) ...............................28

## I.

## JURISDICTIONAL STATEMENT

Plaintiff Grand Bayman Belize, Ltd. ("Grand Bayman") filed this suit in the Los Angeles County Superior Court. ER 195. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") timely removed the suit to district court.[1] ER 203 #1. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(2), (c)(1), 1441(a). Supp. ER 9-11 ¶¶ 4-10.

Grand Bayman is a citizen of the Seychelles and Belize, having been incorporated under the laws of the Republic of Seychelles and having its principal place of business in Belize. Supp. ER 10 ¶ 5; 28 U.S.C. § 1332(c)(1); *JP Morgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 91 (2002). Wells Fargo is a national bank with its main office in South Dakota, and thus a citizen of that state. Supp. ER 10 ¶ 6; 28 U.S.C. § 1348; *Rouse v. Wachovia Mortgage*, 747 F.3d 707, 715 (9th Cir. 2014). The amount in controversy exceeds $75,000, exclusive of interest and costs. Supp. ER 11 ¶¶ 9, 10; ER 197 ¶ 14.

This Court has jurisdiction of this appeal under 28 U.S.C. § 1291. The district court granted Wells Fargo's summary judgment motion and entered judgment in

---

[1] Wells Fargo filed its notice of removal on September 5, 2019, less than 30 days after it received a paper stating facts showing Grand Bayman's citizenship, from which it could first be ascertained that the case was removable. Supp. ER 11 ¶ 11.

Wells Fargo's favor on January 25, 2021. ER 1, 4. Grand Bayman filed its notice of appeal on February 18, 2021. ER 199.

## II.

## QUESTION PRESENTED

Did the district court correctly enter summary judgment in Wells Fargo's favor?

## III.

## STATEMENT OF THE CASE

### A. Substantive Facts

Grand Bayman is a Seychelles company, headquartered in Belize. Supp. ER 10 ¶ 5. On October 1, 2018, it received a $226,991.45 invoice, purportedly from RAD Architecture, Inc., one of Grand Bayman's vendors. ER 196 ¶ 5. The invoice directed Grand Bayman to pay the invoice by wire transfer to account no. xxxxx xx3420 at Wells Fargo (the "3420 Account"). ER 196 ¶ 5.

On October 2, 2018, Grand Bayman directed its bank, Caye International Bank Ltd., in Belize to wire transfer $226,991.45 to the 3420 Account. ER 82, 155 ¶ 14, 196 ¶ 7. The wire transfer order was transmitted through Citibank, N.A. to Wells Fargo, which received it on October 5, 2018 at 7:13:39.08 a.m. Central Time. ER 155 ¶ 14, 161-162; Supp. ER 4-5 ¶¶ 1, 4. The order identified the beneficiary of the wire transfer by the 3420 Account's number and by the beneficiary's name, RAD Architecture, Inc. and by its Miami address. ER 155 ¶ 14, 161; Supp. ER 4 ¶ 2.

To handle the 70,000 wire transfers it receives each day, Wells Fargo uses fully automated software application, known as the Money Transfer System ("MTS"). ER 153-154 ¶¶ 6, 7. MTS first checks to see if the beneficiary account number contained in a wire transfer order is a valid Wells Fargo demand deposit or savings account number.[2] ER 154 ¶ 8. Next, MTS automatically compares information about the wire transfer and the beneficiary account lists and databases of persons, entities, and states subject to sanctions. ER 154-155 ¶¶ 10, 11. The wire transfer is automatically released, unless this comparison gives the wire transfer a score above 77%. ER 155 ¶¶ 11, 12.

The incoming wire transfer from Grand Bayman was automatically processed by MTS in accordance with this normal procedure. MTS checked that the 3420 Account was a valid Wells Fargo account. ER 156 ¶ 15(b), 162; Supp. ER 5 ¶ 5. It then compared information about the wire transfer order and the 3420 Account with the sanctions list, giving the order a score lower than 77%. ER 156 ¶ 15(c), (d), 163; Supp. ER 5-6 #27 ¶¶ 6, 7. Accordingly, the wire transfer order was automatically released, and the transferred $226,991.45 was credited to the 3420 Account

---

[2] MTS has a function designed to identify a mismatch between the intended beneficiary name in a wire transfer order and the name of the holder of the account by comparing more than just the account number. ER 157 ¶ 20. However, Wells Fargo has not licensed and does not use that function as it found that the function did not perform at a level that would make it effective for use at Wells Fargo. *Id.*

7 seconds after Wells Fargo received the wire transfer order. ER 156 ¶ 15(e), 163, 168; Supp. ER 6 ¶ 8.

The proceeds of the wire transfer were withdrawn from the 3420 Account by October 17, 2018. ER ¶¶ 17, 18, 168, 171; Supp. ER 6 ¶ 10. Wells Fargo closed the account the following day. ER 156 ¶ 19, 174; Supp. ER 6 ¶ 10. On November 1, 2018, Wells Fargo received a message from Citibank attempting to recall the wire transfer. ER 157 ¶ 21, 176; Supp. ER 6-7 ¶ 11.

According to Wells Fargo's records, the holder of the 3420 Account was Julieta P. Aquino, whose address was 118 N. 1st St. Bergenfield, NJ 07621, not RAD Architecture, Inc., whose address was listed on the wire transfer as 117 NW 42 Ave. CU 2, Miami, FL 33126. Supp. ER 6-7 ¶ 11; ER 39 ¶ 4, 40 ¶ 4, 45-46 #2, 76-78.

The wire transfer order referenced Wells Fargo's bank routing number for its San Francisco office through which all domestic wire transfers to Wells Fargo are handled. The 3420 Account statement shows a different bank routing number for direct deposits to the 3420 Account. ER 82, 161, 166, 170.

## B. Procedural Facts

Grand Bayman filed this action in state court. ER 195. Grand Bayman's complaint alleged a single claim, accusing Wells Fargo of having wrongfully accepted Grand Bayman's wire transfer and depositing its proceeds into an account

not maintained by RAD Architecture, Inc., the beneficiary named in the wire transfer. ER 196-197.

Wells Fargo answered, thereafter removing the action to district court. ER 190, Supp. ER 8.

Wells Fargo moved for summary judgment, supported by a declaration detailing its processing of Grand Bayman's wire transfer order and a statement of undisputed facts. ER 142, 151, 187. Grand Bayman filed an opposition supported by three declarations. ER 39, 40, 41, 83. The opposition also included a response to the statement of undisputed facts which disputed only four of the facts set forth in Wells Fargo's moving papers. Supp. ER 4 ¶¶ 2, 3, 4-5 ¶¶9, 11. Wells Fargo filed a reply memorandum. ER 18.

On January 21, 2021, the district court entered its order granting Wells Fargo's summary judgment motion. ER 4. Judgment in Wells Fargo's favor was entered on January 25, 2021. ER 1. Grand Bayman filed its notice of appeal on February 18, 2021. ER 199.

## IV.

## STANDARD OF REVIEW

This Court "review[s] the district court's grant of summary judgment *de novo*, determining 'whether, viewing all evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district

court correctly applied the relevant substantive law.' *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008)." *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1042-43 (9th Cir. 2009).

Here, the only issue before the Court is whether the district court correctly applied California's Commercial Code since the opening brief does not argue that Grand Bayman raised a genuine issue of fact in opposition to the summary judgment motion.

## V.

## SUMMARY OF ARGUMENT

To promote the low cost, efficient, automated processing of wire transfers, California Commercial Code § 11207(b)[3] "provides, in effect, immunity from responsibility—a 'safe harbor'—for a beneficiary's bank that relies on the account number specified in a wire transfer order to identify the beneficiary of the order." *TME Enterprises, Inc. v. Norwest Corp.*, 124 Cal. App. 4th 1021, 1031 (2004).

"[T]he beneficiary's bank 'need not determine whether the name and number refer to the same person.' " *Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A.*, 795 Fed. Appx. 741, 747 (11th Cir. 2019). Absent "actual knowledge that the account name and number do not match, the beneficiary's bank (here, Wells Fargo)

[3] Unless otherwise indicated, all statutory references are to the Commercial Code.

‘may rely on the number as the proper identification of the beneficiary of the order.’ ” *Id.*

Wells Fargo did just that in processing Grand Bayman’s wire transfer. It used a completely automated process that relied solely on the account number to identify the beneficiary. During the seven seconds it took to process Grand Bayman’s wire transfer, Wells Fargo gained no actual knowledge of the mismatch between the account number and the name stated on the transfer order.

The district court correctly held that these facts entitled Wells Fargo to summary judgment against Grand Bayman under § 11207(b)(1).

On appeal, Grand Bayman raises three legal arguments, tacitly conceding that the relevant facts are undisputed. Grand Bayman’s legal arguments lack merit.

First, Grand Baymen argues that § 11207(b)(1) does not apply because its wire transfer order supplied “other information” about the beneficiary which also did not match the account number. That argument clashes with the clearly stated purpose of § 11207(b), which is to permit the low cost, efficient, automated processing of wire transfers. Plainly, if a beneficiary’s bank must compare any “other information” about the beneficiary stated in the wire transfer order with its account information, it cannot use automated means to process wire transfers. Not surprisingly, no case or other authority supports Grand Bayman’s argument. The one decision it cites is easily distinguishable.

Second, Grand Bayman argues that § 11207(b)(1)'s safe harbor does not protect Wells Fargo because there was a "complete disconnect" between the accountholder's name and the beneficiary's name stated on the wire transfer order. The simple answer is that § 11207(b)(1) says nothing about similarity of names. Rather, it provides that the beneficiary's bank may ignore names altogether—whether or not similar. Grand Bayman bases its "complete disconnect" theory on a case that dealt with an entirely different issue; namely, whether a bank whose employee examined the wire transfer gained actual knowledge of a mismatch due to the dissimilarity of names he reviewed. Here, it is undisputed that Wells Fargo processed Grand Bayman's transfer order by machine, without human intervention and that it had no actual knowledge of any name mismatch.

Third, Grand Bayman argues that Wells Fargo did not properly execute its wire transfer order because it deposited the proceeds in an account at a branch different from the one shown on the order. The argument is wrong on the facts. The wire transfer order did not specify a branch. Instead, it specified a bank routing number which is the number at which Wells Fargo receives all in-coming wire transfers. The bank uses different routing numbers for direct deposits. Wells Fargo fully complied with Grand Bayman's wire transfer order by crediting the account that matched the number stated in the order. Neither the Commercial Code nor the wire transfer order required Wells Fargo to match routing numbers as well.

Thus, the district court correctly held that Wells Fargo was entitled to summary judgment. This Court should affirm for the same reasons.

## VI.

## ARGUMENT

### A. Section 11207(b)'s Safe Harbor Shields Wells Fargo From Liability

"A very large percentage of [wire transfer] payment orders issued to the beneficiary's bank … are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by … the number of a bank account." Cal. Com. Code, § 11207 cmt. 2.

"If [wire transfer] payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced. [Section 11207](b) allows banks to utilize automated processing by allowing banks to act on the basis of the [account] number without regard to the [beneficiary's] name if the bank does not know that the name and number refer to different persons." *Id.*

To that end, § 11207(b) provides:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> > (1) Except as otherwise provided in subdivision (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank

> need not determine whether the name and number refer to the same person.

As the district court correctly concluded, the legal rule stated in § 11207(b)(1) dictates the result in this case based on the undisputed facts established on Wells Fargo's summary judgment motion. ER 8-11.

First, § 11207(b) applied because Grand Bayman's wire transfer payment order identified the beneficiary by both name, RAD Architecture, Inc., and account number, xx3420. ER 155 ¶ 14, 160-161. The name and number identified different persons. The account number identified an account held by Julieta P. Aquino, not RAD Architecture, Inc. Supp. ER 6-7 ¶ 11; ER 39 ¶ 4, 40 ¶ 4, 45-46 #2, 76-78. Section 11207(b) therefore applies. *TME Enters., Inc.*, 124 Cal. App. 4th at 1031.

Second, Wells Fargo processed Grand Bayman's wire transfer order using a fully automated computer application, MTS, that relied solely on the account number as the proper identification of the beneficiary. ER 153-154 ¶¶ 6, 7, 155-156 ¶¶ 14, 15. MTS verified that the account number stated on the wire transfer order identified a valid Wells Fargo account. ER 156 ¶ 15(b), 162; Supp. ER 5 ¶ 5. MTS also checked the wire transfer order and account information against a sanctions list, releasing the wire transfer for automatic acceptance since it received a score lower than 77% on the sanctions check. ER 156 ¶ 15(c), (d) 163; Supp. ER 5-6 ¶¶ 6, 7. Seven seconds after receiving the wire transfer, Wells Fargo accepted it and

deposited its proceeds into the account bearing the number designated in the wire transfer. ER 156 ¶ 15(e) Ex. 1 163, 167; Supp. ER 6 ¶ 8.

Third, Wells Fargo had no actual knowledge[4] that the beneficiary's name and account number stated in Grand Bayman's wire transfer order referred to different people. No human being was involved at any point in Wells Fargo's processing of Grand Bayman's wire transfer. ER 155-156 ¶¶ 14, 15, 160-164. Wells Fargo's computer application, MTS, does not check to see whether the beneficiary's name, if stated in the wire transfer order, matches the name of the holder of the account bearing the number designated in the wire transfer. ER 157 ¶ 20. So, neither MTS nor any human being actually knew that Grand Bayman's wire transfer designated non-matching beneficiary name and account number. *See Langston & Langston, PLLC v. SunTrust Bank*, 480 F. Supp. 3d 737, 743-44 (S.D. Miss. 2020) (bank had no actual knowledge of name-number mismatch of automatically processed wire transfer order).

Because § 11207(b)(1) expressly allows Wells Fargo to process wire transfers relying solely on account number, "Wells Fargo maintained and complied with reasonable routines, and thus exercised due diligence, with respect to the processing

[4] "Knows" means actual knowledge. Cal. Com. Code, § 1202(b).

of [Grand Bayman's] payment order through its automated MTS."[5] *Peter E. Shapiro, P.A.,* 795 Fed. Appx. at 748. Hence, no knowledge of the mismatch between name and account number designated in Grand Bayman's wire transfer may be imputed to Wells Fargo or any of its personnel. *Id.* Since it lacked actual knowledge of the mismatch, Wells Fargo was entitled to rely solely on the account number. Cal. Com. Code, § 11207(b)(1).

Thus, the undisputed evidence established that Wells Fargo's processing of Grand Bayman's wire transfer fell within § 11027(b)(1)'s safe harbor, immunizing Wells Fargo from liability and barring Grand Bayman's claim against it. The district court correctly so held. ER 9-12, 14-15. This Court should affirm.

### B. Grand Bayman's Three Arguments Lack Merit

Challenging the district court's ruling, Grand Bayman's opening brief raises three purely legal arguments, all of which lack merit for the reasons stated below.

---

[5] Knowledge received by an organization "is effective for a particular transaction from the time it is brought to the attention of the individual conducting that transaction" or would have been if the organization used due diligence. Cal. Com. Code, § 1202(f). "An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines." *Id.*

### 1. Grand Bayman's "Other Information" Argument Lacks Merit

#### (a) Section 11207(a) Does Not Apply

Grand Bayman begins its "other information" argument by contending that § 11207(a) barred Wells Fargo from accepting Grand Bayman's wire transfer because the order provided "other information"—namely, the beneficiary's address — which did not match the address information on the account bearing the number stated in the order. AOB, 7.

Tellingly, Grand Bayman cites no authority for this proposition. *Id.* There is none. Grand Bayman is simply wrong.

Section 11207(a) "applies only where it is not possible to complete the transfer because the beneficiary cannot be identified—preventing banks from simply keeping funds where it is not possible to complete the transfer." *Song Chuan Tech. (Fujian) Co. v. Bank of Am.*, No. 2:16-3269-RMG, 2017 U.S. Dist. LEXIS 34335, at *7-8 (D. S.C. Mar. 10, 2017) (citations omitted).

> Official Comment 1 to § [11207] makes clear that [subdivision (a) is addressed to a case where "it is <u>not possible</u> … for the funds transfer to be completed." (emphasis added) This would be the case if the payment order gives an account number that does not identify any existing account at the beneficiary's bank.

*New S. Fed. Sav. Bank v. Flatbush Fed. Sav. & Loan Ass'n*, No. 01 Civ. 9024, 2002 U.S. Dist. LEXIS 20512, at *4 (S.D.N.Y. Oct. 24, 2002)

Section 11207(a) "only requires a bank to refuse a payment order when the beneficiary is unidentifiable." *Donmar Enters., Inc. v. S. Nat'l Bank*, 828 F. Supp. 1230, 1240 (W.D. N.C. 1993), aff'd, 64 F.3d 944, 950-51 (4th Cir. 1995). The section "is inapplicable … where a funds transfer is completed to the identified recipient and the sender of funds subsequently realizes that the identified recipient was not who he said he was." *Id.* at *8.

In this case, Wells Fargo could identify the beneficiary by account number. ER 156 ¶ 15(b), 162; Supp. 3 ¶ 5. As "[t]here was admittedly at least one identifiable beneficiary, and since § [11207(a)] requires no more, the Defendant was not required to refuse the transfer under § [11207(a)]." *Donmar Enters., Inc.*, 828 F. Supp. at 1240.[6]

Grand Bayman's contrary argument ignores the phrase at the start of § 11207(a)—"[s]ubject to subdivision (b)"—as well as that subdivision's purpose.[7] As already shown, § 11207(b) allows a beneficiary's bank to accept a wire transfer relying on the account number alone without regard to the beneficiary's name. Com.

---

6 *Accord, Tzaras v. Evergreen Int'l Spot Trading, Inc.*, No. 01 Civ. 10726 (LAP), 2003 U.S. Dist. LEXIS 2707 at *12-14 (S.D. N.Y. Feb. 26, 2003).

7 "In a case where the number clearly identifies an existing account and the name arguably identifies an existing account, subsection (a) should not govern. Instead, we should follow its first four words, which say 'Subject to subsection (b), ….' Subsection (b) is specifically addressed to our problem." *New S. Fed. Sav. Bank*, 2002 U.S. Dist. LEXIS 20512, at *5.

Code, § 11207 cmt. 2. Plainly, § 11207(a) would not be "subject to" § 11207(b) if § 11207(a) barred the bank from accepting a wire transfer in the very situation in which § 11207(b)(1) permits the bank to accept the wire transfer without liability—that is, when the transfer lists a valid account number but other information in the wire transfer—such as the beneficiary's name—does not identify the same bank customer.

In short, § 11207(a) does not apply because the account number stated in Grand Bayman's wire transfer order referred to an existing, identifiable account at Wells Fargo. That other information in the order did not match that account is irrelevant. "[T]he U.C.C. does not use the word 'matched,' and it does not define the terms 'nonexistent' or 'unidentifiable' " in terms of whether all the beneficiary information stated in the payment order corresponds with information about a single account at the beneficiary's bank. *New S. Fed. Sav. Bank*, 2002 U.S. Dist. LEXIS 20512, at *5.

**(b) Section 11207(b) Does Apply**

Grand Bayman's principal argument is that § 11207(b) does not apply to immunize Wells Fargo from liability because that section applies only to name-number mismatches and "does not encompass payment orders with 'other identification' that does not match the account number identified in the orders." AOB, 8.

Grand Bayman asserts that since § 11207(b) does not mention "other information" (whereas § 11207(a) does), §11207(b) does not apply when there is a mismatch between account number and "other information" stated in the payment order. AOB, 5, 8.

Grand Bayman's argument overlooks the first principle of statutory interpretation which is to effectuate the lawmakers' evident intent and purpose.

> "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. In order to determine this intent, we begin by examining the language of the statute. But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' … To properly apply these principles, we must at the same time remain cognizant of "the object to be achieved and the evil to be prevented by the legislation."

*Calatayud v. State of California*, 18 Cal. 4th 1057, 1064-65 (1998) (*quoting Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1159 (1991)) (citations omitted).

Section 11207(b)'s intent and purpose could not be clearer. It is to "allow[] banks to utilize automated processing by allowing banks to act on the basis of the [account] number" alone. Cal. Com. Code, § 11207 cmt. 2. To that end, the section permits a beneficiary's bank to rely solely "on the account number specified in a

wire transfer order to identify the beneficiary of the order." *TME Enters., Inc.*, 124 Cal. App. 4th at 1031.

> [T]he "processing of the order by the beneficiary's bank and the crediting of the beneficiary's account are done by use of the identifying or bank account number without human reading of the payment order itself." For this reason, the U.C.C. does not impose a duty on banks to determine whether the name and number on the beneficiary account match: if such a duty were imposed, "the benefits of automated payment are lost. Manual handling of payment orders is both expensive and subject to human error."

*Zeal Glob. Servs. Private Ltd. v. Suntrust Bank*, No. 1:20-cv-00908-AT, 2020 U.S. Dist. LEXIS 237984, at *11 (N.D. Ga. Dec. 18, 2020) (*quoting* §11207 cmt. 2); *see also Remtek Servs. v. Wells Fargo Bank, N.A.*, No. 19-12790 (RBK/KMW), 2020 U.S. Dist. LEXIS 7678, at *8 (D.N.J. Jan. 16, 2020) ("The main effect of Section [11207](b) is to authorize banks to process payment orders by relying only on the provided account number.").

Plainly, if § 11207(b) did not apply to, and immunize the beneficiary's bank, in the event of a mismatch between account number and "other information," a bank could not safely process a wire transfer solely by automated means using the account number only, and "the benefits of automated payment [would be] lost." Cal. Com. Code, § 11207 cmt. 2.

Grand Bayman makes no attempt to show how a bank could, by automated means, check "other information" in a wire transfer against account information.

Checking account names is hard enough. Indeed, Article 4A's drafters thought it could not be done reliably by machine. That is why they wrote § 11207(b).

Checking "other information" would be far more difficult. Here, the "other information" was an address: "117 NW 42 Ave. CU 2, Miami, FL 33126." ER 82, 160. That string of numbers and digits is subject to a huge number of possible variations, the possible importance of which would have to be assessed.[8] Not to mention that the accountholder may have changed addresses without notifying the party sending the wire transfer. These complexities cannot be resolved reliably by machine. Human intervention would be required.[9]

Moreover, addresses are not the sole type of "other information" that a wire transfer order could state. The order could specify the beneficiary's state of incorporation. Or, if the beneficiary is an individual, the order could include Mr., Mrs., or Ms., or other types of identifying information such as hair or eye color. Many other types of "other information" about a wire transfer beneficiary are possible.[10]

---

[8] Is 117 NW 42 Avenue the same or different? What about 117 NW 42 St.? Or 117 NW 42nd Ave., Miami FL 33126? Or 117 NW 42 Ave. #2?

[9] Rejecting every wire transfer which contained "other information" or which contained "other information" not exactly matching account information would not be a viable means of handling the problem. That strategy would lead to rejection of many otherwise executable wire transfer orders, impeding their usefulness and the commerce they facilitate.

[10] *See P.S. Marcato Elevator Co. v. J.P. Morgan Chase Bank & Co.*, No. 603292/03, 2005 N.Y. Misc. LEXIS 8675, at *15-16 (Sup. Ct. Mar. 31, 2005) ("To require a bank to sort through printouts of billions of electronic transactions would

(Fn. cont'd)

In short, Grand Bayman's proposed interpretation of § 11207(b) would preclude the automatic processing of wire transfers which that section was intended to facilitate.[11] That interpretation must be rejected, as " '[t]he intent prevails over the letter [of a statute], and the letter will, if possible, be so read as to conform to the spirit of the act.' " *Calatayud*, 18 Cal. 4th at 1065.

Trying to bolster its interpretation, Grand Bayman argues that if § 11207(b) applies to mismatches between account number and "other information," it will "render the words 'other information' in section 11207(a) superfluous." AOB, 8. That is plainly wrong. Section 11207(b) explicitly applies to mismatches between account number and "name." The drafters of § 11207 clearly did not think that using "name" in subdivision (b) rendered the same word superfluous in subdivision (a)—or "name" would not appear in both subdivisions. "Other information" is no less capable of independent meaning in § 11207(a).

Along the same lines, Grand Bayman asserts that "[t]here would be no reason for an originator to provide a correct name and address…, if the bank could ignore them." AOB, 9. It is wrong again. The name and address information can help if the beneficiary's bank processes the order manually, or if its automatic processing

---

thwart the very purpose of the automated system, and effectively require it to act as a super-auditor of its customer's own payment instructions.")

[11] Even Grand Bayman admits that § 11207(b)'s purpose is "to facilitate efficient execution of wire transfers." AOB, 5.

finds no account number matching the one stated in the wire transfer order.[12] *See, e.g. Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So.2d 967, 968 (Fla. App. 1998).

Grand Bayman also contends that allowing a beneficiary's bank to process wire transfers by number alone without regard to name, address or "other information" will deny wire transfer originators "the important protection against wrongful payment of payment orders that section 11207(a) expressly provides." AOB, 9. That contention mistakes § 11207(a)'s purpose. As already explained, § 11207(a) operates only to prevent banks from keeping funds when it is not possible to complete the transfer because none of the identifying information matches an existing account. *Song Chuan Tech. (Fujian) Co.*, 2017 U.S. Dist. LEXIS 34335, at *7-8; *New S. Fed. Sav. Bank*, 2002 U.S. Dist. LEXIS 20512, at *4; *Donmar Enters., Inc.*, 828 F. Supp. at 1240. Nothing in that section or the accompanying comments supports Grand Bayman's notion that § 11207(a) provides any other protection to wire transfer originators.

---

[12] Grand Bayman also asserts that "Payment Order forms … require the payee's address" which the forms would not "unless it [the address] constituted further "identification" to be used by banks processing payment orders." AOB, 12. Apart from the fact that Grand Bayman signed an order form with blank spaces for the beneficiaries' address, there is no evidence to support its assertion that payment order forms generally "require" that information. Moreover, as explained in the text, address can provide useful information when the beneficiary's bank is unable to identify an existing account by other means.

Quite to the contrary, § 11207(c)(2) provides originators a very different type of protection: disclosure of the risk an originator runs if it doesn't assure the accuracy of the account number stated in the wire transfer order. Under that section, the originator's bank bears the loss unless it "proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary."[13] As § 11207 cmt. 3 explains:

> It is not unfair to assign the loss to [the wire transfer originator] because it is the person who dealt with the imposter and it supplied the wrong account number. It could have avoided the loss if it had not used an account number that it was not sure was that of [the intended beneficiary]. [The originator], however, may not have been aware of the risk involved in giving both name and number. Subsection (c) is designed to protect the originator …. Under that subsection, the originator is responsible for the inconsistent description of the beneficiary if it had notice that the order might be paid by the beneficiary's bank on the basis of the number. … If the originator is not a bank, the originator's bank must prove that its customer, the originator, had notice.

[13] The wire transfer order form that Grand Bayman used did not contain that notice. ER 82. Whether Grand Bayman could force its bank, Caye International Bank, Ltd. to bear the loss is, of course, not a question raised by this case, and its answer may depend on whether Caye gave Grand Bayman separate notice of the risk it ran and whether Belize law parallels the UCC in this respect.

Grand Bayman's quotation from Hawkland does not support its argument either. *See* AOB, 10. Rather, it deals with a different problem: the risk that the beneficiary's bank will reject a valid wire transfer under § 11207(a) due to a mismatch of "other information" with account name and number. That is why Hawkland recommends that the originator include no "other information" about the beneficiary in its wire transfer order.

Nor does *Corfan Banco Asuncion Paraguay*, 715 So.2d 967 support Grand Bayman's argument. *See* AOB, 11. The critical fact in *Corfan* was that the account number stated in the wire transfer did *not* identify a valid account at the beneficiary's bank, and the beneficiary's bank actually noticed that discrepancy before accepting the wire transfer. *See id.* at 968. [14] For that reason, the beneficiary's bank could not invoke § 11207(b)(1)'s safe harbor, and the *Corfan* opinion does not consider that provision's relationship to § 11207(a).

Here, by contrast, Grand Bayman's wire transfer listed a valid Wells Fargo account number. So, unlike *Corfan,* § 11207(b)(1) applies to this case and determines its outcome.

---

[14] *See New S. Fed. Sav. Bank*, 2002 U.S. Dist. LEXIS 20512, at *5 (distinguishing *Corfan* as a case that "involved an account number that did not identify any existing account at the receiving bank.").

### 2. Section 11207(b)(1) Applies Despite The "Total Disconnect" Between Beneficiary's And Accountholder's Names

As its second argument, Grand Bayman claims that § 11207(b)(1) immunizes a beneficiary's bank only "when the mismatch between the named beneficiary and the name of the holder of a fraudulent account is not obvious." AOB, 12; *see also* ER 93. Quoting *TME Enters., Inc.*, Bayman claims the section confers no immunity when there is "a complete disconnect between the names" on the wire transfer and the account. AOB, 13; ER 94.

Grand Bayman is wrong. First, § 11207(b)(1)'s words draw no distinction between slight and gross mismatches of account names. Instead, the statute states, without qualification, that the beneficiary's bank "may rely on the number as the proper identification of the beneficiary of the order" and may ignore names altogether—no matter how gross the disparity between beneficiary and account names. As comment 2 to § 11207 puts it, subdivision (b)(1) "allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name …."

Second, Grand Bayman turns *TME Enters., Inc.*'s words on their head, wrongly treating them as an added basis for imposing liability rather than as a further limitation on liability. In *TME Enters., Inc.*, the beneficiary's bank processed the wire transfer manually. *TME Enters., Inc.*, 124 Cal. App. 4th at 1027, 1032. During that manual processing, the bank employee reviewed account information, acquiring

actual knowledge of the name on the account which did not perfectly match the name of the wire transfer beneficiary. *Id.* at 1033-34. Nevertheless, *TME Enters., Inc.* absolved the beneficiary's bank of liability, stating that the "bank should not be exposed to potential liability for accepting a wire unless there is a complete disconnect between the names." *Id.* at 1034.

It is undisputed that Wells Fargo processed Grand Bayman's wire transfer by an entirely automated process which did not involve any review of the account name. ER 156 ¶¶ 15(b)-(e), 157 ¶ 20, 162, 163; Supp. ER 5-6 ¶¶ 5-8. No human being intervened during the seven seconds Wells Fargo took to process that wire transfer. Neither the computer nor any human reviewed the account name or had any actual knowledge of that account name did not match the name of the wire transfer beneficiary.

When, as in this case, the beneficiary's bank has no actual knowledge of a name mismatch, the bank bears no liability, even if there is a gross disparity, a complete disconnect, between the account and beneficiary names. Otherwise, the bank could be liable unless it checked to see whether such a gross disparity existed. Section 11207(b)(1) was enacted to relieve banks of any such duty. The section allows "banks to act on the basis of the number without regard to the name." Com. Code, § 11207 cmt. 2; *see Peter E. Shapiro, P.A.*, 795 Fed. Appx. at 748-49.

As the district court correctly observed:

> Although a complete disconnect might preclude applicability of section 11207(b)'s safe harbor when a wire transfer is manually reviewed by a human who should recognize a glaring mismatch, Grand Bayman fails to persuade that same principle should apply when a wire transfer is automatically processed without human intervention, as is the case here.

ER 13.[15]

### 3. Grand Bayman's "Different Branch" Argument Lacks Merit

Grand Bayman's final argument is that Wells Fargo failed to comply with its wire transfer order because it credited an account at a different branch from the one specified in the order. According to Grand Bayman, by doing so Wells Fargo violated §§ 11209 and 11302. AOB, 6, 14-16. The argument is fatally flawed both factually and legally.

---

[15] *Venture Recycling Grp., Inc. v. JPMorgan Chase & Co.*, No. CV 19-2253-MWF (KSx), 2019 U.S. Dist. LEXIS 167094, at *13, 2019 WL 4543104 (C.D. Cal. July 9, 2019) does not support Grand Bayman's argument, either. As the district court pointed out, *Venture Recycling* was decided on a motion to dismiss. Here, Grand Bayman had to satisfy a heavier burden on summary judgment. ER 13. Also, in *Venture Recycling*, the beneficiary's bank's rejection of two other wire transfers to the same account raised an inference that the bank "had a system in place to efficiently and effectively conduct that most basic level of due diligence" regarding name mismatches—and so would have acquired actual knowledge of the "total disconnect." *Venture Recycling*, 2019 U.S. Dist. LEXIS 167094, at *13. Here, by contrast, it is undisputed that Wells Fargo's MTS application does not check account names at all. ER 157 ¶ 20. So, here, there can be no inference of actual knowledge of the mismatch.

To start with the facts, Grand Bayman's wire transfer order did not specify a bank branch. *See* ER 82, 161. Instead, the order stated the beneficiary's bank was Wells Fargo, N.A. *Id.* It also gave a bank routing number 121000248. *Id.*

A routing number is not a bank or a bank branch. Nor does the routing number typically designate a single branch of a multi-branch bank, like Wells Fargo.

> Small banks generally possess just one routing number, while large multinational banks can have several different ones, usually based on the state in which you hold the account. … The routing numbers used for domestic and international wire transfers are not the same as those listed on your checks.

https://www.investopedia.com/articles/personal-finance/063015/routing-number-vs-account-number-how-they-differ.asp (last visited July 30, 2021).

Wells Fargo follows the practice of other large multinational banks described in the quotation. It has several routing numbers. It uses the 121000248 number for all incoming domestic wire transfers. It uses different routing numbers, varying by state, for receiving direct deposits to demand deposit accounts.[16] *See* https://www.wellsfargo.com/help/routing-number/ (last visited July 30, 2021). The routing numbers do not identify individual bank branches.

---

[16] For example, the Aquino account which bore the account number specified in Grand Bayman's wire transfer order was held in a New Jersey branch, so the bank statements sent Aquino stated "For Direct Deposit use Routing Number (RTN): 021200025," the routing number used for direct deposits into accounts at Wells Fargo's New Jersey branches. ER 170.

Thus, the undisputed facts do not support Grand Bayman's "different branch" argument. Its wire transfer order did not specify a bank branch in which the beneficiary's account was supposedly held, nor did it direct Wells Fargo to deposit the transferred funds only in an account at a specific branch. Instead, the wire transfer order used the routing number at which Wells Fargo receives all domestic wire transfers for accounts held anywhere in the United States. And Wells Fargo credited the designated account in New Jersey, just as it would have credited an account in Florida, Alaska, Hawaii or any other state, had the wire transfer order designated such an account.

Legally, Grand Bayman's claim fares no better. Grand Bayman claims Wells Fargo violated § 11302(a)(1) by not issuing "a payment order complying with the sender's order." AOB, 14. However, § 11302(a)(1) does not apply to a beneficiary's bank, such as Wells Fargo. Instead, § 11302(a)(1) sets out duties owed by a receiving bank that "accepts a payment order pursuant to subdivision (a) of Section 11209." Section 11209(a) expressly applies only to "a receiving bank other than the beneficiary's bank." Wells Fargo was the beneficiary's bank in this case, so § 11302(a)(1) does not apply to it. *See* ER 82.

Grand Bayman also cites § 11209(c) for the proposition that acceptance of a wire transfer order does not occur "if the beneficiary of the payment order does not have an account with the receiving bank." AOB, 15. That section does not apply

because the beneficiary which Grand Bayman's wire transfer order designated by account number did have a Wells Fargo account. ER 156 ¶ 15(b), (e), 16, 162, 163 166-167; Supp. ER 5 ¶5, 4 ¶ 8.

Moreover, comment 1 to § 11209 explains that "[a]cceptance of the payment order imposes an obligation on the receiving bank to the sender if the receiving bank is not the beneficiary's bank, or to the beneficiary if the receiving bank is the beneficiary's bank." Since Wells Fargo was the beneficiary's bank, any duty that § 11209 imposed on it was owed to the holder of the designated Wells Fargo account, not Grand Bayman. *See* 1 Brady on Bank Checks and Funds Transfers § 20.04 (2020).

Finally, § 11209(c) negates only the second and third means by which a beneficiary's bank may accept a wire transfer, not the first; namely, acceptance by crediting the beneficiary's account and notifying the beneficiary of its right to withdraw the credit. Com. Code, §§ 11209(b)(1)(i), 11405(a). Here, the undisputed evidence shows that Wells Fargo did credit the "beneficiary's" account—that is, the account with the number stated in the wire transfer—and notified the customer of the right to withdraw the credit, which that customer promptly did. ER 156 ¶ ¶15(e), 17, 18, 163, Ex. 2, 167; Supp. ER 6 ¶¶ 8, 10. Hence, Wells Fargo "accepted" Grand Bayman's wire transfer even if § 11209(c) otherwise applied, which it does not for the reasons just stated.

## VII.

## CONCLUSION

For the reasons stated above, the Court should affirm the appealed judgment.

DATED: August 3, 2021

SEVERSON & WERSON
A Professional Corporation

By: *__/s/ Jan T. Chilton__*
Jan T. Chilton

Attorneys for Defendant and Appellee
WELLS FARGO BANK, N.A.

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6**

*Instructions for this form: [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)*

**9th Cir. Case Number(s)** 21-55146

The undersigned attorney or self-represented party states the following:

[x] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature:** */s/ Jan T. Chilton* **Dated:** August 3, 2021
*(use "*s/[typed name]*" to sign electronically-filed documents)*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** 21-55146

I am the attorney or self-represented party.

**This brief contains 6,860 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties;
  [ ] a party or parties are filing a single brief in response to multiple briefs; or
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated ______________.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** */s/ Jan T. Chilton* **Dated:** August 3, 2021
*(use "*s/[typed name]*" to sign electronically-filed documents)*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

**9th Cir. Case Number(s)** 21-55146

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

Corrected Appellee's Brief

**Signature:** */s/ Sandra Chao* **Dated:** August 3, 2021
*(use "*s/[typed name]*" to sign electronically-filed documents)*